UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

**07 CV**    **6950**

**JUDGE PRESKA**

```
-----------------------------------X
                                   :
LINDA MARSHALL, BEN DAMPIOS, AL    :
SPILLOWAY, BERNIE APOTHEKER, HARRY :
ESPOSITO and BRENT WENTZ, on behalf:
of themselves and all others       :
similarly situated,                :
                                   :
                    Plaintiffs,    :    Civil Action No.
                                   :
           v.                      :    07 CV ____
                                   :
MILBERG WEISS BERSHAD & SCHULMAN   :
LLP, LERACH COUGHLIN STOIA GELLER  :    CLASS ACTION COMPLAINT
RUDMAN & ROBBINS LLP, MELVYN I.    :
WEISS, DAVID J. BERSHAD, and       :
STEVEN G. SCHULMAN,                :    JURY TRIAL DEMANDED
DOES 1 THROUGH 15,                 :
                                   :
                    Defendants.    :
                                   :
-----------------------------------X
```

AUG 02 2007
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiffs Linda Marshall, Ben Dampios, Al Spilloway, Bernie Apotheker, Harry Esposito, and Brent Wentz, by their attorneys Beatie and Osborn LLP, for their Complaint against defendants Milberg Weiss Bershad & Schulman LLP, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, Melvyn I. Weiss, David J. Bershad, and Steven G. Schulman (collectively "Defendants") allege as follows:

## PRELIMINARY STATEMENT

1.   This is a class action to recover treble damages, costs, and attorneys fees for violations of the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO Act"), specifically 18 U.S.C. §§ 1962(a), (b) and (c) (mail fraud, wire fraud, bribery); breach of fiduciary duty; fraud; and violations of Federal Rule of Civil Procedure 23(a)(4); .

2.   This action involves a scheme perpetrated against Plaintiffs and others during a period of more than twenty years.

3.   Beginning at least as early as 1981, Defendants engaged in an illegal scheme to obtain appointments as lead counsel and awards of attorneys fees by secretly making illegal payments to their clients to serve as Plaintiffs, Lead Plaintiffs, and/or Class Representatives in class actions and/or derivative suits and by misrepresenting their clients' losses and shareholdings.

4.   Defendants filed in various federal courts complaints, motions, settlement agreements, notices to the classes and other documents containing false and misleading statements and omitting material facts; caused their clients to make false and misleading statements under oath in depositions; and filed false and misleading declarations, certificates, and other documents signed under penalty of perjury.

-2-

5.     Defendants sent to absent class members in class action lawsuits documents, including, but not limited to, Notices of Settlement and Settlement Agreements, containing false and misleading statements and omitting material facts.

6.     Defendants Milberg Weiss Bershad & Schulman LLP, Bershad, and Schulman are currently under indictment in the United States District Court for the Central District of California for, in part, making illegal payments to certain clients from fees awarded by judicial decisions.  Defendants Weiss and Lerach are currently still under investigation by the grand jury.

7.     The indictment alleges that defendants Milberg Weiss Bershad & Schulman LLP (sometimes acting under a prior name), Bershad, and Schulman engaged in this conduct in more than one hundred fifty class actions since 1981 that generated more than $261 million in attorneys fees.

8.     The indictment alleges that defendant Milberg Weiss Bershad & Schulman LLP (sometimes acting under a prior name) made more than $11 million in illegal payments to some of its clients.

9.     Defendants' conduct violated the RICO Act, violated their fiduciary duties to the members of the Plaintiff classes which Milberg Weiss Bershad Hynes & Lerach, LLP, represented, perpetrated a fraud on those same persons, and violated Federal Rule of Civil Procedure 23(a)(4).

-3-

10.  The indictment mentions several individuals without names. Those persons are represented in the caption by the Doe defendants and will be identified by name when their identities have been established through discovery.

## JURISDICTION

11.  Jurisdiction in this action is predicated upon Title 18, United States Code, Section 1964 and Title 28, United States Code, Section 1331.

## VENUE

12.  Venue for this action is predicated upon Title 18, United States Code, Section 1965 and Title 28, United States Code, Section 1391.

## GOVERNING CODE OF PROFESSIONAL RESPONSIBILITY

13.  Defendants, at all times acted as lawyers admitted to practice under the laws and rules of the Code of Professional Responsibility ("CPR") and laws of the State of New York.

14.  DR 1-105 of the CPR provides that a lawyer admitted to practice in New York is subject to the disciplinary rules and authority of New York regardless of where the lawyer's conduct occurs.

## PARTIES AND RELATED NON-PARTIES

**Plaintiffs**

15.    Plaintiff Linda Marshall is an individual and was a member of the class of Safeskin shareholders represented by Milberg Weiss Bershad Hynes & Lerach, LLP in the action captioned <u>Stanley v. Safeskin</u>, No. 99-454, United States District Court, Southern District of California.

16.    Plaintiff Ben Dampios is an individual and was a member of the class of Safeskin shareholders represented by Milberg Weiss Bershad Hynes & Lerach, LLP in the action captioned <u>Stanley v. Safeskin</u>, No. 99-454, United States District Court, Southern District of California.

17.    Plaintiff Al Spilloway is an individual and was a member of the class of Safeskin shareholders represented by Milberg Weiss Bershad Hynes & Lerach, LLP in the action captioned <u>Stanley v. Safeskin</u>, No. 99-454, United States District Court, Southern District of California.

18.    Plaintiff Bernie Apotheker is an individual and was a member of the class of Schein Pharmaceuticals shareholders represented by Milberg Weiss Bershad Hynes & Lerach, LLP in the action captioned <u>In re Schein Pharmaceutical, Inc. Securities Litigation</u>, No. 98-4311, United States District Court, District of New Jersey.

19.   Plaintiff Harry Esposito is an individual and was a member of the class of Schein Pharmaceuticals shareholders represented by Milberg Weiss Bershad Hynes & Lerach, LLP in the action captioned <u>In re Schein Pharmaceutical, Inc. Securities Litigation</u>, No. 98-4311, United States District Court, District of New Jersey.

20.   Plaintiff Brent Wentz is an individual and was a member of the class of Schein Pharmaceuticals shareholders represented by Milberg Weiss Bershad Hynes & Lerach, LLP in the action captioned <u>In re Schein Pharmaceutical, Inc. Securities Litigation</u>, No. 98-4311, United States District Court, District of New Jersey.

**Defendants**

21.   Defendant Milberg Weiss Bershad & Schulman LLP is a limited liability partnership organized under the laws of the state of New York; maintains its principal place of business at One Pennsylvania Plaza, New York, New York; is engaged in the practice of law; and was formerly known as Milberg Weiss Bershad Hynes & Lerach, LLP.

22.   Defendant Lerach Coughlin Stoia Geller Rudman & Robbins LLP is a limited liability partnership organized under the laws of the state of California; maintains its principal place of business at 655 West Broadway, Suite 1900, San Diego, California;

has an office at 52 Duane Street, 7th Floor, New York, New York; is engaged in the practice of law; and is a spin-off from Milberg Weiss Bershad Hynes & Lerach, LLP.

23.   Defendant Melvyn I. Weiss is an individual; was a name partner in the firm of Milberg Weiss Bershad Hynes & Lerach, LLP; exercised substantial control over the management and conduct of Milberg Weiss Bershad Hynes & Lerach, LLP; is a name partner and dominant partner in defendant Milberg Weiss Bershad & Schulman LLP; maintains his principal place of business at One Pennsylvania Plaza, New York, New York; is engaged in the practice of law; and is admitted to practice law in New York.

24.   Defendant David J. Bershad is an individual; was a name partner and the managing partner in the firm of Milberg Weiss Bershad Hynes & Lerach, LLP; exercised substantial control over the management and conduct of Milberg Weiss Bershad Hynes & Lerach, LLP; is a name partner in defendant Milberg Weiss Bershad & Schulman LLP; maintains his principal place of business at One Pennsylvania Plaza, New York, New York; is engaged in the practice of law; and is admitted to practice law in New York.

25.   During the time that defendant Milberg Weiss Bershad Hynes & Lerach, LLP, used false plaintiffs to bring representative lawsuits as class actions or derivative suits, defendant Bershad

kept the books for the criminal enterprise and the unlawful payments.

26.   Defendant Steven G. Schulman is an individual; was a partner in the firm of Milberg Weiss Bershad Hynes & Lerach, LLP; exercised substantial control over the management and conduct of Milberg Weiss Bershad Hynes & Lerach, LLP; is a name partner in defendant Milberg Weiss Bershad & Schulman LLP; maintains his principal place of business at One Pennsylvania Plaza, New York, New York; is engaged in the practice of law; and is admitted to practice law in New York.

**Related Non-Parties**

27.   Milberg Weiss Bershad Hynes & Lerach, LLP, was a limited liability partnership organized under the laws of the state of New York; maintained offices in New York and California; was engaged in the practice of law; and on May 1, 2004, split into two separate firms defendants Milberg Weiss Bershad & Schulman LLP and Lerach Coughlin Stoia Geller Rudman & Robbins LLP.

28.   Seymour Lazar ("Lazar") is an individual; is not a party to this action; is a retired entertainment lawyer; and maintains his residence in Palm Springs, California.

29.   Between 1981 and 2004, Lazar and certain of his family members and associated entities frequently served as

plaintiffs in class actions and shareholder derivative actions filed by Milberg Weiss Bershad Hynes & Lerach, LLP.

30. According to the indictment in <u>United States v. Lazar, et al.</u>, CR. 05-587, United States District Court for the Central District of California, Lazar accepted illegal payments from Milberg Weiss Bershad Hynes & Lerach, LLP and/or one or more of the defendants for his, or his relatives', participation in approximately seventy class action law suits.

31. Howard J. Vogel ("Vogel") is an individual; is not a party to this action; worked primarily as a commercial real estate mortgage broker; and resided in New Jersey and Florida.

32. Between 1991 and 2005, Vogel and certain of his family members and associated entities frequently served as plaintiffs in class actions and shareholder derivative actions filed by Milberg Weiss Bershad Hynes & Lerach, LLP.

33. According to the indictment in <u>United States v. Lazar, et al.</u>, CR. 05-587, United States District Court for the Central District of California, Vogel accepted illegal payments from Milberg Weiss Bershad Hynes & Lerach, LLP and/or one or more of the defendants for his, or his relatives', participation in approximately forty class action law suits.

34. Steven G. Cooperman ("Cooperman") is an individual; is not a party to this action; prior to May 1989, was a licensed

ophthalmologist;  and   resided   in   Brentwood,  California  and
Connecticut.

35.  Between 1988 and 1998, Cooperman and certain of his
relatives and associates, frequently served as plaintiffs in class
actions and shareholder derivative actions filed by Milberg Weiss
Bershad Hynes & Lerach, LLP.

36.  According to the indictment in <u>United States v.
Lazar, et al.</u>, CR. 05-587, United States District Court for the
Central District of California, Cooperman accepted illegal payments
from Milberg Weiss Bershad Hynes & Lerach, LLP and/or one or more
of the defendants for his, or his relatives', participation in
approximately seventy class action law suits.

<u>THE ENTERPRISE</u>

37.  Milberg   Weiss   Bershad   Hynes   &   Lerach,   LLP
constituted an "enterprise" as that term is defined in Title 18,
United States Code, Section 1961(4), which enterprise engaged in
and  the  activities  of  which  affected  interstate  and  foreign
commerce.

38.  The common purpose of Milberg Weiss Bershad Hynes &
Lerach, LLP as a RICO enterprise was to provide Defendants with a
stable of persons who were ready, willing, and able to serve, and
whom the courts would likely approve to serve, as Plaintiffs, Lead
Plaintiffs and/or Class Representatives; to enable Defendants to

file and maintain the Lawsuits; to assist Defendants in securing Lead Counsel status in the Lawsuits; and to enrich Defendants through the attorneys' fees obtained in the Lawsuits.

39.   Defendants and others are persons or entities separate and distinct from the Milberg Weiss Bershad Hynes & Lerach, LLP, the enterprise, and from the pattern of activity in which it engaged.

## CLASS ACTION ALLEGATIONS

40.   Pursuant to Rules 23(b)(3) and 23(b)(2) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on their own behalf and, as a class action, on behalf of all persons and entities who were members of the certified plaintiffs classes in the lawsuits in which Defendants and/or Milberg Weiss Bershad Hynes & Lerach, LLP made illegal payments to their clients to appear as Plaintiffs, Lead Plaintiffs, and Class Representatives in class actions and derivative suits and/or misrepresented their clients' losses and shareholdings (collectively, the "Lawsuits"), and were harmed by Defendants' actions described below.

41.   Defendants and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant are excluded from the class.

42.   Because thousands of individuals were members of the certified plaintiffs classes in the Lawsuits, the class is so

-11-

numerous that joinder of all members is impracticable; and this action can be properly maintained as a class action.

43. The claims of Plaintiffs are typical of the claims of the other members of the class, and Plaintiffs have the same interests as the other members of the class.

44. A class action is a superior method for the fair and efficient adjudication of this controversy, and Plaintiffs anticipate that the management of this litigation as a class action will present no difficulty.

45. Plaintiffs are committed to prosecuting this action and have retained competent counsel experienced in class action, RICO, and similar litigations.

46. Questions of law and fact common to the class predominate over questions affecting individual class members, including:

> (a) did Milberg Weiss Bershad Hynes & Lerach, LLP and/or Defendants make illegal payments to Lazar, Vogel and Cooperman to appear as Plaintiffs, Lead Plaintiffs, and/or Class Representatives in the Lawsuits;
>
> (b) did Milberg Weiss Bershad Hynes & Lerach, LLP and/or Defendants agree to split and in fact split their attorneys fees with certain class members and other attorneys to obtain lead counsel status in the Lawsuits;
>
> (c) did Milberg Weiss Bershad Hynes & Lerach, LLP and/ or Defendants file with the courts complaints, motions, and other documents they knew to contain

-12-

false and misleading statements and to omit material facts in the Lawsuits;

(d) did Milberg Weiss Bershad Hynes & Lerach, LLP and/or Defendants cause their clients to make false and misleading statements and omit material facts in documents filed with the courts and in depositions under oath in the Lawsuits;

(e) did Milberg Weiss Bershad Hynes & Lerach, LLP and/or Defendants, acting as fiduciaries for the plaintiff class members in the Lawsuits, improperly obtain attorneys fees at the expense of the class members;

(f) did Milberg Weiss Bershad Hynes & Lerach, LLP and/or Defendants violate the New York Disciplinary Rules of the Code of Professional Responsibility when it agreed to split fees and in fact split fees with certain class members to obtain lead counsel status in the Lawsuits; and

(g) did Plaintiffs and other class members suffer damages as a result of Milberg Weiss Bershad Hynes & Lerach, LLP and/or Defendants' conduct (if so, how much)?

47. Because the Rules of the New York CPR govern all conduct by defendant lawyers and law firms no matter where it occurs, the conduct of defendants will be governed by a uniform standard presenting common questions of law wherever it took place.

## BACKGROUND

### Representative Actions

48. Representative actions can be prosecuted in two forms: as a class action on behalf of a group of persons with

similar claims and as a derivative suit for the benefit of a corporation.

49. A class action is a civil lawsuit in which a court authorizes a class representative to act on behalf of, and litigate claims for, unnamed class members who are before the court only by virtue of the class representative, who acts on their behalf.

50. Class actions are often brought to address violations of federal laws and state laws by publically traded companies.

51. In these cases, a Representative Plaintiff alleges that his or her investment in a company was harmed by wrongdoing committed by company executives and others and seeks to obtain money and other relief on behalf of investors in that company who have been similarly harmed.

52. A judgment in a class action binds absent class members who do not expressly notify the court that they wish to "opt out" of, i.e., they wish not to participate in, the litigation.

53. Class actions are begun by filing in federal or state court a complaint in which one or more Plaintiffs allege, among other things, the amount of their losses, the nature of their claims against the defendant or defendants in the action, the reasons why the action should be maintained as a class action, and

-14-

the reasons why the court should authorize the Plaintiff or plaintiffs to represent the interests of absent class members or shareholders in the action.

54.  A shareholder plaintiff designated by the court to manage the case at the outset is called a "Lead Plaintiff."

55.  Lead Plaintiffs subsequently request the court to appoint the attorneys of his or her choice to be lead counsel for the class.

56.  Counsel selected by the Lead Plaintiff to act on behalf of the class of shareholders is called "Lead Counsel" for the class.

57.  Because class actions affect the rights of parties who are not before the court, class actions cannot be maintained unless a court first determines, among other things, that a Lead Plaintiff seeking to serve as a Class Representative for the absent class members or shareholders, as well as the Lead Counsel (the Lead Plaintiff's attorneys), will fairly and adequately represent the interests of the absent class members or shareholders.

58.  A Lead Plaintiff and the attorneys who seek to represent the absent class members or shareholders must represent to the court that (a) the Lead Plaintiff has no interest in the outcome of the action that is antagonistic to, or in conflict with, the interests of the absent class members or shareholders; (b) the

Lead Plaintiff is not subject to unique defenses that could become the focus of the litigation to the detriment of the absent class members or shareholders; and (c) the Lead Plaintiff's attorneys will represent the interests of the absent class members or shareholders fairly and adequately.

59.    The determination that a lawsuit may proceed as a class action requires the "certification" of the action as a class action by the court.

**Fiduciary Duties of Lead Plaintiffs, Class
Representatives, and Their Attorneys, the Lead Counsel**

60.    A lawyer may not commence a class or a derivative action unless his client, the plaintiff, is a member of the class, i.e., an owner of stock in the company being sued for damaging the stock, or a shareholder of the company on whose behalf the derivative claim is being made.

61.    Hence, a lawyer must have a client shareholder to commence a shareholder class action or a shareholder derivative suit and qualify for the benefits of either type of action.

62.    In cases under the federal securities laws and increasingly in state law derivative claims, the court will appoint as lead plaintiff the shareholder plaintiff who has sustained the most losses as a result of the alleged misconduct and will appoint as lead counsel the lawyer "chosen" by the Lead Plaintiff.

-16-

63. This is based on the theory that the plaintiff shareholder with the largest losses will have the greatest incentive to supervise the management of the case by the Lead Counsel.

64. Because the conduct and decisions of a Lead Plaintiff or Class Representative in a class action or a derivative suit affect the rights of absent class members or absent shareholders of the corporation for whose benefit the derivative suit is filed, the absent class members or shareholders are not before the court, and they do not speak for themselves, the Lead Plaintiff/Class Representative owes absent class members or shareholders important fiduciary duties.

65. As a result of these legally imposed duties, a Lead Plaintiff or Class Representative, among other things: (a) may not place his or her own interests above those of absent class members or shareholders; (b) may not act in a deceitful or unethical manner toward the court or the absent class members or shareholders; and (c) must disclose to the court any fact that reasonably could impair the ability of counsel, the Class Representative, or the Shareholder to represent the interests of the absent class members/shareholders fairly or adequately.

66. As a result of these legally imposed duties, the Lead Plaintiff's attorneys, among other things, may not give

-17-

preferential treatment to the interests of the Lead Plaintiff over
the interests of the absent class members or shareholders because
the preferential treatment will cause the representative plaintiff
to prefer his own or counsel's interests over the interests of the
class or the corporation.

**Court Approval of Settlement
and Award of Attorneys' Fees**

67.    Courts presiding over class and derivative actions
must supervise the Lead Plaintiff/Class Representative and Lead
Counsel to be certain that they protect the rights and interests of
the absent class members or shareholders.

68.    As a result, the court must scrutinize any proposed
settlement of a class action and may approve a settlement only if
the court first determines that the settlement is fair to absent
class members or shareholders.

69.    The Lead Plaintiff and Class Representative do not
pay attorneys' fees or expenses in class actions or derivative
suits.

70.    Lead counsel obtain their attorneys' fees and
expenses by court order from the fund created by the recovery
obtained in the lawsuit for the shareholders or the corporation.

71.    Consistent with their fiduciary duties, plaintiff's
attorneys are required, as part of any request for attorneys' fees,

to disclose to the court all facts that could reasonably bear on their entitlement to the requested fees, including any payments they might have made to Plaintiffs, Lead Plaintiffs, and Class Representatives.

**Prohibition on Lead Plaintiff**
**Sharing in the Award of Attorneys' Fees**

72.   The compensation that may be paid to a Lead Plaintiff in a class action is limited to the following:  (a) the Lead Plaintiff's pro rata share of the recovery obtained in the lawsuit, calculated on the same basis as it is for the shares owned by all the absent class members or shareholders; and (b) his or her actual costs incurred in connection with the lawsuit. Additionally, in some circumstances, the court presiding over such a lawsuit may award a modest bonus payment to the Lead Plaintiff, in recognition of his or her effort in obtaining a successful result for the absent class members or shareholders.

73.   Because a Lead Plaintiff acts as a fiduciary for the absent class members or the absent shareholders and is required to remain free of any conflict of interest toward them, the Lead Plaintiff may not directly or indirectly receive any compensation that would conflict with his independence or his fiduciary obligations, specifically including any direct or indirect interest

in any attorneys' fees awarded to, or sought by, the Lead Counsel
in the lawsuit.

74. If a court presiding over a class action were to
discover that the Lead Plaintiff had an agreement with plaintiff's
attorneys to share in fees awarded to, or sought by, the attorneys,
or that the Lead Plaintiff had secretly shared in the attorneys'
fees awarded in other class actions in which he or she had served
as a Plaintiff, Lead Plaintiff, or Class Representative, the court
should, and likely would, disqualify the Lead Plaintiff and his or
her attorneys from representing the absent class members or
shareholders and disallow fees requested by or awarded to the
plaintiff's attorneys.

75. If a payment by Lead Counsel to the Plaintiff, Lead
Plaintiff, or Class Representative is disclosed to the Court, fees
to Lead Counsel should not be awarded by the Court but should be
left for distribution to the class in the fund.

**New York Disciplinary Rules of the**
**Code of Professional Responsibility**

76. DR 1-102 of the New York Disciplinary Rules of the
CPR provides that a lawyer or law firm shall not violate a
disciplinary rule, engage in illegal conduct that adversely
reflects on the lawyer's honesty or trustworthiness, or engage in
conduct involving dishonesty, fraud, deceit, or misrepresentation.

-20-

77.   DR 2-107 of the CPR provides that a lawyer shall not divide a fee for legal services with another lawyer who is not a partner or associate of the lawyer's law firm unless full disclosure of the division is made to the client; the division is in proportion to the services performed; and the total fee does not exceed reasonable compensation for all legal services rendered.

78.   DR 3-102 of the CPR prohibits the division of legal fees with a non-lawyer.

**Federal Law Relating to Securities Class Actions**

79.   In 1995, Congress enacted the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4, which prohibits paying a Lead Plaintiff more than his or her pro rata share of the recovery for the class.

80.   The PSLRA requires the Lead Plaintiff to sign a certificate declaring under oath that he or she did not purchase shares of the corporation at the direction of counsel, that he or she would not accept any amount greater than his or her pro rata share of any settlement, and that he or she reviewed the complaint and authorized its filing.

81.   Rule 11 of the Federal Rules of Civil Procedure provides that the signature of an attorney certifies, among other things, that "to the best of the person's knowledge, information, and belief formed after an inquiry reasonable under the

circumstances, ... the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery."

## COUNT ONE
## (Violations of 18 U.S.C. § 1962(c))

82.  Plaintiffs repeat and reallege each of the allegations set forth in paragraphs 1 through 81 above as if set forth here in full.

83.  18 U.S.C. § 1962(c) proscribes the following conduct:

> It shall be unlawful for any person employed
> by or associated with  any enterprise engaged
> in,  or  the  activities  of  which  affect,
> interstate or foreign commerce, to conduct or
> participate, directly or indirectly, in the
> conduct of such enterprise's affairs through a
> pattern of racketeering activity . . ..

84.  The purpose of this provision was to prevent the infiltration of legitimate business, e.g., the practice of law, by organized criminals.

85.  Pursuant to 18 U.S.C. § 1964, any person or corporation injured in its business or property by reason of a violation of 18 U.S.C. § 1962 may recover threefold the actual damages, plus the costs of the suit, including reasonable attorneys fees.

86.  From the 1980's to at least 2004, the individual defendants being members of, employed by, or associated with Milberg Weiss Bershad Hynes & Lerach, LLP unlawfully, willfully and knowingly conducted and participated, directly and indirectly, in the conduct of the affairs of Milberg Weiss Bershad Hynes & Lerach, LLP, which enterprise engaged in and the activities of which affected interstate and foreign commerce, through a pattern of racketeering activity, consisting of the acts of racketeering described in the paragraphs below, in violation of Title 18, United States Code, Section 1962(c).

**Racketeering Activity**

87.  As detailed below, the individual defendants, having infiltrated Milberg Weiss Bershad Hynes & Lerach, LLP, committed numerous acts of commercial bribery (18 U.S.C. §§ 2, 1952(a)(1) and (3)), mail fraud (18 U.S.C. § 1341), and wire fraud (18 U.S.C. § 1343).

88.  Having committed numerous acts of commercial bribery, mail fraud and wire fraud, the individual Defendants also committed racketeering activities as defined by 18 U.S.C. § 1961(1).

89.  The individual Defendants' acts of commercial bribery, mail fraud, and wire fraud are racketeering activities and constitute predicate acts as defined under RICO.

-23-

**Pattern of Racketeering Activity**

90.  Defendants Bershad, Schulman, Weiss, Lerach and others agreed to and did conduct Milberg Weiss Bershad Hynes & Lerach, LLP through a pattern of racketeering activity, their conduct thus making Milberg Weiss Bershad Hynes & Lerach, LLP a criminal enterprise operating through a pattern of racketeering activity.

91.  Defendants Bershad, Schulman, Weiss, Lerach and others, agreed to and did conduct Milberg Weiss Bershad Hynes & Lerach, LLP pursuant to their scheme to: (a) provide Milberg Weiss Bershad Hynes & Lerach, LLP and its partners, including defendants Bershad, Schulman, Weiss, Lerach and others, with a stable of persons who were ready, willing, and able to serve, and whom the courts would likely approve to serve, as Lead Plaintiffs representing absent class members and shareholders in the Lawsuits; (b) to enable Milberg Weiss Bershad Hynes & Lerach, LLP and its partners, including defendants Bershad, Schulman, Weiss, Lerach and others, to file and maintain the Lawsuits; (c) to assist Milberg Weiss Bershad Hynes & Lerach, LLP and its partners, including defendants Bershad, Schulman, Weiss, Lerach and others, in securing appointments as lead counsel in the Lawsuits; and (d) to enrich Milberg Weiss Bershad Hynes & Lerach, LLP and others, including defendants Bershad, Schulman, Weiss and Lerach, and the other

-24-

members and associates of the enterprise through more than approximately $216 million dollars of attorneys' fees Milberg Weiss Bershad Hynes & Lerach, LLP obtained in the Lawsuits and litigation resolving the Lawsuits and the more than approximately $ 11 million dollars in payments that Milberg Weiss Bershad Hynes & Lerach, LLP and/or Defendants and others paid and caused to be paid to Lazar, Vogel, and Cooperman.

92.   The mail fraud, wire fraud, and commercial bribery committed by defendants form a pattern of racketeering activity through a criminal enterprise under 18 U.S.C. § 1961(5).

93.   All racketeering activity described below is directly related to the racketeering enterprise, i.e., Milberg Weiss Bershad Hynes & Lerach, LLP.

94.   All racketeering activity described above is part of the nexus of the affairs and functions of the racketeering enterprise Milberg Weiss Bershad Hynes & Lerach, LLP.

95.   The Defendants Bershad, Schulman, Weiss and others were able to commit the racketeering activities by virtue of their position in, association with, or their involvement in or control over the affairs of Milberg Weiss Bershad Hynes & Lerach, LLP.

96.   The racketeering activities began in or about 1981 and the pattern of racketeering activity is closed-ended.

-25-

97.   The racketeering activities have the same or similar purposes, results, participants, victims, and methods of commission.

98.   Defendants' racketeering activities constitute their regular way of doing business.

99.   As a result of their violation, Plaintiffs and the Class members were damaged in an amount not less than $214 million but not yet fully ascertained.

**Commercial Bribery**

100. Since 1980, Defendants have filed hundreds of class actions and shareholder derivative actions against publicly traded companies and other major businesses.   These lawsuits have generated more than $1 billion in attorneys' fees for Defendants.

101. To bring these lawsuits, Defendants needed persons who would agree to serve as Lead Plaintiffs and whom the courts likely would approve to assume the fiduciary responsibilities involved in representing the absent class members or shareholders in these lawsuits.

102. Defendants filed more than seventy class actions and shareholder derivative lawsuits on behalf of Lazar or his family through 2004 (the "Lazar Lawsuits").

103. Defendants filed the Lazar Lawsuits in federal and state courts throughout the United States, including New York.

Defendants earned millions of dollars in fees in cases in which Lazar or members of his family were the Lead Plaintiffs.

104. From those fees, Defendants paid Lazar approximately $2.4 million in secret and illegal payments through various intermediary law firms and lawyers to induce Lazar or members of his family to serve as Plaintiff, Lead Plaintiff, and/or Class Representative in the Lazar Lawsuits.

105. Defendants filed more than forty class actions and shareholder derivative lawsuits on behalf of Vogel or his family or associates through 2004 (the "Vogel Lawsuits").

106. Defendants filed the Vogel Lawsuits in federal and state courts throughout the United States, including New York. Defendants earned millions of dollars in fees in cases in which Vogel or members of his family or associates were the Plaintiffs, Lead Plaintiffs, or Class Representatives.

107. From those fees, Defendants made approximately $2.4 million in secret and illegal payments to Vogel through various intermediary law firms and lawyers to induce Vogel to serve as Lead Plaintiff in the Vogel Lawsuits.

108. Defendants filed more than seventy class actions and shareholder derivative lawsuits on behalf of Cooperman or his family or associates through 2004 (the "Cooperman Lawsuits").

109. Defendants filed the Cooperman Lawsuits in federal and state courts throughout the United States, including New York. Defendants earned millions of dollars in fees in cases in which Cooperman or members of his family or associates were the Plaintiff, Lead Plaintiff, and/or Class Representative.

110. From those fees, Defendants made approximately $6.5 million in secret and illegal payments through various intermediary law firms and lawyers to induce Cooperman to serve as Lead Plaintiff in the Cooperman Lawsuits.

111. Defendants Lazar, Vogel, and Cooperman concealed the bribe payments from the courts presiding over the lawsuits, the other parties to the lawsuits, and the absent class members and shareholders whose interests they purported to represent by, among other things: (a) filing with the courts complaints, motions, and other documents containing false and misleading statements and omitting material facts; (b) making false and misleading statements in depositions under oath; (c) filing false and misleading declarations, certificates, and other documents signed under penalty of perjury; and (d) sending false and misleading documents, including, but not limited to, Notices of Settlement and Settlement Agreements, to absent class members.

112. Defendants disguised the payments in their internal accounting records and in letters to the intermediary law firms and

lawyers, by falsely describing them as fees paid for the services of the intermediary law firms or lawyers when, in fact, they were illegal payments for the benefit of Lazar, Vogel and/or Cooperman.

113. Defendants made illegal payments, i.e., paid bribes, to its clients in more than 150 cases. In the last 4 years, Defendants made illegal payments of bribes in at least the following cases: Schein Pharmaceutical, Civ. 98-4311 (U.S. District Court, District of New Jersey); Future Healthcare, Civ. 95-182 (U.S. District Court, Southern District of Ohio); Baan Company, Civ. 98-2532 (U.S. District Court, District of Columbia); Oxford Health Plans, Civ. 97-2325 (U.S. District Court, District of Connecticut); Life Technologies, No. 16519 (New Castle County, Delaware Chancery Court); Infinity Broadcasting, No. 18219 (New Castle County, Delaware Chancery Court); Intimate Brands, No. 19382 (New Castle County, Delaware Chancery Court); US Oncology, No. 324-N (New Castle County, Delaware Chancery Court); and Barnesandnoble.com, No. 042-N (New Castle County, Delaware Chancery Court).

**Mail and Wire Fraud**

114. **In re Schein Pharmaceutical, Inc. (mail fraud).** On September 14, 1998, Tara Lazar, Seymour Lazar's daughter, filed a class action complaint in the United Stated District Court for the

District of New Jersey against, among others, Schein Pharmaceuticals for violations of the securities laws.

115. In connection with her lawsuit, Ms. Lazar submitted a certificate in which she stated under oath that she did not purchase Schein Pharmaceutical securities upon the advice of counsel or to participate as a plaintiff in a federal securities laws/class action. This statement was false.

116. Milberg Weiss Bershad Hynes & Lerach, LLP filed the complaint against Schein on behalf of Lazar as part of its scheme to bribe Lazar by paying part of its legal fees to act as a Lead Plaintiff.

117. The payment arrangement between Milberg Weiss Bershad Hynes & Lerach, LLP and Lazar violated federal law, the New York disciplinary rules, and Milberg Weiss Bershad Hynes & Lerach, LLP's and Lazar's duty to the class.

118. On September 15, 1998, plaintiff Korsinsky, represented by Beatie and Osborn, also filed a class action complaint in the United Stated District Court for the District of New Jersey against, among others, Schein Pharmaceuticals.

119. On November 13, 1998, Milberg Weiss Bershad Hynes & Lerach, LLP moved to appoint Ms. Lazar as Lead Plaintiff and Milberg Weiss Bershad Hynes & Lerach, LLP as lead counsel. In its

application to the Court, Milberg Weiss Bershad Hynes & Lerach, LLP failed to disclose its payment arrangement.

120. Milberg Weiss Bershad Hynes & Lerach, LLP's secret payment agreement with Lazar tainted Milberg Weiss Bershad Hynes & Lerach, LLP's application for lead counsel because by agreeing to split fees with Lazar, Lazar was not a typical Schein shareholder and Milberg Weiss Bershad Hynes & Lerach, LLP was not adequate counsel to act as lead counsel.

121. On December 15, 1998, the court appointed Ms. Lazar to be Lead Plaintiff and appointed Milberg Weiss Bershad Hynes & Lerach, LLP as lead counsel.

122. On March 29, 1999, Ms. Lazar filed a first consolidated and amended class action complaint; and on June 1, 1999, Schein and the other defendants moved to dismiss the case.

123. On June 15, 2000, Schein and the other defendants withdrew their pending motions to dismiss.

124. On September 22, 2000, Milberg Weiss Bershad Hynes & Lerach, LLP and the defendants filed a Stipulation and Agreement of Settlement. The settlement agreement required a payment of $8 million to the class, and stated that the defendants would take no position on plaintiffs' request for an award of 33 1/3% of the settlement amount as attorneys' fees and the reimbursement of expenses.

125. The Notice of Settlement and Settlement Agreement were mailed to all class members on or soon after it was so ordered by the court on October 2, 2000. Neither the Notice of Settlement nor the Settlement Agreement notified the absent class members that Milberg Weiss Bershad Hynes & Lerach, LLP was giving Lead Plaintiff an illegal payment.

126. On December 8, 2000, the court awarded Milberg Weiss Bershad Hynes & Lerach, LLP as Lead Counsel a percentage of the settlement fund as attorney's fees.

127. Were it not for Milberg Weiss Bershad Hynes & Lerach, LLP's fraudulent conduct, Korsinsky and the class of Schein Pharmaceutical shareholders represented by Milberg Weiss Bershad Hynes & Lerach, LLP would have received a larger recovery.

128. On July 16, 2005, the office of the United States Attorney for the Central District of California indicted Seymour Lazar, Tara Lazar's father, for receiving secret payments from Milberg Weiss Bershad Hynes & Lerach, LLP in connection with the Lazar Lawsuits, including Schein.

129. The indictment disclosed, for the first time, that Milberg Weiss Bershad Hynes & Lerach, LLP paid Ms. Lazar $188,000 for serving as Lead Plaintiff in the Schein litigation.

130. Plaintiff Korsinsky did not discover, and could not reasonably have discovered, defendant Milberg Weiss Bershad Hynes & Lerach, LLP's fraudulent conduct prior to July 16, 2005.

131. The indictment also disclosed that Milberg Weiss Bershad Hynes & Lerach, LLP paid Lazar for acting as lead counsel in more than fifty securities class actions since 1980.

132. Plaintiffs believe that they will be able to provide additional details about Milberg Weiss Bershad Hynes & Lerach, LLP's illegal scheme and efforts to conceal the payments to Plaintiffs, Lead Plaintiffs, and Class Representatives after the completion of discovery.

133. **Misrepresentation of Clients' Losses.** In order to increase the number of cases in which its client was appointed lead plaintiff, it was appointed lead counsel, and it would keep the lion's share of the legal fees awarded by the court from the fund, Milberg Weiss Bershad Hynes & Lerach, LLP has engaged in a pattern of conduct of misrepresenting its clients losses to the courts to obtain lead counsel status.

134. In In re Network Associates, Inc., Securities Litigation, Milberg Weiss Bershad Hynes & Lerach, LLP filed certificates in support of its application for Lead Plaintiff and lead counsel which included numerous discrepancies, ranging from

-33-

unsigned forms, to forms refusing to be Lead Plaintiff, to trades that could not have occurred as represented.

135. The court ordered discovery, but Milberg Weiss Bershad Hynes & Lerach, LLP's Lead Plaintiff failed to attend. The court found Milberg Weiss Bershad Hynes & Lerach, LLP's submissions "laced with errors and unspoken assumptions."

136. Because the chief executive officer of the proposed Lead Plaintiff had been arrested, the company was under investigation, and the class action stock had been acquired under atypical circumstances, the court denied the application for Lead Plaintiff and lead counsel.

137. In <u>In re Oxford Health Plans, Inc, Securities Litigation</u>, Index No. 97-CV-2325, United States District Court, District of Connecticut. Milberg Weiss Bershad Hynes & Lerach, LLP, claimed its client lost and filed a certificate that its client lost $3,409,423.11. After six other potential Lead Plaintiffs had withdrawn from the case, Milberg, Weiss, Bershad, Hynes & Lerach changed its clients losses from $3,409,423.11 to $917,000.

138. In <u>Stanley v. Safeskin</u>, Index No. 99-0454 (BTM)(LSP), United States District Court, Southern District of California. Milberg Weiss Bershad Hynes & Lerach, LLP's first client failed to list on its certificate approximately 72% of the

trades it made during the proposed class period and the second proposed Lead Plaintiff failed to list more than 70% of his trades.

139. Milberg Weiss Bershad Hynes & Lerach, LLP withdrew another proposed class representative on the eve of depositions because her husband was the true beneficial owner, he had previously pled guilty to bank fraud, and he was currently charged with insider trading.

140. In Kassin v. VA Linux Systems, Index No. 01 Civ 2085 (MGC) (S.D.N.Y. 2001), Milberg Weiss Bershad Hynes & Lerach, LLP showed its client's losses at $2.4 million, but the proposed Lead Plaintiff's second declaration showed that to be an overstatement and that had it undisclosed other transactions (puts and calls) which netted a profit (and, therefore, reduced the losses further). Milberg Weiss Bershad Hynes & Lerach, LLP's client also failed to supply, as the court ordered, a declaration of losses under oath.

141. In Steiner v. Aurora Foods, Inc., Index No. C 00-0602CW, two of Milberg Weiss Bershad Hynes & Lerach, LLP's, Lead Plaintiffs were forced to reduce their losses from $4,183,595.88 collectively, to $66,000 and $68,000 individually, totaling $134,000.

142. In California Public Employees' Retirement System v. Chubb Corp., No. 00-4285(GEB), United States District Court, District of New Jersey, Milberg Weiss Bershad Hynes & Lerach, LLP

proposed a candidate that had not purchased stock during the class period.

143. In <u>In re Waste Management, Inc., Securities Litigation</u>, Milberg Weiss Bershad Hynes & Lerach, LLP's proposed plaintiff refused to be Lead Plaintiff unless he was compensated, a violation of the PSLRA; the second proposed Lead Plaintiff specifically stated that he was unwilling to be a class representative; and the third proposed plaintiff failed to list the number of times it had been Lead Plaintiff.

144. In <u>In re MicroStrategy, Inc. Securities Litigation</u>, No. 00-473, United States District Court, Eastern District of Virginia, Milberg Weiss Bershad Hynes & Lerach, LLP's client told Milberg Weiss Bershad Hynes & Lerach, LLP that it purchased 2,320 shares of MicroStrategy stock. Milberg Weiss Bershad Hynes & Lerach, LLP represented to the court that its client purchased 4,640 shares of MicroStrategy stock, effectively doubling its client's losses. Milberg Weiss Bershad Hynes & Lerach, LLP also failed to inform the court that its client subsequently sold a significant amount of its MicroStrategy shares, reducing its losses. As a result of Milberg Weiss Bershad Hynes & Lerach, LLP's false representation, the court selected Milberg Weiss Bershad Hynes & Lerach, LLP's client as Lead Plaintiff and Milberg Weiss Bershad Hynes & Lerach, LLP as lead counsel. Milberg Weiss Bershad

-36-

Hynes & Lerach, LLP was subsequently awarded more than $25 million in attorneys fees.

145. In <u>In re Sonus Networks, Inc. Securities Litigation</u>, No. 02-11315 (MLW) (District of Massachusetts), Milberg Weiss Bershad Hynes & Lerach, LLP was admonished for allowing an incorrect certificate to be submitted where its lead plaintiff signed the affidavit without reviewing the underlying trading data. Chief Judge Wolf noted that he was "profoundly disturbed" by the error and instructed Milberg Weiss that he did not want to "see anything else like that in this or other cases." This problem, along with several others, ultimately led Chief Judge Wolf to decertify the class.

146. More recently, in <u>In re Organogenesis Securities Litigation</u>, No. 04-10027 (JLT) (District of Massachusetts), Milberg, Weiss, Bershad, and Schulman LLP, filed several inaccurate sworn certificates regarding lead plaintiffs' stock trading records. One Lead Plaintiff originally submitted a sworn certificate listing nine purchases of Organogenesis stock. Two days before the deadline for written discovery, Milberg, Weiss, Bershad, and Schulman LLP told the court and defense counsel that "there may exist certain inadvertent errors in the lead plaintiff certificate of two of the four Lead Plaintiffs in this action." More than two months later, the Lead Plaintiff submitted a second certification

which included transactions performed by his son and
daughter-in-law. After defendants subpoenaed that Lead Plaintiff's
trading records it turned out that he made thirteen purchases and
forty-seven sales of the stock. Although the district court did
not conclude the erroneous certifications were intentional, it was
not persuaded by Milberg, Weiss, Bershad, and Schulman LLP's
explanations for the errors. Ultimately, for a number of reasons
including the problem with the certificate, the district court
refused to appoint Milberg, Weiss, Bershad, and Schulman LLP Lead
Counsel.

147. Several United States District Courts have
considered the indictment against Milberg, Weiss, Bershad, and
Schulman LLP and have removed the firm or refused to appoint the
firm as lead Counsel. See In re New Motor Vehicles Canadian Exp.
Antitrust Litig., 466 F. Supp. 2d 364, MDL. No. 1532, 2006 U.S.
Dist. LEXIS 91360, at *9 (D. Me. Dec. 18, 2006) (Hornby, J.)
(removing Milberg Weiss Bershad & Schulman, LLP from a leadership
role and noting that the "leadership challenge does not raise the
constitutional presumption of innocence" and that Milberg Weiss
would have the "benefit of that presumption in their criminal case.
What I should do in this multidistrict civil case is a separate and
distinct question."); Nowak v. Ford Motor Co., No. 06-11718, 2006
U.S. Dist. LEXIS 92780, at *23 (E.D. Mich. Dec. 22, 2006)(Pepe, J.)

(choosing another plaintiffs' group to lead the litigation and
acknowledging "the presumption of innocence and the vigorous
denials of wrongdoing by Milberg Weiss and by counsel for the
lawyers individually charged . . . cannot erase the obvious --
that this indictment of a major law firm for alleged bribery,
perjury and fraud by its named partners, could significantly harm
the commitment of long term, unaltered legal personnel resources
from the Milberg Weiss frm [sic]."); In re General Electric ERISA
Litigation, No. 06-315, Docket Entry #33 (N.D.N.Y. Aug. 3, 2006)
(Homer, M.J.) (delaying a decision on appointment of lead counsel
but noting that "while recognizing Milberg Weiss's presumptive
innocence, the Court must also consider on behalf of the putative
class that a grand jury found probable cause to believe that
Milberg Weiss committed egregious wrongs in other class actions.");
In re Medtronic, Inc., 434 F. Supp. 2d 729, 732 (D. Minn. 2006)
(Rosenbaum, J.) (finding that as part of its duty owed to
transferee plaintiffs, the court should disqualify Milberg Weiss
from the Plaintiffs' Steering Committee and noting "a Grand Jury's
indictment means that it found probable cause to believe a criminal
act has taken place."); In re Organogenesis Securities Litigation,
No. 04-10027 (D. Mass. 2006) (The district court refused to appoint
Milberg, Weiss, Bershad, and Schulman LLP lead counsel, in part
because of the indictment, noting that it took the firm a month to

-39-

inform the court of the indictment and even then it was not very
forthcoming about the participation of certain attorneys in the
case.). See also Mauldin v. Wal-Mart Stores, Inc., No. 01-2755,
2006 U.S. Dist. LEXIS 85189, at *11 (N.D. Ga. Nov. 22, 2006)
(Carnes, J.) ("Given the evidence of suspicious payments to
Mauldin, and the recent indictment of Milberg Weiss for recruiting
plaintiffs to participate in class action lawsuits, discovery is
warranted to ensure that Mauldin's EEOC charge was not fraudulently
procured.").

148. Milberg Weiss Bershad Hynes & Lerach, LLP has
consistently shown its belief that Rule 11 and the PSLRA does not
govern its actions and should be ignored. Chubb Corp., 127
F.Supp.2d at 580-81 (Milberg Weiss Bershad Hynes & Lerach, LLP's
"conduct contravenes both the letter and spirit of the PSLRA."
Milberg Weiss Bershad Hynes & Lerach, LLP's "self-promotional
material further diminishes the effectiveness of notices published
under the PSLRA because it undermines the PSLRA's goal of bringing
forward independent competing class members."); In re BankAmerica
Corp. Securities Litigation, 95 F.Supp.2d at 1050 ("Milberg Weiss's
behavior in these cases are precisely the sort of lawyer-driven
machinations the PSLRA was designed to prevent" and "Milberg's
state case was "nothing more than a thinly-veiled attempt to
circumvent federal law."); In re McKesson HBOC, Inc. Securities

-40-

Litigation, 126 F.Supp.2d 1239, 1243 (N.D. Cal. 2000) (Milberg Weiss Bershad Hynes & Lerach, LLP's solicitation efforts were "a particular evil of past securities litigation . . ."); In re BankAmerica Corp. Securities Litigation, 95 F.Supp.2d at 1050 (Milberg Weiss Bershad Hynes & Lerach, LLP does "not have the best interests of the class at heart and have proved themselves wholly inadequate to control the conduct of this suit"); In re Waste Management, Inc. Securities Litigation, 128 F.Supp.2d at 419 (a past client accused Milberg Weiss Bershad Hynes & Lerach, LLP Weiss of "a pattern of disloyalty to its clients and placing its own financial interests above those of its past and current clients").

## COUNT TWO
### (Violations of 18 U.S.C. § 1962(a))

149. Plaintiffs repeat and reallege each of the allegations set forth in paragraphs 1 through 81 and paragraphs 87 through 148 above as if set forth herein.

150. 18 U.S.C. § 1962(a) proscribes the following conduct:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

151. Pursuant to 18 U.S.C. § 1964, any person or corporation injured in its business or property by reason of a violation of 18 U.S.C. § 1962 may recover threefold the actual damages, plus the costs of the suit, including reasonable attorneys fees.

152. From the 1980's to at least 2004, the individual defendants received income derived, directly or indirectly, from a pattern of racketeering activity, consisting of the acts of racketeering described in paragraphs 87 through 148 above, and unlawfully, willfully and knowingly used or invested, directly or indirectly, part of such income, or the proceeds of such income, in the acquisition of an interest in and/or the establishment or operation of Milberg Weiss Bershad Hynes & Lerach, LLP, which enterprise engaged in and the activities of which affected interstate and foreign commerce, in violation of Title 18, United States Code, Section 1962(a).

### COUNT THREE
### (Violations of 18 U.S.C. § 1962(b))

153. Plaintiffs repeat and reallege each of the allegations set forth in paragraphs 1 through 81 and paragraphs 87 through 148 above as if set forth herein.

154. 18 U.S.C. § 1962(b) proscribes the following conduct:

> It shall be unlawful for any person through a
> pattern of racketeering activity . . . to
> acquire or maintain, directly or indirectly,
> any interest in or control of any enterprise
> which is engaged in, or the activities of
> which affect, interstate or foreign commerce.

155. Pursuant to 18 U.S.C. § 1964, any person or corporation injured in its business or property by reason of a violation of 18 U.S.C. § 1962 may recover threefold the actual damages, plus the costs of the suit, including reasonable attorneys fees.

156. From the 1980's to at least 2004, the individual defendants unlawfully, willfully and knowingly acquired and maintained, directly and indirectly, an interest in and control of Milberg Weiss Bershad Hynes & Lerach, LLP, which enterprise engaged in and the activities of which affected interstate and foreign commerce, through a pattern of racketeering activity, consisting of the acts of racketeering described in paragraphs 87 through 148 above, in violation of Title 18, United States Code, Section 1962(b).

## COUNT FOUR
### (Breach of Fiduciary Duties)

157. Plaintiffs repeat and reallege each of the allegations set forth in paragraphs 1 through 81 and paragraphs 87 through 148 above as if set forth herein.

158. As counsel to the members of the certified plaintiffs class in the lawsuits captioned In re Network Associates, Inc. Securities Litigation, No. 99-1729 (WHA), United States District Court, Northern District of California; In re Oxford Health Plans, Inc., Securities Litigation, MDL No. 1222 (CLB), United States District Court, Southern District of New York; Stanley v. Safeskin, No. 99-454, United States District Court, Southern District of California; Kassin v. VA Linux Systems, No. 01-2085 (MGC) United States District Court, Southern District of New York; Steiner v. Aurora Foods, Inc., No. 00-0602 (CW), United States District Court, Northern District of California; California Public Employees' Retirement System v. Chubb Corp., No. 00-4285 (GEB), United States District Court, District of New Jersey; and In re Waste Management, Inc. Securities Litigation, No. 99-2183, United States District Court, Southern District of Texas; In re MicroStrategy Inc. Securities Litigation, No. 00-473, United States District Court, Eastern District of Virginia; and In re Schein Pharmaceutical, No. 98-4311, United States District Court, District

-44-

of New Jersey, Milberg Weiss Bershad Hynes & Lerach, LLP and the
individual Defendants owed them fiduciary duties.

159. Milberg Weiss Bershad Hynes & Lerach, LLP and the
individual Defendants breached that duty by:

(a)  filing false documents with the court;

(b)  causing its clients to make false statements;

(c)  violating the New York Disciplinary Rules of the
Code of Professional Responsibility;

(d)  violating Rule 11 and Rule 23(a)(4) of the Federal
Rules of Civil Procedure; and

(e)  arranging the appointment of Lead Counsel and Class
Representatives who were not loyal to the class.

160. As a result of Milberg Weiss Bershad Hynes & Lerach,
LLP and the individual Defendants' conduct, plaintiffs were
damaged.

## COUNT FIVE
(Violation of Statutes Governing Selection of
Lead Plaintiff, Class Representative, and Lead Counsel)

161. Plaintiffs repeat and reallege each of the
allegations set forth in paragraphs 1 through 81 and paragraphs 87
through 148 above as if set forth herein.

162. Pursuant to the requirements of Federal Rules of
Civil Procedure 23(a)(4), the court must determine, prior to
appointment, that "the representative parties [the class

-45-

representative and counsel for the class] will fairly and adequately protect the interests of the class."

163. In order to qualify as lead counsel for the class or a member of the executive committee for the class, counsel designated by the Lead Plaintiff must be found to have no interest in conflict with the interests of the class and must be found not to have engaged in any conduct suggesting that it would not fairly and fully represent the absent members of the class.

164. An agreement to pay money to the Lead Plaintiff or class representative from the fees obtained constitutes a form of misconduct that makes counsel unsuitable to serve as a fiduciary on behalf of the absent members of the class.

165. The use of undisclosed conduits for transmission of the payment to the Lead Plaintiff or Class Representative from the fees received by defendants serving as lead counsel for the class or as a member of the executive committee constitutes a violation of Rule 23(a)(4) which makes counsel unsuitable for the position of lead counsel or member of the executive committee.

## CONCLUSION

166. The misconduct by Milberg Weiss Bershad Hynes & Lerach, LLP, the criminal enterprise, and the individual defendants make all defendants improper recipients of fees for handling and

-46-

settlement of the cases involved in this complaint and require that they disgorge the fees improperly received.

167. The misconduct requires that the fees received by defendants, regardless of their subsequent distribution, be repaid to the members of the class and distributed to the members of the class.

168. The distribution should be on the same pro rata basis to the same class members used by the claims administrator in the original distribution to the members of the class and the claims administrator in each case should be used to identify the class members, their holdings, their pro rata interest in the fund created for the class and their addresses. Any funds obtained as a result of the assertions of the claims in this complaint should be distributed pro rata to each class, according to its size, and the amount allocated to the class should be distributed pro rata to the members of the class.

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

A.    certifying the class;

B.    awarding to the Plaintiffs classes treble damages as a result of Defendants' violations of the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq.;

C.    awarding to the Plaintiffs classes damages as a result of Defendants' breach of fiduciary duties;

D.    awarding to the Plaintiff classes damages as a result of Defendants' fraud;

E.    awarding to the Plaintiff classes prejudgment and post-judgement interest at the lawful rate;

F.    awarding to Plaintiffs the costs and disbursements of this action, including reasonable attorneys' fees, and

G.    for any other and further relief this Court deems just and proper under the circumstances.

### JURY DEMAND

Plaintiffs respectfully demand a trial by jury.


Dated:    New York, New York
          August 2, 2007


                        BEATIE AND OSBORN LLP


                        By: _____
                            Russel H. Beatie (RB 4439)
                            Daniel A. Osborn (DO 2809)
                            521 Fifth Avenue, 34th Floor
                            New York, New York  10175
                            Telephone:  (212) 888-9000
                            Facsimile:  (212) 888-9664

                            *Attorneys for Plaintiffs*


-48-