EXHIBIT E

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

October 2004 Grand Jury

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR 05-587(A)-DDP |
| | ) | |
| Plaintiff, | ) | **F I R S T** |
| | ) | **S U P E R S E D I N G** |
| v. | ) | **I N D I C T M E N T** |
| | ) | |
| MILBERG WEISS BERSHAD & | ) | [18 U.S.C. § 371: Conspiracy; |
| SCHULMAN LLP, | ) | 18 U.S.C. § 1962(d): |
| DAVID J. BERSHAD, | ) | Racketeering Conspiracy; |
| STEVEN G. SCHULMAN, | ) | 18 U.S.C. §§ 1341 & 1346: Mail |
| SEYMOUR M. LAZAR, and | ) | Fraud; 18 U.S.C. § 1956(h): |
| PAUL T. SELZER, | ) | Money Laundering Conspiracy; 18 |
| | ) | U.S.C. § 1956(a)(1)(B)(i): |
| Defendants. | ) | Money Laundering; 26 U.S.C. |
| | ) | § 7206(1): Subscribing to False |
| | ) | Tax Return; 18 U.S.C. § 1503: |
| | ) | Obstruction of Justice; |
| | ) | 18 U.S.C. § 2: Aiding and |
| | ) | Abetting and Causing an Act to |
| | ) | be Done; 28 U.S.C. § 2461(c), 18 |
| | ) | U.S.C. § 981(a)(1)(C) & 21 U.S.C. |
| | ) | § 853: Criminal Forfeiture; |
| | ) | 18 U.S.C. § 1963: Criminal |
| | ) | Forfeiture; 18 U.S.C. |
| | ) | § 982(a)(1) & 21 U.S.C. § 853: |
| | ) | Criminal Forfeiture] |

24

25

26

27

28

DAA:RER:RJM

**TABLE OF CONTENTS**

PAGE

**INTRODUCTORY ALLEGATIONS** . . . . . . . . . . . . . . . . . . 1

  I.   DEFENDANTS . . . . . . . . . . . . . . . . . . . . . 1

  II.  OTHER INDIVIDUALS . . . . . . . . . . . . . . . . . 3

  III. CLASS ACTIONS AND SHAREHOLDER DERIVATIVE
      ACTIONS . . . . . . . . . . . . . . . . . . . . . . 4

      A.  Overview . . . . . . . . . . . . . . . . . . . 4

      B.  Benefits of Securing "Lead Counsel" Status . . . 7

      C.  Fiduciary Duties of Named Plaintiffs and
          Their Attorneys . . . . . . . . . . . . . . . 7

      D.  Court Approval of Settlements and Awards of
          Attorneys' Fees . . . . . . . . . . . . . . . 8

      E.  Limitations on Compensation of Named
          Plaintiffs . . . . . . . . . . . . . . . . . . 9

  IV.  DEFENDANTS' SECRET AND ILLEGAL KICKBACK SCHEME
      IN CLASS ACTIONS AND SHAREHOLDER DERIVATIVE
      ACTIONS . . . . . . . . . . . . . . . . . . . . . . 10

  V.   SUMMARY OF KICKBACK PAYMENTS . . . . . . . . . . . 14

      A.  Kickback Payments to Lazar . . . . . . . . . 14

      B.  Kickback Payments to Vogel . . . . . . . . . 17

      C.  Kickback Payments to Cooperman . . . . . . . 19

**COUNT ONE [18 U.S.C. § 371][Conspiracy]** . . . . . . . . . . . 24

  I.   THE OBJECTS OF THE CONSPIRACY . . . . . . . . . . . 24

  II.  MANNER AND MEANS OF THE CONSPIRACY . . . . . . . . 26

  III. OVERT ACTS . . . . . . . . . . . . . . . . . . . . 33

      A.  Overt Acts in the Lazar Lawsuits . . . . . . 33

      B.  Overt Acts in the Vogel Lawsuits . . . . . . 51

      C.  Overt Acts in the Cooperman Lawsuits . . . . . 64

/ / /

/ / /

i

COUNT TWO [18 U.S.C. § 1962(d)][Racketeering Conspiracy] . .  79

    I.   THE ENTERPRISE . . . . . . . . . . . . . . . . .  79

    II.  PURPOSES OF THE RACKETEERING CONSPIRACY . . . . . .  79

    III. THE RACKETEERING CONSPIRACY . . . . . . . . . . .  80

    IV.  MANNER AND MEANS OF THE CONSPIRACY . . . . . . . .  81

COUNTS THREE THROUGH FIVE [18 U.S.C. §§ 1341, 1346, 2]
[Mail Fraud; Aiding and Abetting; and Causing An Act
to be Done] . . . . . . . . . . . . . . . . . . . . . .  82

COUNTS SIX THROUGH EIGHT [18 U.S.C. §§ 1341, 1346, 2]
[Mail Fraud; Aiding and Abetting; and Causing An Act
to be Done] . . . . . . . . . . . . . . . . . . . . . .  84

COUNT NINE [18 U.S.C. § 1956(h)][Money Laundering
Conspiracy] . . . . . . . . . . . . . . . . . . . . . .  86

    I.   INTRODUCTION . . . . . . . . . . . . . . . . . .  86

    II.  THE OBJECTS OF THE MONEY LAUNDERING
         CONSPIRACY . . . . . . . . . . . . . . . . . . .  87

    III. THE MANNER AND MEANS OF THE MONEY
         LAUNDERING CONSPIRACY . . . . . . . . . . . . . .  88

COUNTS TEN THROUGH THIRTEEN
[18 U.S.C. §§ 1956(a)(1)(B)(i) and 2][Concealment
Money Laundering; Aiding and Abetting and
Causing An Act to be Done] . . . . . . . . . . . . . . .  90

COUNTS FOURTEEN THROUGH SIXTEEN [26 U.S.C. § 7206(1)]
[Subscribing to False Tax Return] . . . . . . . . . . .  92

COUNT SEVENTEEN [18 U.S.C. §§ 1503, 2][Obstruction
of Justice; Causing An Act to be Done] . . . . . . . . .  93

COUNT EIGHTEEN [28 U.S.C. § 2461(c),
18 U.S.C. § 981(a)(1)(C), and 21 U.S.C. § 853]
[Criminal Forfeiture] . . . . . . . . . . . . . . . . .  94

COUNT NINETEEN [18 U.S.C. § 1963]
[Criminal Forfeiture] . . . . . . . . . . . . . . . . .  97

COUNT TWENTY [18 U.S.C. § 982(a)(1)
and 21 U.S.C. § 853][Criminal Forfeiture] . . . . . . .  100

The Grand Jury charges:

## INTRODUCTORY ALLEGATIONS

I.  **DEFENDANTS**

1.  At all times relevant to this Indictment, defendant
MILBERG WEISS BERSHAD & SCHULMAN LLP, formerly known as "Milberg
Weiss Bershad Hynes & Lerach LLP" and "Milberg Weiss Bershad
Specthrie & Lerach" ("MILBERG WEISS"), was a New York law firm
partnership with principal offices in New York, New York and,
through on or about May 1, 2004, San Diego, California.  At all
times relevant to this Indictment, MILBERG WEISS represented
plaintiffs in class actions and shareholder derivative actions in
federal and state courts throughout the United States, including
in the Central District of California.

2.  At all times relevant to this Indictment, defendant
DAVID J. BERSHAD ("BERSHAD") was a named partner in
MILBERG WEISS, the senior partner primarily responsible for
overseeing MILBERG WEISS's financial affairs and accounting
department, and one of MILBERG WEISS's original managing
partners.  During the times relevant to this Indictment, BERSHAD
resided in New Jersey and worked in MILBERG WEISS's New York
office.  On or about January 1, 1998, BERSHAD was conferred the
title "Partner in charge" of that office and became a member of
the firm's Executive Committee.  During the years 1983 through
2005, BERSHAD owned between 10.11% and 17.72% of the firm, and
his share of MILBERG WEISS's profits totaled approximately
$160.9 million.

3.  Defendant STEVEN G. SCHULMAN ("SCHULMAN") became a non-
equity partner in MILBERG WEISS on or about January 1, 1989, and

became an equity partner in MILBERG WEISS on or about January 1,
1991.  During the times relevant to this Indictment, SCHULMAN
resided in New York and worked in MILBERG WEISS's New York
office.  SCHULMAN was appointed to MILBERG WEISS's Management
Committee on or about January 1, 1998; became a member of
MILBERG WEISS's Executive Committee on or about January 1, 1999;
and became a named partner on or about May 1, 2004.  SCHULMAN's
ownership interest in MILBERG WEISS grew from approximately
1.25%, at the time he became an equity partner in 1991, to 15.0%
in 2005.  During the years 1991 through 2005, SCHULMAN's share of
MILBERG WEISS's profits totaled approximately $67.1 million.

    4.    During the times relevant to this Indictment,
defendants BERSHAD and SCHULMAN each possessed substantial
control over the management and conduct of MILBERG WEISS's
business affairs.  Prior to on or about January 1, 1999, BERSHAD,
as an original managing partner, possessed the authority to veto
any proposed action or decision affecting the operation or
management of MILBERG WEISS.  Between on or about January 1, 1999
and May 1, 2004, BERSHAD and SCHULMAN, as members of
MILBERG WEISS's Executive Committee, shared final decision making
authority over all actions or decisions affecting the operation
or management of the firm.  After on or about May 1, 2004,
BERSHAD again possessed the authority to veto any action or
decision affecting MILBERG WEISS, and SCHULMAN continued to hold
decision making authority through his vote as a member of
MILBERG WEISS's Executive Committee.

    5.    At all times relevant to this Indictment, defendant
SEYMOUR M. LAZAR ("LAZAR") resided in Palm Springs, California;

2

owned and controlled substantial real property throughout
Riverside County, California, and elsewhere; and was an active
purchaser and seller of publicly traded stocks.  Between in or
about 1981 and 2002, LAZAR and certain of his family members
frequently served as plaintiffs in class actions and shareholder
derivative actions brought and caused to be brought by
MILBERG WEISS, BERSHAD, SCHULMAN, and others.

     6.   At all times relevant to this Indictment, defendant
PAUL T. SELZER ("SELZER") was a California lawyer residing in
Palm Springs, California.  Prior to in or about July 1995, SELZER
was a partner in a law firm that maintained offices in Palm
Springs and elsewhere in California (the "Palm Springs Law
Firm"), which specialized in real estate, business, and municipal
law.  In or about July 1995, SELZER left the Palm Springs Law
Firm to co-found a small law firm in Palm Springs, California
(the "Selzer Law Firm"), where he was a partner through in or
about 2004.  At all times relevant to this Indictment, SELZER,
the Palm Springs Law Firm, and the Selzer Law Firm provided legal
services to defendant LAZAR relating to his business and real
estate holdings and other personal affairs.  SELZER specialized
in non-litigation matters and had no expertise in litigating
class actions or shareholder derivative actions; the other
attorneys at the Palm Springs and Selzer Law Firms likewise had
little if any experience in litigating class actions or
shareholder derivative actions.

## II.   OTHER INDIVIDUALS

     7.   During the times relevant to this Indictment,
"Partner A," "Partner B," and "Partner E" were senior partners in

1  MILBERG WEISS.

2       8.    During the times relevant to this Indictment,

3  Howard J. Vogel ("Vogel") resided in New Jersey and Florida and

4  worked primarily as a commercial real estate mortgage broker.

5  Between in or about 1991 and 2005, Vogel and certain of his

6  family members and associated entities frequently served as

7  plaintiffs in class actions and shareholder derivative actions

8  brought and caused to be brought by MILBERG WEISS, BERSHAD,

9  SCHULMAN, and others.

10      9.    During the times relevant to this Indictment,

11 Steven G. Cooperman ("Cooperman") resided in Brentwood,

12 California and Connecticut and, prior to in or about May 1989,

13 was a licensed ophthalmologist.  Between in or about 1988 and

14 1998, Cooperman and certain of his relatives and associates,

15 including "Cooperman Plaintiff 1" and "Cooperman Plaintiff 2,"

16 frequently served as plaintiffs in class actions and shareholder

17 derivative actions brought and caused to be brought by

18 MILBERG WEISS, BERSHAD, SCHULMAN, and others.

19 **III.  CLASS ACTIONS AND SHAREHOLDER DERIVATIVE ACTIONS**

20      **A.    Overview**

21      10.    The term "class action" refers to a certain type of

22 civil lawsuit in which a court authorizes a named plaintiff to

23 represent and litigate claims on behalf of unnamed class members

24 who are not actually before the court (referred to as "absent

25 class members").

26      11.    Class actions often are brought to address allegations

27 of fraud; breaches of certain legal duties of fidelity, trust,

28 and loyalty (known as "fiduciary duties"); and other financial

4

1

wrongdoing affecting publicly traded companies.  In some such

cases, referred to as "securities fraud class actions," a named

plaintiff alleges that his or her investment in such a company

was harmed by wrongdoing committed by company executives and

others, and seeks to obtain money and other relief on behalf of a

class of investors in that company who are alleged to have been

similarly harmed.

12.  Class actions also often are brought to address

allegations that a consumer product or service was defective,

deceptively represented, or illegally priced.  In such cases

(referred to as "consumer class actions"), a named plaintiff

alleges that he or she was injured or defrauded by the

manufacturers or sellers of the product or service, and seeks to

obtain money and other relief on behalf of a class of consumers

who are alleged to have been similarly harmed.

13.  A judgment in a class action (whether the result of a

trial or a settlement) typically binds absent class members who

do not expressly notify the court that they wish to "opt out" of

the litigation.

14.  The term "shareholder derivative action" refers to a

certain type of civil lawsuit in which a named plaintiff, who is

a shareholder in a corporation, is authorized by a court to

represent the interests of other shareholders of the corporation,

as well as the corporation itself, in seeking the adjudication of

rights and obligations of the corporation.  As in a class action,

a judgment in a shareholder derivative action typically binds

unnamed shareholders who are not before the court.

/ / /

5

15.   When a controlling shareholder in a corporation attempts to acquire the publicly held shares in that corporation, a certain type of class action and/or shareholder derivative action, referred to as a "transaction case," may be brought.  In such a case, a named plaintiff, who owns a minority of the shares in the corporation, alleges on behalf of a class of shareholders that the price per share offered by the controlling shareholder to acquire the remaining shares is too low, and does not represent the fair value of the publicly held shares.

16.   Class actions and shareholder derivative actions are begun by the filing of a complaint in federal or state court, in which a named plaintiff alleges, among other things, the nature of the claims against the defendants in the action, the reasons why the action should be maintained as a class action or shareholder derivative action, and the reasons why the court should authorize the named plaintiff and his or her attorneys to represent the interests of absent class members or shareholders in the action.

17.   Before a judgment in a class action or shareholder derivative action may bind absent class members or shareholders, a named plaintiff and the attorneys who seek to represent absent class members or shareholders have to demonstrate to the court's satisfaction, among other things, that: (a) the named plaintiff's claims are "typical" of the claims of the absent class members or shareholders; (b) the named plaintiff has no interest in the outcome of the action that is antagonistic to, or in conflict with, the interests of the absent class members or shareholders; (c) the named plaintiff is not subject to unique defenses that

6

could become the focus of the litigation to the detriment of the absent class members or shareholders; and (d) the named plaintiff's attorneys will be able to fairly and adequately represent the interests of the absent class members or shareholders.

18.   The court's determination that a lawsuit may proceed as a class action or shareholder derivative action is referred to as the "certification" of the action.

### B.   Benefits of Securing "Lead Counsel" Status

19.   In many class actions and shareholder derivative actions, more than one named plaintiff and more than one lawyer or law firm seek to represent, and are approved by the court to represent, the interests of absent class members or shareholders. In such cases, the lawyers and law firms often compete to be appointed by the court as "lead counsel" or "co-lead counsel" for the absent class members or shareholders.  A lawyer or law firm that is appointed as lead or co-lead counsel typically has power and responsibility, among other things, to: (a) coordinate the overall litigation strategy; (b) assign the work to be done on the case among lawyers and law firms who have been approved to represent the class members or shareholders; and (c) in some cases, determine the division of attorneys' fees awarded by the court among the lawyers and law firms who have worked on the case.

### C.   Fiduciary Duties of Named Plaintiffs and Their Attorneys

20.   Because the conduct and decisions of a named plaintiff in a class action or shareholder derivative action affect the interests and rights of class members or shareholders who are not

before the court, the named plaintiff owes these absent class
members or shareholders certain fiduciary duties.  As a result of
these legally imposed duties, a named plaintiff, among other
things: (a) may not place his or her own interests above those of
absent class members or shareholders; (b) may not act in a
deceitful or unethical manner toward the court or the absent
class members or shareholders; and (c) is required to disclose to
the court any fact that reasonably could affect his or her
ability to fairly or adequately represent the interests of the
absent class members or shareholders.

21.  The named plaintiff's attorneys in a class action or
shareholder derivative action also owe the absent class members
or shareholders fiduciary duties.  As a result of these legally
imposed duties, the named plaintiff's attorneys, among other
things: (a) may not give preferential treatment to the interests
of the named plaintiff over the interests of the absent class
members or shareholders; (b) may not act in a deceitful or
unethical manner toward the court or the absent class members or
shareholders; and (c) are required to disclose to the court any
fact that reasonably could affect the attorneys' ability to
fairly or adequately represent the interests of the absent class
members or shareholders.

D.   **Court Approval of Settlements and Awards of
        Attorneys' Fees**

22.  Courts presiding over class actions or shareholder
derivative actions are obligated to protect the rights and
interests of the absent class members or shareholders.  As a
result, a court is required to scrutinize any proposed settlement
of a class action or shareholder derivative action, and may

8

1

2    approve such a settlement only if the court first determines that
     the settlement is fair to absent class members or shareholders.

3        23.   The named plaintiff's attorneys in class actions often
4    seek to obtain their attorneys' fees from the recovery obtained
5    for the class in the lawsuit; in shareholder derivative actions
6    they often seek to obtain their attorneys' fees from the
7    corporation.  The attorneys' fees in such instances are paid,
8    directly or indirectly, from proceeds that otherwise would be
9    available to the absent class members or shareholders.  Courts
10   presiding over class actions or shareholder derivative actions
11   are obligated, on behalf of the absent class members or
12   shareholders, to scrutinize any request for attorneys' fees to
13   ensure its fairness and reasonableness.  Consistent with their
14   fiduciary duties, the named plaintiff's attorneys are required,
15   as part of any request for attorneys' fees, to disclose to the
16   court all facts that reasonably could bear on their entitlement
17   to the requested fees.

18        **E.    Limitations on Compensation of Named Plaintiffs**

19       24.   The compensation that may be paid to a named plaintiff
20   in a class action or shareholder derivative action is limited to
21   the following: (a) the named plaintiff's pro rata share of the
22   recovery obtained in the lawsuit, calculated on the same basis as
23   the pro rata shares available to all of the absent class members
24   or shareholders; and (b) his or her reasonable costs and expenses
25   incurred in connection with the lawsuit, as approved by the
26   court.  Additionally, in some circumstances, the court presiding
27   over such a lawsuit may award a modest bonus payment to the named
28   plaintiff, in recognition of his or her effort in obtaining a

beneficial result for the absent class members or shareholders. Such a bonus payment may be awarded only if it is first disclosed to absent class members or shareholders, and only after the absent class members or shareholders have an opportunity to object to the bonus award.

25. Because a named plaintiff acts as a fiduciary toward absent class members or shareholders and is required to remain free of any conflict of interest toward them, the named plaintiff may not have any financial interest in the outcome of a class action or shareholder derivative action lawsuit other than those described above.

## IV. DEFENDANTS' SECRET AND ILLEGAL KICKBACK SCHEME IN CLASS ACTIONS AND SHAREHOLDER DERIVATIVE ACTIONS

26. During the time relevant to this Indictment, MILBERG WEISS brought numerous class actions and shareholder derivative actions against publicly traded companies and other major businesses. These lawsuits generated hundreds of millions of dollars in attorneys' fees for MILBERG WEISS. To bring these lawsuits, MILBERG WEISS needed persons who would agree to serve as named plaintiffs, and whom the courts would likely approve to represent absent class members or shareholders.

27. Beginning at least as early as in or about 1981 and continuing through at least 2005, in order to facilitate the recruitment of named plaintiffs, MILBERG WEISS, BERSHAD, SCHULMAN, and others known and unknown to the Grand Jury agreed to and did secretly pay kickbacks to named plaintiffs in class actions and shareholder derivative actions in which MILBERG WEISS served as counsel. Specifically, MILBERG WEISS, BERSHAD, SCHULMAN, and others known and unknown to the Grand Jury agreed

10

1

2  to and did pay to certain individuals a substantial portion of

3  the attorneys' fees MILBERG WEISS obtained in actions in which

4  such an individual served, or caused a relative or associate to

   serve, as a named plaintiff for MILBERG WEISS.

5       28.  Included among the individuals who served as a named

6  plaintiff for MILBERG WEISS pursuant to the kickback scheme

7  described above are LAZAR; Vogel; and Cooperman and two of his

8  associates, Cooperman Plaintiff 1 and Cooperman Plaintiff 2.

9  These individuals are each referred to as a "Paid Plaintiff," and

10 collectively as the "Paid Plaintiffs."  The class actions and

11 shareholder derivative actions in which the Paid Plaintiffs

12 served, or caused their spouse or an associated entity to serve,

13 as a named plaintiff for MILBERG WEISS pursuant to the kickback

14 scheme described above are referred to respectively as the

15 "Lazar Lawsuits," "Vogel Lawsuits," and "Cooperman Lawsuits," and

16 collectively as the "Lawsuits."

17      29.  During the times relevant to this Indictment,

18 MILBERG WEISS's kickback arrangements with and kickback payments

19 to the Paid Plaintiffs were illegal and improper for the

20 following reasons, among others: (a) under applicable New York

21 law, it is a criminal offense for an attorney to promise or give

22 anything of value to induce a person to bring a lawsuit, or to

23 reward a person for having done so; (b) under applicable New York

24 law, it is a criminal offense to pay a fiduciary, without the

25 consent of those to whom he or she owes fiduciary duties, with

26 the intent to influence his or her conduct as a fiduciary;

27 and (c) under applicable New York and California laws, lawyers

28 may not share attorneys' fees with persons who are not duly

1

licensed to practice law.  Additionally, the kickback

2 arrangements created a conflict of interest between the

3 Paid Plaintiffs and those to whom they owed fiduciary duties

4 because, as a result of the kickback arrangements, the

5 Paid Plaintiffs had a greater interest in maximizing the amount

6 of attorneys' fees awarded to MILBERG WEISS than in maximizing

7 the net recovery to the absent class members and shareholders.

8        30.  To conceal their illegal kickback arrangements from the

9 courts presiding over the Lawsuits, the other parties to the

10 Lawsuits, and the absent class members and shareholders whose

11 interests they purported to represent in the Lawsuits,

12 MILBERG WEISS, BERSHAD, SCHULMAN, the Paid Plaintiffs, and others

13 known and unknown to the Grand Jury engaged and caused others to

14 engage in various fraudulent and deceptive acts, practices, and

15 devices.  Among other things, MILBERG WEISS, BERSHAD, SCHULMAN,

16 the Paid Plaintiffs, and others known and unknown to the

17 Grand Jury made and caused others to make false and misleading

18 statements, and omitted and caused others to omit material facts,

19 in complaints, motions, certifications, declarations, and other

20 documents filed in the Lawsuits, and in depositions and other

21 discovery of the Paid Plaintiffs taken in the Lawsuits.

22 Additionally, MILBERG WEISS, BERSHAD, SCHULMAN, and others known

23 and unknown to the Grand Jury concealed and disguised the illegal

24 kickbacks by, among other things, paying the kickbacks in cash

25 and through intermediary law firms and lawyers selected by the

26 Paid Plaintiffs (hereinafter the "Intermediary Lawyers"), who

27 then used and disbursed the payments at the direction, and for

28 the benefit, of the Paid Plaintiffs.

31.    The Intermediary Lawyers included: (a) SELZER, the Palm Springs Law Firm, the Selzer Law Firm, other attorneys and their associated law firms in Los Angeles, California ("Lazar Intermediary A"), Portland, Oregon ("Lazar Intermediary B"), Santa Ana, California ("Lazar Intermediary C"), and Kansas City, Kansas ("Lazar Intermediary D"), and a Los Angeles entertainment lawyer ("Lazar Intermediary E"), all of whom acted as intermediary lawyers for LAZAR; (b) attorneys in Denver, Colorado and New York, New York, and their associated law firms ("Vogel Intermediary A" and "Vogel Intermediary B," respectively), who acted as intermediary lawyers for Vogel; and (c) attorneys in Los Angeles and Santa Monica, California and their associated law firms ("Cooperman Intermediary A" and "Cooperman Intermediary B," respectively), who acted as intermediary lawyers for Cooperman.

32.    The concealment of the secret and illegal kickback arrangements and payments from the courts presiding over the Lawsuits influenced, obstructed, and impeded the ability of such courts to assess and determine: (a) the appropriateness of approving the Lawsuits to proceed as class actions or shareholder derivative actions; (b) the ability of the Paid Plaintiffs and their spouses and associated entities to fairly and adequately represent the interests of the absent class members or shareholders; (c) the ability of MILBERG WEISS, BERSHAD, SCHULMAN, and other MILBERG WEISS lawyers to fairly and adequately represent the interests of the absent class members or shareholders; (d) the fairness of settlements proposed by MILBERG WEISS, BERSHAD, SCHULMAN, and the Paid Plaintiffs in the Lawsuits; and (e) whether and the extent to which MILBERG WEISS

13

should be awarded the attorneys' fees it sought in the Lawsuits.

33.  By defendants MILBERG WEISS, BERSHAD, SCHULMAN, and others known and unknown to the Grand Jury offering, promising to pay, and paying the Paid Plaintiffs secret and illegal kickbacks, and by the Paid Plaintiffs directing and accepting such payments, the absent class members and shareholders in each of the Lawsuits were deprived of:

(a)  the honest services of MILBERG WEISS, BERSHAD, SCHULMAN, LAZAR, the other Paid Plaintiffs, and others known and unknown to the Grand Jury, including: (i) the services of a named plaintiff who was free from any conflict of interest that might impair his or her ability to fairly and adequately represent their interests; (ii) the services of attorneys who were able to fairly and adequately represent their interests without preference to the interests of a named plaintiff; and (iii) the services of a named plaintiff and attorneys who would not act in a deceitful, unethical, or unlawful manner toward them or the court;

(b)  material economic information that affected their right and ability to influence and control class actions and shareholder derivative actions brought on their behalf; and

(c)  the amount of any kickback that MILBERG WEISS paid using attorneys' fees obtained in the Lawsuit.

**V.    SUMMARY OF KICKBACK PAYMENTS**

    **A.    Kickback Payments to Lazar**

34.  Beginning in or about 1981 and continuing through at least in or about 2004, LAZAR served, and caused his relatives and an affiliated entity to serve, as named plaintiffs in

14

approximately seventy lawsuits.  In total, MILBERG WEISS,
BERSHAD, and others known and unknown to the Grand Jury made and
caused to be made approximately $ 2.4 million in secret and
illegal kickback payments for the benefit of LAZAR.  Among such
kickback payments were the following, which MILBERG WEISS
associated with the lawsuits identified below and other
procedurally related lawsuits:

| Common Case Name, Case Number, and Court | Named Plaintiff(s) | Date of Kickback | Approximate Kickback |
|---|---|---|---|
| Arcata, Civ. No. 257916 (San Mateo County, California, Superior Court) | LAZAR | 04/19/84 | $   8,000 |
| | | 04/19/84 | $  32,000 |
| | | 08/29/84 | $  54,000 |
| Standard Oil/British Petroleum, No. 127045 (Cuyahoga County, Ohio Court of Common Pleas) | LAZAR | 06/29/87 | $  50,000 |
| | | 08/17/89 | $  50,000 |
| Genentech I, C-88-4038 (United States District Court, Northern District of California) | LAZAR | 01/23/91 | $ 150,000 |
| | | 04/28/92 | $ 150,000 (one payment associated with four cases) |
| Ashland Oil, 86-2465 (United States District Court, Central District of California) | LAZAR's wife | 04/28/92 | $ 150,000 (one payment associated with four cases) |
| Jardine/Bear Stearns, No. 87-26513 (Supreme Court of New York County, New York) | LAZAR | 04/28/92 | $ 150,000 (one payment associated with four cases) |
| PG&E, No. 893849 (San Francisco County, California, Superior Court) | LAZAR's mother-in-law | 04/28/92 | $ 150,000 (one payment associated with four cases) |
| Beverly Hills Savings, No. CV 85-2702 (United States District Court, Central District of California) | LAZAR | 12/17/92 | $  90,079 |

15

| Common Case Name, Case Number, and Court | Named Plaintiff(s) | Date of Kickback | Approximate Kickback |
|---|---|---|---|
| New Image, No. CV 90-6345 (United States District Court, Central District of California) | LAZAR | 07/09/93 | $  51,881 |
| Zenith National, BC 015017 (Los Angeles County, California, Superior Court) | LAZAR's wife | 12/16/93 | $  89,000 |
| | | 12/29/93 | $ 201,329 |
| | | 07/17/95 | $  65,000 |
| | | 07/17/95 | $  35,000 |
| United Airlines, No. 13312 (New Castle County, Delaware Chancery Court) | LAZAR's son | 03/10/95 | $ 250,000 |
| Lockheed, CA 001171 (Los Angeles County, California, Superior Court) | LAZAR | 09/28/95 | $  60,000 |
| ZZZZ Best, No. CV 87-6151 (United States District Court, Central District of California) | LAZAR; LAZAR's wife | 12/14/95 | $  50,000 |
| | | 05/20/96 | $  60,000 (one payment associated with two cases) |
| Community Psychiatric, No. 91-5258 (United States District Court, Central District of California) | Cooperman | 03/07/96 | $  25,000 |
| Genentech III, No. 14268 (New Castle County, Delaware, Chancery Court) | LAZAR | 05/20/96 | $  60,000 (one payment associated with two cases) |
| | | 12/17/96 | $  60,000 (one payment associated with two cases) |
| Copley Pharmaceutical, No. 95-10113 (United States District Court, District of Massachusetts) | LAZAR | 12/17/96 | $  60,000 (one payment associated with two cases) |

16

| Common Case Name, Case Number, and Court | Named Plaintiff(s) | Date of Kickback | Approximate Kickback |
|---|---|---|---|
| Concord Holdings, Civ 94-20579 (United States District Court, Northern District of California) | LAZAR | 05/06/97 | $  46,175 |
| Denny's, No. 736748-7 (Alameda County, California, Superior Court) | LAZAR's son | 11/14/97 | $  80,000 |
| | | 08/12/98 | $  50,000 |
| | | 12/18/98 | $  50,000 |
| | | 06/25/99 | $  50,000 (one payment associated with two cases) |
| | | 12/08/99 | $  75,000 (one payment associated with two cases) |
| | | 05/26/00 | $ 125,000 (one payment associated with two cases) |
| W.R. Grace, Civ. 95-8633 (United States District Court, Southern District of Florida) | LAZAR | 05/14/98 | $  75,000 |
| | | 06/25/99 | $  50,000 (one payment associated with two cases) |
| | | 12/08/99 | $  75,000 (one payment associated with two cases) |
| | | 05/26/00 | $ 125,000 (one payment associated with two cases) |
| Schein Pharmaceutical, Civ. 98-4311 (United States District Court, District of New Jersey) | LAZAR's daughter | 12/28/00 | $  50,000 |
| | | 07/09/01 | $ 133,000 |

## B.  Kickback Payments to Vogel

35.  Beginning in or about 1991 and continuing through at least in or about 2005, Vogel served, and caused his relatives

17

and associated entities to serve, as named plaintiffs in approximately forty lawsuits.  In total, MILBERG WEISS, BERSHAD, SCHULMAN, Partner E, and others known and unknown to the Grand Jury made and caused to be made approximately $ 2.5 million in secret and illegal kickback payments for the benefit of Vogel. Among such kickback payments were the following, made in connection with the lawsuits identified below and other procedurally related lawsuits:

| Common Case Name, Case Number, and Court | Named Plaintiff(s) | Date of Kickback | Approximate Kickback |
|---|---|---|---|
| Valero Energy, No. 1991 CI 12179 (Bexar, Texas District Court) ("Valero I") | Vogel and Vogel's wife | 12/28/92 | $ 637,223 |
| Valero Natural Gas Partners, No. 13194 (New Castle County, Delaware Chancery Court) ("Valero II") | Vogel | 07/18/94 | $  69,861 |
| Guaranty National, No. 0602632/1996 (New York County, New York Supreme Court) | Vogel's wife | 08/08/97 | $  44,115 |
| Guaranty National, No. 97-CV-5754 (United States District Court, District of Colorado) | Vogel's wife | 04/27/99 | $  47,160 |
| Santa Fe Pacific Pipeline Partners, No. 785816 (Orange County, California Superior Court) | Vogel's wife | 04/27/99 | $  10,920 |
| Vastar Resources, No. 17890 (New Castle County, Delaware Chancery Court) | Vogel's wife | 12/05/00 | $  94,000 |
| Travelers Property Casualty, No. 17902 (New Castle County, Delaware Chancery Court) | Vogel | 05/17/01 | $ 140,345 |

| Common Case Name, Case Number, and Court | Named Plaintiff(s) | Date of Kickback | Approximate Kickback |
|---|---|---|---|
| Life Technologies, No. 16519 (New Castle County, Delaware Chancery Court) | Vogel's wife | 09/05/02 | $    1,044 |
| Infinity Broadcasting, No. 18219 (New Castle County, Delaware Chancery Court) | Vogel's wife | 03/17/03 | $   86,923 |
| Intimate Brands, No. 19382 (New Castle County, Delaware Chancery Court) | Vogel's wife | 03/17/03 | $   47,746 |
| Future Healthcare, No. 95-CV-182 (United States District Court, Southern District of Ohio) | Vogel | 03/21/03 | $   68,994 |
| Baan Company, No. 98-CV-2532 (United States District Court, District of Columbia) | Vogel's stepson | 12/18/03 | $ 120,000 |
| Oxford Health Plans, No. 97-CV-2325 (United States District Court, District of Connecticut) | Howard Vogel Retirement Plan | 12/18/03 | $1,100,000 |
| US Oncology, No. 324-N (New Castle County, Delaware Chancery Court) | Vogel | 01/06/05 | $   11,474 |
|  |  | 02/16/05 | $    2,295 |
| Barnesandnoble.com, No. 042-N (New Castle County, Delaware Chancery Court) | Vogel's wife | 05/19/05 | $   10,801 |

36.   In addition to the foregoing kickback payments, MILBERG WEISS, BERSHAD, Partner E, and others known and unknown to the Grand Jury paid and caused to be paid to Vogel a substantial amount of cash for causing his wife to serve as a named plaintiff in the Vogel Lawsuit Vogel, et al. v. Mercer Int'l Inc., et al., CV 94-4229 (United States District Court, Central District of California) ("Mercer").

/ / /

19

1

## C.    Kickback Payments to Cooperman

2    37.  Beginning in or about 1988 and continuing through at

3  least in or about 1998, Cooperman served, and caused his

4  relatives and associates to serve, as named plaintiffs in

5  approximately seventy lawsuits.  In total, MILBERG WEISS,

6  BERSHAD, and others known and unknown to the Grand Jury made and

7  caused to be made approximately $ 6.5 million in secret and

8  illegal kickback payments for the benefit of Cooperman, Cooperman

9  Plaintiff 1, and Cooperman Plaintiff 2.  Among such kickback

10  payments were the following, which MILBERG WEISS associated with

11  the lawsuits identified below and other procedurally related

12  lawsuits:

| Common Case Name, Case Number, and Court | Named Plaintiff(s) | Date of Kickback | Approximate Kickback |
|---|---|---|---|
| Cetus, No. C-90-2042 (United States District Court, Northern District of California) | Cooperman | 11/20/91 | $ 178,507 |
| Cineplex Odeon, No. CV 89-2579 (United States District Court, Central District of California) | Cooperman | 01/08/92 | $ 21,376 |
| Jan Bell Marketing, No. CV 90-6183 (United States District Court, Southern District of Florida) | Cooperman | 07/21/92 | $ 19,363 |
| American Continental/ Lincoln Savings, No. CV 89-2448 (United States District Court, Central District of California) | Cooperman Plaintiff 1 | 10/21/92 | $ 440,000 |
| | | 07/19/93 | $ 250,000 |
| | | 11/09/94 | $ 160,000 |
| | | 12/21/95 | $ 163,000 |

20

| Common Case Name, Case Number, and Court | Named Plaintiff(s) | Date of Kickback | Approximate Kickback |
|---|---|---|---|
| Software Toolworks, No. C-90-2920 (United States District Court, Northern District of California | Cooperman | 12/16/92 | $ 317,885 |
| | | 01/15/93 | $ 30,605 |
| | | 01/28/97 | $ 73,560 |
| | | 01/28/97 | $ 73,560 |
| | | 02/25/99 | $ 128,452 |
| LA Gear, No. CV 90-2832 (United States District Court, Central District of California | Cooperman | 01/29/93 | $ 50,000 |
| | | 05/18/93 | $ 160,000 |
| | | 07/19/93 | $ 7,476 |
| Prime Motor Inns, No. 90-99 (United States District Court, District of New Jersey) | Cooperman | 03/12/93 | $ 200,286 |
| Sun Microsystems, No. C-93-20292 (United States District Court, Northern District of California) | Cooperman | 08/16/93 | $ 99,887 |
| One Bancorp, Civil No. 89-0315 (United States District Court, District of Maine) | Cooperman | 08/16/93 | $ 39,332 |
| Epitope, Civ. No. 92-780 (United States District Court, District or Oregon) | Cooperman | 08/16/93 | $ 3,849 |
| Fairfield Communities, No. C-90-464 (United States District Court, Eastern District of Arkansas) | Cooperman | 08/16/93 | $ 24,996 |
| Shawmut, No. H-90-253 (United States District Court, District of Connecticut) | Cooperman | 08/16/93 | $ 13,436 |
| Valley National, No. Civ. 89-1733 (United States District Court, District of Arizona) | Cooperman | 03/01/94 | $ 17,458 |

| Common Case Name, Case Number, and Court | Named Plaintiff(s) | Date of Kickback | Approximate Kickback |
|---|---|---|---|
| First Executive, No. 89-7135 (United States District Court, Central District of California) | Cooperman | 03/11/94 | $ 763,997 |
| | | 05/27/94 | $ 211,000 |
| | | 05/27/94 | $ 100,000 |
| | | 02/15/95 | $ 100,000 |
| | | 12/21/95 | $ 200,000 |
| | | 12/21/95 | $ 140,000 |
| | | 04/04/96 | $ 150,000 |
| Columbia Savings & Loan, No. CV 89-6538 (United States District Court, Central District of California) | Cooperman | 03/31/94 | $ 200,000 |
| | | 04/29/94 | $ 112,495 |
| | | 07/27/94 | $ 200,000 |
| | | 08/04/94 | $ 250,000 |
| | | 09/22/94 | $ 191,278 |
| | | 03/30/95 | $  79,000 |
| | | 03/30/95 | $  79,000 |
| U.S. Bioscience, No. CV 92-0743 (United States District Court, Eastern District of Pennsylvania) | associate of Cooperman | 09/22/94 | $   2,700 |
| Abbott Laboratories, Civ. No. 632601 (San Diego County, California, Superior Court) (aka "Infant Formula") | Cooperman | 07/05/95 | $  25,868 |
| T2 Medical, No. CV 94-1584 (United States District Court, Northern District of Georgia) | one of Cooperman's brothers-in-law ("Cooperman Brother-in-Law A") | 07/05/95 | $   6,433 |
| Fidelity Medical, No. 92-1913 (United States District Court, District of New Jersey) | Cooperman's wife | 07/07/95 | $  22,207 |

22

| Common Case Name, Case Number, and Court | Named Plaintiff(s) | Date of Kickback | Approximate Kickback |
|---|---|---|---|
| SCI-TV, No. BC100359 (Los Angeles County, California, Superior Court) | Cooperman | 11/01/95 | $ 100,000 |
| | | 11/16/95 | $  81,846 |
| | | 11/16/95 | $ 100,000 |
| | | 12/01/95 | $  40,000 |
| | | 12/01/95 | $  40,000 |
| Community Psychiatric, No. 91-5258 (United States District Court, Central District of California) | Cooperman | 03/07/96 | $ 180,140 |
| | | 11/11/96 | $ 114,892 |
| | | 02/25/99 | $ 145,305 |
| Heart Technology, No. 14513 (New Castle County, Delaware, Chancery Court) | Cooperman Plaintiff 2 | 05/06/97 | $  19,859 |

38.    In addition to the foregoing kickback payments, during the period from in or about March 1989 through February 1990, MILBERG WEISS, BERSHAD, and others known and unknown to the Grand Jury paid and caused to be paid approximately $245,000 to one of Cooperman's brothers-in-law ("Cooperman Brother-in-Law B"), of which $203,000 was forwarded to an account controlled by Cooperman.

39.    During the period from 1984 through 2005, MILBERG WEISS obtained more than approximately $ 216.1 million in attorneys' fees in the Lawsuits and litigation resolving the Lawsuits, and, together with BERSHAD, SCHULMAN, and others known and unknown to the Grand Jury, paid and caused to be paid more than approximately $ 11.3 million in secret and illegal kickbacks to the Paid Plaintiffs.

23

COUNT ONE

[Defendants MILBERG WEISS, BERSHAD, SCHULMAN, and LAZAR]

[18 U.S.C. § 371]

[Conspiracy]

40.  The Grand Jury hereby repeats and realleges paragraphs 1 through 39 of this Indictment.

I.    **THE OBJECTS OF THE CONSPIRACY**

41.  Beginning on a date unknown but at least as early as in or about 1981, and continuing through at least in or about 2005, within the Central District of California and elsewhere, defendants MILBERG WEISS, DAVID J. BERSHAD, STEVEN G. SCHULMAN, and SEYMOUR M. LAZAR, together with Partner A, Partner B, the other Paid Plaintiffs, and other persons known and unknown to the Grand Jury, knowingly combined, conspired, and agreed to commit the following offenses against the United States:

a.   to commit obstruction of justice by corruptly influencing, obstructing, and impeding, and endeavoring to influence, obstruct, and impede, the due administration of justice in the Lawsuits filed and litigated in federal courts, in violation of Title 18, United States Code, Section 1503;

b.   to make false material declarations under oath in proceedings before and ancillary to courts of the United States, in connection with the Lawsuits filed and litigated in federal courts, in violation of Title 18, United States Code, Section 1623(a);

c.   to travel in interstate commerce and to use the mail and other facilities in interstate commerce with intent to distribute the proceeds of unlawful activity and otherwise to

24

facilitate the promotion, management, and carrying on of such

unlawful activity, namely, commercial bribery of the

Paid Plaintiffs, in violation of New York Penal Law

Section 180.00, and thereafter to perform and attempt to perform

acts to distribute the proceeds of such unlawful activity and to

facilitate the promotion, management, and carrying on of such

activity, in violation of Title 18, United States Code,

Section 1952(a)(1), (3).

   d. to commit mail fraud by using the United States

mails and commercial interstate carriers to execute a scheme to

defraud absent class members and shareholders in the Lawsuits as

to a material matter, by depriving them of money and property and

the honest services of MILBERG WEISS, BERSHAD, SCHULMAN, LAZAR,

the other Paid Plaintiffs, and others, and to obtain money and

property by means of material false and fraudulent pretenses,

representations, and promises, in violation of Title 18, United

States Code, Sections 1341 and 1346;

   e. to commit wire fraud by using interstate wire and

radio communications to execute a scheme to defraud absent class

members and shareholders in the Lawsuits as to a material matter,

by depriving them of money and property and the honest services

of MILBERG WEISS, BERSHAD, SCHULMAN, LAZAR, the other

Paid Plaintiffs, and others, and to obtain money and property by

means of material false and fraudulent pretenses,

representations, and promises, in violation of Title 18, United

States Code, Sections 1343 and 1346; and

   f. to make illegal payments to a witness by giving,

offering, and promising money to the Paid Plaintiffs, for and

25

1

because of the testimony under oath or affirmation given and to
be given by the Paid Plaintiffs as a witness upon a trial,
hearing, or other proceeding before a court authorized by the
laws of the United States to hear evidence or take testimony in
the Lawsuits, filed or litigated in federal courts, in violation
of Title 18, United States Code, Section 201(c)(2).

## II.  **MANNER AND MEANS OF THE CONSPIRACY**

42.  The objects of the conspiracy were carried out in the
manner and by the means described below, among others.

43.  MILBERG WEISS, BERSHAD, SCHULMAN, and others known and
unknown to the Grand Jury arranged for the Paid Plaintiffs to
serve, and to cause relatives and associates to serve, as named
plaintiffs in class actions and shareholder derivative actions in
which MILBERG WEISS served as counsel.

44.  As an inducement to the Paid Plaintiffs to serve, and
to induce them to cause relatives and associates to serve, as
named plaintiffs, MILBERG WEISS, BERSHAD, SCHULMAN, and others
known and unknown to the Grand Jury offered, promised, and agreed
secretly to pay the Paid Plaintiffs kickbacks consisting of a
portion of the attorneys' fees that MILBERG WEISS expected to
obtain in each action in which the respective Paid Plaintiff
served, or caused a relative or associate to serve, as a named
plaintiff.

45.  In the course of the Lawsuits, MILBERG WEISS, BERSHAD,
SCHULMAN, LAZAR, the other Paid Plaintiffs, and others known and
unknown to the Grand Jury engaged in, and caused each other to
engage in, various fraudulent and deceptive acts, practices, and
devices, including the following:

26

1

      a.    MILBERG WEISS, BERSHAD, SCHULMAN, LAZAR, the other

Paid Plaintiffs, and others known and unknown to the Grand Jury,

concealed their illegal kickback arrangements from the courts

presiding over, the other parties to, and the absent class

members and shareholders in the Lawsuits;

      b.    MILBERG WEISS, BERSHAD, SCHULMAN, LAZAR, the other

Paid Plaintiffs, and others known and unknown to the Grand Jury

made and caused to be made false and misleading representations

in: (i) complaints to initiate and maintain the Lawsuits;

(ii) motions seeking court approval for the Lawsuits to proceed

as class actions or shareholder derivative actions; and

(iii) motions seeking court approval of MILBERG WEISS and the

Paid Plaintiffs or their spouses or associated entities to

represent absent class members or shareholders in the Lawsuits.

Specifically, they caused to be represented in these pleadings

that the Paid Plaintiffs or their spouses or associated entities

had no interest in conflict with, or antagonistic to, absent

class members or shareholders in the Lawsuits, and that

MILBERG WEISS and the Paid Plaintiffs or their spouses or

associated entities would fairly and adequately represent their

interests.  In truth and in fact, as MILBERG WEISS, BERSHAD,

SCHULMAN, LAZAR, and the other Paid Plaintiffs well knew, the

interests of the Paid Plaintiffs or their spouses or associated

entities conflicted with those of absent class members or

shareholders because, as a result of their secret and illegal

kickback arrangements, they had a greater interest in maximizing

the amount of attorneys' fees awarded to MILBERG WEISS than in

maximizing the net recovery to the absent class members or

shareholders.  Additionally, as a result of the secret and
illegal kickback arrangements, MILBERG WEISS improperly favored
the financial interests of the Paid Plaintiffs or their spouses
or associated entities over the interests of the absent class
members or shareholders.

       c.   In under-oath testimony given in connection with
the Lawsuits and in written certifications, declarations, and
other documents signed under penalty of perjury in the Lawsuits,
LAZAR and the other Paid Plaintiffs, acting in concert with
MILBERG WEISS, BERSHAD, SCHULMAN, and others, falsely denied that
they had ever received, or expected to receive, any payment for
serving as a named plaintiff other than their pro rata share of
the recovery based on the same terms as the pro rata shares
available to all of the absent class members or shareholders.  In
truth and in fact, as MILBERG WEISS, BERSHAD, SCHULMAN, LAZAR,
and the other Paid Plaintiffs well knew, in return for serving as
named plaintiffs the Paid Plaintiffs had received and expected to
receive from MILBERG WEISS, BERSHAD, SCHULMAN, and others
kickback payments that substantially exceeded any pro rata share
of the recovery they received, or could expect to receive, based
on the terms used to determine the pro rata shares available to
all of the absent class members or shareholders in the Lawsuits.

       d.   MILBERG WEISS, BERSHAD, SCHULMAN, LAZAR, the other
Paid Plaintiffs, and others known and unknown to the Grand Jury
caused the Lawsuits to be settled in a manner that often would
generate substantial attorneys' fees for MILBERG WEISS, while
concealing from the courts approving these settlements, and from
the absent class members or shareholders on whose behalf the

28

settlements were being negotiated, their secret and illegal
kickback arrangements.

    e.    MILBERG WEISS, BERSHAD, SCHULMAN, LAZAR, the other
Paid Plaintiffs, and others known and unknown to the Grand Jury
caused to be filed motions in the Lawsuits seeking the awards of
attorneys' fees to MILBERG WEISS, in which they concealed from
the courts awarding attorneys' fees, and the absent class members
or shareholders, their illegal kickback arrangements under which
the awarded attorneys' fees secretly would be shared with the
Paid Plaintiffs.

    46.    In the course of certain of the securities fraud class
action Lawsuits, MILBERG WEISS, BERSHAD, SCHULMAN, Vogel,
Cooperman Plaintiff 1, Cooperman Plaintiff 2, and others known
and unknown to the Grand Jury engaged in, and caused each other
to engage in, additional fraudulent and deceptive acts,
practices, and devices, including the following:

    a.    MILBERG WEISS, BERSHAD, SCHULMAN, and others known
and unknown to the Grand Jury falsely represented and caused to
be falsely represented in complaints and other pleadings filed in
such Lawsuits that the Paid Plaintiffs' claims were typical of
the claims of the members of the class and that the
Paid Plaintiffs relied on the allegedly false and misleading
statements made by the defendants in the Lawsuits when purchasing
the securities at issue in the Lawsuits.   In truth and in fact,
as MILBERG WEISS, BERSHAD, SCHULMAN, and others well knew, the
Paid Plaintiffs' claims in such Lawsuits were not typical of the
claims of the class members.   Unlike the other class members in
the Lawsuits, the Paid Plaintiffs purchased the securities at

issue anticipating that the securities would decline in value, in order to position themselves to be named plaintiffs in securities fraud class actions and to obtain kickback payments from MILBERG WEISS, BERSHAD, SCHULMAN, and others.

b.    In under-oath testimony given in connection with such Lawsuits and in written certifications, declarations, and other documents signed under penalty of perjury in such Lawsuits, Vogel, Cooperman Plaintiff 1, Cooperman Plaintiff 2, and other Paid Plaintiffs, acting in concert with MILBERG WEISS, BERSHAD, SCHULMAN, and others known and unknown to the Grand Jury, falsely denied that they purchased the securities at issue in the Lawsuits in order to be named plaintiffs.  In truth and in fact, as MILBERG WEISS, BERSHAD, SCHULMAN, the Paid Plaintiffs in such Lawsuits, and others well knew, the Paid Plaintiffs purchased the securities at issue in order to position themselves to be named plaintiffs in securities fraud class actions and to obtain kickback payments from MILBERG WEISS, BERSHAD, SCHULMAN, and others.

47.    After the court in a Lawsuit awarded attorneys' fees, or was expected to award attorneys' fees, MILBERG WEISS, BERSHAD, SCHULMAN, and others known and unknown to the Grand Jury arranged for the secret and illegal kickbacks to be paid to the Paid Plaintiffs.  To conceal and disguise these kickback payments, among other things: (a) MILBERG WEISS, BERSHAD, and others known and unknown to the Grand Jury made and caused kickback payments to be made in cash given directly to the Paid Plaintiffs; and (b) MILBERG WEISS, BERSHAD, SCHULMAN, and others known and unknown to the Grand Jury made and caused kickback payments to be

made by MILBERG WEISS check payable to the Intermediary Lawyers
or other professionals selected by the Paid Plaintiffs, who then
used and disbursed the payments at the direction, and for the
benefit, of the Paid Plaintiffs.

48. To further conceal and disguise the kickbacks paid to
the Paid Plaintiffs in cash:

a. MILBERG WEISS, BERSHAD, Partner A, and others
known and unknown to the Grand Jury obtained and caused to be
obtained the cash in a manner that made the payments difficult to
trace, including from casinos;

b. MILBERG WEISS, BERSHAD, and others known and
unknown to the Grand Jury kept cash used to make such payments in
a safe located in a credenza in BERSHAD's office at
MILBERG WEISS, to which access was strictly limited;

c. MILBERG WEISS, BERSHAD, and others known and
unknown to the Grand Jury failed to record such cash payments in
MILBERG WEISS's accounting books and records.

49. To further conceal and disguise the kickbacks paid by
MILBERG WEISS check made payable to the Intermediary Lawyers or
other professionals selected by the Paid Plaintiffs:

a. MILBERG WEISS, BERSHAD, SCHULMAN, and others known
and unknown to the Grand Jury caused such payments to be falsely
characterized in MILBERG WEISS's accounting books and records as,
among other things, referral fees, professional fees, and "fees
to others" paid to the Intermediary Lawyers or other
professionals;

/ / /

/ / /

31

1

b.    MILBERG WEISS, BERSHAD, SCHULMAN, and others known
and unknown to the Grand Jury falsely characterized such payments
in accompanying cover letters as, among other things: the
Intermediary Lawyer's "entitlement" for work and responsibility
"assumed" in a Lawsuit; the Intermediary Lawyer's "share" of
attorneys' fees for "work, services, and joint representation" of
a Paid Plaintiff in a Lawsuit; "referral" fees earned by the
Intermediary Lawyer in a Lawsuit; the Intermediary Lawyer's
"participation" in MILBERG WEISS's fee award in a Lawsuit; or
made "on account of cases" that MILBERG WEISS was "doing" with
the Intermediary Lawyer or other professional;

c.    MILBERG WEISS, BERSHAD, and others known and
unknown to the Grand Jury provided and caused to be provided
false and misleading information to MILBERG WEISS's outside
accountants and tax return preparers concerning such payments,
which helped to disguise them as legitimate fees paid for the
benefit of the Intermediary Lawyers and other professionals,
rather than as illegal kickback payments for the benefit of the
Paid Plaintiffs; and

d.    MILBERG WEISS, BERSHAD, and others known and
unknown to the Grand Jury issued and caused to be issued IRS
Forms 1099-MISC to the Intermediary Lawyers, which made it appear
as if such payments were legal referral fees for the benefit of
the Intermediary Lawyers.

50.    After an Intermediary Lawyer or other professional
received a kickback payment from MILBERG WEISS, the
Paid Plaintiff directed the Intermediary Lawyer or other
professional to use and apply such kickback payment for the

benefit of the Paid Plaintiff including, among other things:
(a) to make a payment directly to the Paid Plaintiff; (b) to
satisfy legal fees or expenses that the Paid Plaintiff owed or
would owe to the Intermediary Lawyer; and (c) to pay third
parties to whom the Paid Plaintiff owed money.

## III.  OVERT ACTS

51.   In furtherance of the conspiracy and to accomplish its
object, defendants MILBERG WEISS, BERSHAD, SCHULMAN, and LAZAR,
together with Partner A, Partner B, the other Paid Plaintiffs,
and others known and unknown to the Grand Jury, committed and
caused others to commit the following overt acts, among others,
in the Central District of California and elsewhere, in
connection with the following Lawsuits.

### A.    Overt Acts in the Lazar Lawsuits

### The *Arcata* Class Action

Overt Act No. 1:  On or about October 1, 1981,
MILBERG WEISS and others known and unknown to the Grand Jury
caused to be filed a verified class action and shareholder
derivative action complaint in the Arcata lawsuit, naming
defendant LAZAR as a plaintiff.

Overt Act No. 2: On or about March 1, 1982, in support
of a request that the court certify Arcata as a class action,
LAZAR falsely represented, under penalty of perjury, that he had
"no agreement or understanding to share in the legal fees, if
any, that are awarded to [MILBERG WEISS]."

Overt Act No. 3: On or about March 13, 1984,
MILBERG WEISS obtained approximately $821,000 in attorneys' fees
awarded by the court in Arcata.

1

   <u>Overt Act No. 4</u>: On or about April 19, 1984,

2 MILBERG WEISS paid $8,000 to Lazar Intermediary D, which

3 MILBERG WEISS characterized in its accounting books and records

4 as professional fees to Lazar Intermediary D relating to LAZAR.

5    <u>Overt Act No. 5</u>: In or about April 1984, LAZAR caused

6 Lazar Intermediary D to use proceeds of the payment described in

7 Overt Act No. 4 for LAZAR's benefit.

8    <u>Overt Act No. 6</u>: On or about April 19, 1984,

9 MILBERG WEISS sent to Selzer and the Palm Springs Law Firm a

10 $32,000 check, which MILBERG WEISS characterized in its

11 accounting books and records as professional fees to the Palm

12 Springs Law Firm relating to LAZAR.

13    <u>Overt Act No. 7</u>:  On or about April 30, 1984, LAZAR

14 caused the Palm Springs Law Firm to use the proceeds of the check

15 described in Overt Act No. 6 to satisfy $32,000 in legal fees

16 owed by LAZAR to the Palm Springs Law Firm.

17    <u>Overt Act No. 8</u>: On or about July 16, 1984,

18 MILBERG WEISS obtained approximately $547,168 in additional

19 attorneys' fees awarded by the court in <u>Arcata</u>.

20    <u>Overt Act No. 9</u>: On or about August 23, 1984, LAZAR

21 caused the Palm Springs Law Firm to send to MILBERG WEISS an

22 invoice billing the New York Law Firm in the amount of $54,000

23 for "Legal Services rendered to Seymour Lazar."

24    <u>Overt Act No. 10</u>: On or about August 29, 1984,

25 MILBERG WEISS sent to the Palm Springs Law Firm a $54,000 check,

26 which MILBERG WEISS characterized in its accounting books and

27 records as "fees to others" paid to the Palm Springs Law Firm

28 relating to <u>Arcata</u>.

Overt Act No. 11: On or about September 11, 1984, LAZAR and Selzer caused the Palm Springs Law Firm to deposit the $54,000 check described in Overt Act No. 10 into a personal trust account established for the benefit of LAZAR.

Overt Acts Nos. 12-17: On or about the following dates, LAZAR and Selzer caused the Palm Springs Law Firm to use the proceeds of the $54,000 check described in Overt Act No. 11 to make the following payments and credits, among others, for the benefit of LAZAR:

| OVERT ACT | DATE | APPROXIMATE AMOUNT | RECIPIENT |
|---|---|---|---|
| No. 12 | 09/18/84 | $ 27,000 | trust account of LAZAR's wife |
| No. 13 | 09/18/84 | $ 792 | surveying firm |
| No. 14 | 10/11/84 | $ 2,000 | law firm in Downey, California |
| No. 15 | 10/23/84 | $ 15,000 | the Palm Springs Law Firm |
| No. 16 | 11/13/84 | $ 2,000 | law firm in Downey, California |
| No. 17 | 12/4/84 | $ 2,000 | law firm in Downey, California |

Overt Act No. 18: On or about August 29, 1984, MILBERG WEISS recharacterized in its accounting books and records the $8,000 and $32,000 payments described in Overt Acts Nos. 4 and 6 from "professional fees" relating to LAZAR to "fees to others" relating to Arcata.

### The *Standard Oil/British Petroleum* Class Action

Overt Act No. 19: In or about April 1987, MILBERG WEISS and others known and unknown to the Grand Jury caused to be filed a class action complaint in the Standard Oil/British Petroleum lawsuit, naming LAZAR as a plaintiff.

35

1

       <u>Overt Act No. 20</u>: On or about June 22, 1987, LAZAR

2 caused Selzer to send a letter to Partner A purportedly

3 confirming that MILBERG WEISS had agreed to pay 10% of the fees

4 it received in <u>Standard Oil/British Petroleum</u> to the Palm Springs

5 Law Firm "on account of services rendered by [the Palm Springs

6 Law Firm] to Mr. Lazar" and requesting that MILBERG WEISS

7 "advance" the Palm Springs Law Firm "$50,000 on or before June

8 30, 1987."

9        <u>Overt Act No. 21</u>: On or about June 29, 1987, MILBERG

10 WEISS and BERSHAD caused to be sent to Selzer and the Palm

11 Springs Law Firm a $50,000 check, with a cover letter signed by

12 BERSHAD falsely describing the payment as fees to Selzer and the

13 Palm Springs Law Firm "in furtherance of arrangements made" with

14 regard to "<u>Lazar v. British Petroleum</u>."

15        <u>Overt Act No. 22</u>: On or about June 30, 1987, LAZAR and

16 Selzer caused the Palm Springs Law Firm to use the proceeds of

17 the check described in Overt Act No. 21 to satisfy $50,000 in

18 legal fees that LAZAR owed to the Palm Springs Law Firm.

19        <u>Overt Act No. 23</u>: On or about August 21, 1989,

20 MILBERG WEISS and BERSHAD caused to be sent to Selzer and the

21 Palm Springs Law Firm a $50,000 check, with a cover letter signed

22 by BERSHAD falsely stating that the check "represent[ed] your

23 share of fees earned on Lazar v. Standard Oil."

24        <u>Overt Act No. 24</u>: On or about August 25, 1989, LAZAR

25 and Selzer caused the Palm Springs Law Firm to use the proceeds

26 of the check described in Overt Act No. 23 to satisfy $50,000 in

27 legal fees that LAZAR owed to the Palm Springs Law Firm.

28 / / /

1

### The *Genentech I* Class Action

2          **Overt Act No. 25**: On or about January 9, 1990,

3    MILBERG WEISS and others known and unknown to the Grand Jury

4    caused to be filed with the court an amended class action

5    complaint in the <u>Genentech I</u> lawsuit, naming LAZAR as a

6    plaintiff.

7          **Overt Act No. 26**: On or about March 30, 1990,

8    MILBERG WEISS and others known and unknown to the Grand Jury

9    caused to be filed with the court a memorandum in support of a

10   request that the court certify <u>Genentech I</u> as a class action, in

11   which they falsely represented that LAZAR's interests in the

12   lawsuit were "coextensive with, and in no way antagonistic to

13   those of the members of the Class[.]"

14         **Overt Act No. 27**: On or about January 24, 1991,

15   MILBERG WEISS and BERSHAD caused to be sent to Selzer and the

16   Palm Springs Law Firm a $150,000 check, with a cover letter

17   signed by BERSHAD falsely stating that the check was a "payment

18   toward your firm's referral entitlement in connection with

19   [<u>Genentech I</u>]."

20         **Overt Act No. 28**: On or about January 28, 1991, LAZAR

21   and Selzer caused the proceeds of the check described in Overt

22   Act No. 27 to be deposited into the Palm Springs Law Firm's

23   client trust account, for the benefit of LAZAR.

24         **Overt Acts Nos. 29-31**: On or about the following dates,

25   LAZAR and Selzer caused the proceeds of the check described in

26   Overt Act No. 27 to be used to make the following payments and

27   credits for the benefit of LAZAR:

28

| OVERT ACT | DATE | APPROXIMATE AMOUNT | RECIPIENT |
|---|---|---|---|
| No. 29 | 01/31/91 | $ 100,000 | the Palm Springs Law Firm |
| No. 30 | 02/25/91 | $ 47,219 | the Palm Springs Law Firm |
| No. 31 | 02/25/91 | $ 2,781 | LAZAR's accountant |

### The *Ashland Oil* Class Action

Overt Act No. 32: On or about April 9, 1986, MILBERG WEISS and others known and unknown to the Grand Jury caused to be filed with the court a class action and shareholder derivative action complaint in the Ashland Oil lawsuit, naming LAZAR's wife as a plaintiff.

Overt Act No. 33: On or about November 3, 1988, after the removal and transfer of Ashland Oil from the Los Angeles County Superior Court to the United States District Court for the Southern District of New York, MILBERG WEISS and others known and unknown to the Grand Jury caused to be filed with the federal court a sworn affidavit in support of a request that the court certify Ashland Oil as a class action, in which they falsely represented that LAZAR's wife had "no conflict of interest" with "the other investors whom plaintiff seeks to represent."

Overt Act No. 34: On or about October 24, 1989, in an under-oath deposition in Ashland Oil, MILBERG WEISS and LAZAR caused LAZAR's wife to deny falsely that she had any "financial interest in the outcome of the lawsuit, other than what [she would] receive as damages if [her] individual complaint [was] successful."

Overt Act No. 35: On or about April 28, 1992, MILBERG WEISS and BERSHAD caused to be sent to Selzer and the Palm Springs Law Firm a $150,000 check, with a cover letter

38

signed by BERSHAD falsely stating that the check was "in full payment of your firm's referral entitlement in connection with" Genentech I, Ashland Oil, and two other class actions in which LAZAR or a family member served as a named plaintiff.

Overt Act No. 36: On or about May 5, 1992, LAZAR and Selzer caused the check described in Overt Act No. 35 to be deposited into the Palm Springs Law Firm's client trust account for the benefit of LAZAR.

Overt Acts Nos. 37-38 : On or about the following dates, LAZAR and Selzer caused the proceeds of the check described in Overt Act No. 35 to be used to make the following payments and credits for the benefit of LAZAR:

| OVERT ACT | DATE | APPROXIMATE AMOUNT | RECIPIENT |
|---|---|---|---|
| No. 37 | 05/05/92 | $ 25,000 | surveying firm |
| No. 38 | 05/05/92 | $ 125,000 | the Palm Springs Law Firm |

### The *Beverly Hills Savings* Class Action

Overt Act No. 39: On or about December 11, 1985, MILBERG WEISS and others known and unknown to the Grand Jury caused to be filed with the court an amended class action complaint in the Beverly Hills Savings lawsuit, naming LAZAR as a plaintiff, in which they falsely represented, among other things, that LAZAR had "no interests which are contrary to or in conflict with" the absent class members.

Overt Act No. 40: On or about June 19, 1986, during an under-oath deposition in Beverly Hills Savings, LAZAR, acting in concert with MILBERG WEISS and others, falsely testified that he had no understanding by which he would receive "any monetary advantage or any monetary sum" other than his pro rata share of

the recovery available to all plaintiffs in the lawsuit.

Overt Act No. 41: On or about August 28, 1992, MILBERG WEISS obtained approximately $900,785.53 in attorneys' fees awarded by the court in <u>Beverly Hills Savings</u>.

Overt Act No. 42: On or about December 17, 1992, MILBERG WEISS and BERSHAD caused to be sent to Selzer and the Palm Springs Law Firm a $90,078.55 check, with a cover letter signed by BERSHAD falsely stating that the check "represent[ed] your entitlement with regard to work and responsibility assumed as counsel for Seymour Lazar" in <u>Beverly Hills Savings</u>.

Overt Acts Nos. 43-44: On or about the following dates, LAZAR and Selzer caused the proceeds of the check described in Overt Act No. 42 to be used to make the following payments and credits, among others, for the benefit of LAZAR:

| OVERT ACT | DATE | APPROXIMATE AMOUNT | RECIPIENT |
|---|---|---|---|
| No. 43 | 12/18/92 | $ 85,820 | the Palm Springs Law Firm |
| No. 44 | 12/23/92 | $ 4,258 | engineering firm |

### The *New Image* Class Action

Overt Act No. 45: On or about November 27, 1990, MILBERG WEISS, LAZAR, and others known and unknown to the Grand Jury caused to be filed with the court a class action complaint in the <u>New Image</u> lawsuit, naming LAZAR as a plaintiff, in which they falsely represented that LAZAR had "no interest which is contrary to or in conflict with those of the Class he seeks to represent."

Overt Act No. 46: On or about April 25, 1991, in a written document that LAZAR verified under penalty of perjury,

40

MILBERG WEISS and LAZAR falsely represented that LAZAR had never received any compensation from MILBERG WEISS or any of its partners, and that his "claims do not in any manner conflict with, or are . . . antagonistic to, those of the class."

Overt Act No. 47: On or about May 7, 1991, during an under-oath deposition in New Image, LAZAR, acting in concert with MILBERG WEISS and others, evaded answering questions regarding whether he had a "fee arrangement with" MILBERG WEISS by, among other things, denouncing the questioning as an "absolute insult."

Overt Act No. 48: On or about July 9, 1993, MILBERG WEISS and BERSHAD sent to Selzer and the Palm Springs Law Firm a $51,880.79 check, along with a cover letter signed by BERSHAD falsely stating that the check "represent[ed] your entitlement with regard to work and responsibility assumed as counsel for Seymour Lazar" in New Image.

Overt Act No. 49: On or about July 12, 1993, LAZAR and Selzer caused the Palm Springs Law Firm to use the proceeds of the check described in Overt Act No. 48 to satisfy approximately $51,880.79 in legal fees that LAZAR owed to the Palm Springs Law Firm.

### The *W.R. Grace* Class Action

Overt Act No. 50: On or about October 19, 1995, MILBERG WEISS and others known and unknown to the Grand Jury caused to be filed with the court a class action complaint in the W.R. Grace lawsuit, naming LAZAR as a plaintiff, in which they falsely represented that LAZAR did not "have interests antagonistic to, or in conflict with, the Class."

/ / /

41

**Overt Act No. 51**: On or about April 24, 1998, MILBERG WEISS obtained approximately $2,531,519 in attorneys' fees awarded by the court in W.R. Grace.

**Overt Act No. 52**: On or about May 14, 1998, MILBERG WEISS and BERSHAD caused to be sent to the Palm Springs Law Firm a $75,000 check, with a cover letter signed by BERSHAD falsely stating that the check was "in recognition of your supportive role with regard to [W.R. Grace] and our client."

**Overt Acts Nos. 53-58**: On or about the following dates, LAZAR caused the proceeds of the check described in Overt Act No. 52 to be used to make the following payments and credits, among others, for his benefit:

| OVERT ACT | DATE | AMOUNT | RECIPIENT |
|-----------|------|--------|-----------|
| No. 53 | 05/22/98 | $ 46,000 | the Palm Springs Law Firm |
| No. 54 | 05/22/98 | $ 10,000 | LAZAR's son |
| No. 55 | 06/01/98 | $ 7,900 | the Selzer Law Firm |
| No. 56 | 06/01/98 | $ 2,000 | Lazar Intermediary C |
| No. 57 | 06/01/98 | $ 3,000 | Lazar Intermediary B |
| No. 58 | 08/07/98 | $ 5,000 | Lazar Intermediary C |

**Overt Act No. 59**: On or about June 25, 1999, MILBERG WEISS and BERSHAD caused to be sent to the Palm Springs Law Firm a $50,000 check, with a cover letter signed by BERSHAD falsely stating that the check "represent[ed] an incremental payment of your participation in the fees earned in [Denny's and W.R. Grace]."

**Overt Acts Nos. 60-61**: On or about the following dates, LAZAR caused the proceeds of the check described in Overt Act No. 59 to be used to make the following payments and credits, among others, for his benefit:

42

| OVERT ACT | DATE | APPROXIMATE AMOUNT | RECIPIENT |
|-----------|------|--------------------|-----------|
| No. 60 | 06/30/99 | $ 44,079 | the Palm Springs Law Firm |
| No. 61 | 07/20/99 | $ 5,000 | the Selzer Law Firm |

Overt Act No. 62: On or about December 8, 1999, MILBERG WEISS and BERSHAD caused to be sent to the Palm Springs Law Firm a $75,000 check, with a cover letter signed by BERSHAD falsely stating that the check "represent[ed] further recognition of your participation and entitlement in the fees in [Denny's and W.R. Grace]."

Overt Acts Nos. 63-64: On or about the following dates, LAZAR caused the proceeds of the check described in Overt Act No. 62 to be used to make the following payments and credits for his benefit:

| OVERT ACT | DATE | APPROXIMATE AMOUNT | RECIPIENT |
|-----------|------|--------------------|-----------|
| No. 63 | 12/10/99 | $ 60,000 | the Palm Springs Law Firm |
| No. 64 | 12/21/99 | $ 15,000 | the Selzer Law Firm |

Overt Acts Nos. 65-72: On or about the following dates, LAZAR and Selzer caused the proceeds of the $15,000 payment described in Overt Act No. 64 to be used to make the following payments and credits, among others, for the further benefit of LAZAR:

| OVERT ACT | DATE | APPROXIMATE AMOUNT | RECIPIENT |
|-----------|------|--------------------|-----------|
| No. 65 | 02/04/00 | $ 3,000 | public land specialist |
| No. 66 | 02/14/00 | $ 150 | title searcher |
| No. 67 | 03/03/00 | $ 1,695 | title company |
| No. 68 | 04/05/00 | $ 10 | Los Angeles County |
| No. 69 | 04/05/00 | $ 165 | Riverside County |

| OVERT ACT | DATE | APPROXIMATE AMOUNT | RECIPIENT |
|---|---|---|---|
| No. 70 | 05/05/00 | $      1 | Los Angeles County |
| No. 71 | 06/23/00 | $  5,000 | LAZAR's personal trust account |
| No. 72 | 06/30/00 | $    354 | public land specialist |

Overt Act No. 73: On or about May 26, 2000, MILBERG WEISS and BERSHAD caused to be sent to the Palm Springs Law Firm a $125,000 check, with a cover letter signed by BERSHAD falsely stating that the check was an "additional payment upon and on account of a number of the cases we have been doing including among others W.R. Grace and Denny's."

Overt Acts Nos. 74-76: On or about the following dates, LAZAR caused the proceeds of the check described in Overt Act No. 73 to be used to make the following payments and credits for his benefit:

| OVERT ACT | DATE | APPROXIMATE AMOUNT | RECIPIENT |
|---|---|---|---|
| No. 74 | 06/13/00 | $  30,564 | the Selzer Law Firm |
| No. 75 | 06/20/00 | $  75,461 | the Palm Springs Law Firm |
| No. 76 | 07/20/00 | $  18,975 | the Selzer Law Firm |

Overt Acts Nos. 77-79: On or about the following dates, LAZAR and Selzer caused the proceeds of the payments described in Overt Acts Nos. 74 and 76 to be used to make the following payments and credits for the further benefit of LAZAR:

| OVERT ACT | DATE | APPROXIMATE AMOUNT | RECIPIENT |
|---|---|---|---|
| No. 77 | 07/28/00 | $    525 | engineering firm |
| No. 78 | 07/31/00 | $  3,975 | the Selzer Law Firm |
| No. 79 | 08/07/00 | $  19,100 | LAZAR's personal trust account |

44

1

### Other Overt Acts in Lazar Lawsuits

2      Overt Act No. 80: On or about February 1, 1984, during

3 an under-oath deposition taken in the Lazar Lawsuit Seymour Lazar

4 v. Unity Buying Service Co., Civ. No. 511287 (San Diego County,

5 California, Superior Court) ("Unity Buying"), LAZAR, acting in

6 concert with MILBERG WEISS and others, falsely denied that he

7 contemplated sharing in any award of attorneys' fees in Unity

8 Buying or Arcata.

9      Overt Act No. 81: On or about January 30, 1985, in the

10 Lazar Lawsuit Seymour Lazar v. James D. Sadlier, et al., CV 84-

11 8100-WJR (United States District Court, Central District of

12 California) ("Arrays"), MILBERG WEISS and others known and

13 unknown to the Grand Jury caused to be filed with the court a

14 memorandum in support of a request that the court certify Arrays

15 as a class action, in which they falsely represented that LAZAR's

16 interests in the lawsuit were "congruent with and not in conflict

17 with those of the members of the class."

18      Overt Act No. 82: On or about March 12, 1985, during an

19 under-oath deposition in Arrays, LAZAR, acting in concert with

20 MILBERG WEISS and others, falsely testified that he had "never,

21 ever received any sums from [MILBERG WEISS] whatsoever," and

22 falsely denied that he had "any arrangement" with MILBERG WEISS

23 under which he was "to receive or might anticipate receiving any

24 of the award in [Arrays] aside from [his] own personal recovery

25 as a plaintiff."

26      Overt Act No. 83: On or about June 10, 1985, LAZAR

27 caused Lazar Intermediary E to send an invoice in the amount of

28 $25,000 to MILBERG WEISS for "professional services rendered."

1

   Overt Act No. 84:  On or about June 25, 1985,
MILBERG WEISS and Partner B caused to be sent to Lazar
Intermediary E a $25,000 check.

   Overt Act No. 85: On or about July 5, 1985, LAZAR
caused Lazar Intermediary E to send $22,500 from the proceeds of
the check described in Overt Act No. 84 to Selzer and the Palm
Springs Law Firm, with a cover letter stating that the payment
represented proceeds of a check from the MILBERG WEISS
"ostensibly for legal services" that Lazar Intermediary E did not
in fact perform.

   Overt Act No. 86: On or about July 5, 1985, LAZAR and
Selzer caused the $22,500 payment described in Overt Act No. 85
to be deposited into a client trust account maintained by the
Palm Springs Law Firm for the benefit of LAZAR.

   Overt Act No. 87: On or about December 10, 1986,
MILBERG WEISS and Partner B caused to be sent to Lazar
Intermediary A, who was representing LAZAR in connection with a
dispute between LAZAR and a bank, a $35,000 check with a cover
letter signed by Partner B falsely stating that the payment was
"to satisfy our fee obligation to you" in a case referred to as
Union Carbide.

   Overt Act No. 88: On or about December 12, 1986, LAZAR
caused Lazar Intermediary A to use the proceeds of the check
described in Overt Act No. 87 to satisfy legal fees that LAZAR
owed to Lazar Intermediary A.

   Overt Act No. 89: On or about May 5, 1987,
MILBERG WEISS and Partner B caused to be sent to Lazar
Intermediary A a $45,000 check, which MILBERG WEISS falsely

46

1

characterized in its accounting books and records as "? prof fees."

Overt Act No. 90: On or about May 7, 1987, LAZAR caused Lazar Intermediary A to use approximately $23,851.60 from the proceeds of the check described in Overt Act No. 89 to satisfy legal fees that LAZAR owed to Lazar Intermediary A.

Overt Act No. 91: On or about May 11, 1987, LAZAR caused Lazar Intermediary A to use the remaining approximately $21,148.40 from the proceeds of the check described in Overt Act No. 89 as a credit toward future legal fees that LAZAR would owe to Lazar Intermediary A.

Overt Act No. 92: On or about March 10, 1995, MILBERG WEISS and BERSHAD caused to be sent to one of LAZAR's sons, who was an attorney, a $250,000 check with a cover letter signed by BERSHAD falsely stating that the payment represented "your participation in our fee in the [United Airlines] litigation in accordance with our agreement."

Overt Act No. 93: On or about March 13, 1995, LAZAR caused the check described in Overt Act No. 92 to be deposited into his daughter-in-law's personal checking account, to be used for the personal benefit of LAZAR and his son.

Overt Act No. 94: On or about July 17, 1995, MILBERG WEISS and BERSHAD caused to be sent to Lazar Intermediary B a $35,000 check, along with a cover letter signed by BERSHAD falsely stating that the check was "your share of the attorney's fee" in Zenith National.

Overt Act No. 95: On or about July 31, 1995, LAZAR caused Lazar Intermediary B to use the proceeds from the check

47

described in Overt Act No. 94 to satisfy $35,000 in fees that LAZAR owed to Lazar Intermediary B.

Overt Act No. 96: On or about March 7, 1996, MILBERG WEISS and BERSHAD caused to be sent to Lazar Intermediary C a $25,000 check, with a cover letter signed by BERSHAD falsely describing the payment as Lazar Intermediary C's "participation in the most recent fee" obtained by MILBERG WEISS, and which MILBERG WEISS falsely characterized in its accounting books and records as a referral fee paid to Lazar Intermediary C in the Community Psychiatric class action.

Overt Act No. 97: On or about March 11, 1996, LAZAR caused Lazar Intermediary C to use the proceeds of the check described in Overt Act No. 96 to satisfy legal fees that LAZAR owed to Lazar Intermediary C.

Overt Act No. 98: On or about August 12, 1998, MILBERG WEISS and BERSHAD caused to be sent to the Palm Springs Law Firm a $50,000 check, with a cover letter signed by BERSHAD falsely stating that the payment was "in recognition of your contribution to the legal effort in the Denny's litigation."

Overt Acts Nos. 99-100: On or about the following dates, LAZAR caused the proceeds of the check described in Overt Act No. 98 to be used to make the following payments and credits, among others, for his benefit:

| OVERT ACT | DATE | APPROXIMATE AMOUNT | RECIPIENT |
|---|---|---|---|
| No. 99 | 08/18/98 | $ 18,000 | the Palm Springs Law Firm |
| No. 100 | 08/26/98 | $ 23,000 | Lazar Intermediary B |

Overt Acts Nos. 101-102: On or about the following dates, LAZAR caused Lazar Intermediary B to use the proceeds of

$23,000 payment described in Overt Act No. 100 to make the following payments and credits for his further benefit:

| OVERT ACT | DATE | APPROXIMATE AMOUNT | RECIPIENT |
|---|---|---|---|
| No. 101 | 09/08/98 | $ 5,000 | LAZAR's son |
| No. 102 | 09/11/98 | $ 18,000 | investment in LAZAR's name |

Overt Act No. 103: On or about December 2, 1998, in the Lazar Lawsuit Seymour Lazar v. Micro Focus Group PLC, et al., Civ. 98-8591 (United States District Court, Southern District of New York), in which LAZAR was a named plaintiff, LAZAR falsely certified, under penalty of perjury, that he would "not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered and approved by the Court."

Overt Act No. 104: On or about December 13, 1999, in the Lazar Lawsuit Helene Giarputo and Seymour Lazar v. Xerox Corp. et al., 99 CV 2374 (United States District Court, District of Connecticut), in which LAZAR was a named plaintiff, LAZAR falsely certified, under penalty of perjury, that he would "not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered and approved by the Court."

Overt Act No. 105: On or about December 28, 2000, MILBERG WEISS and BERSHAD caused to be sent to the Palm Springs Law Firm a $50,000 check, which MILBERG WEISS's accounting books

49