1    Overt Act No. 51: On or about May 7, 1991, during an

2   under-oath deposition in New Image, LAZAR evaded answering

3   questions regarding whether he had a "fee arrangement with"

4   MILBERG WEISS by, among other things, denouncing the questioning

5   as an "absolute insult."

6    Overt Act No. 52: Prior to in or about August 1991,

7   Partner E, acting in concert with Bershad, told Vogel that

8   MILBERG WEISS would pay Vogel for serving as a named plaintiff in

9   an action against Valero Energy Corporation.

10    Overt Act No. 53: On or about August 20, 1991,

11   MILBERG WEISS, Partner E, and others caused to be filed with the

12   court a class action complaint in the Lawsuit Howard J. Vogel v.

13   Valero Energy Corp., et al., No. 91-CI-12179 (Bexar County,

14   Texas, District Court) ("Valero I"), in which they falsely

15   represented, among other things, that Vogel had "the same

16   interests [in the outcome of the case] as the other members of

17   the Class."

18    Overt Act No. 54: On or about September 30, 1991,

19   MILBERG WEISS and others caused to be filed a class action

20   complaint in the Lawsuit Steven Cooperman et al. v. Community

21   Psychiatric Centers, et al., No. CV 91-5258-RSWL (United States

22   District Court, Central District of California) (consolidated

23   with In re Community Psychiatric Centers Securities Litigation,

24   NO. Civ 91-533-AHS (United States District Court, Central

25   District of California)) ("Community Psychiatric"), in which they

26   falsely represented, among other things, that Cooperman had "no

27   interest which is contrary to or in conflict with those of the

28   class [he] seek[s] to represent."

1   Overt Act No. 55: In or about mid-1992, during a

2   meeting attended by, among others, Bershad, Partner E, and Vogel,

3   Bershad told Vogel the following: (a) MILBERG WEISS would pay

4   Vogel 14% of the attorneys' fees MILBERG WEISS obtained in

5   Valero I; (b) MILBERG WEISS would also reimburse Vogel for losses

6   that would be sustained by him in connection with the eventual

7   sale of his Valero securities; and (c) since Vogel had not yet

8   sold his Valero securities, MILBERG WEISS would pay him $10,000

9   in anticipation of such losses.

10  Overt Act No. 56: On or about July 3, 1992, Cooperman

11  subscribed under penalty of perjury to answers to interrogatories

12  in the Lawsuit Steven Cooperman et al. v. MBNA America, Inc., et

13  al., NO. BC049848 (Los Angeles County, California, Superior

14  Court) ("MBNA"), which falsely stated that Cooperman had never,

15  directly or indirectly, received payment from MILBERG WEISS.

16  Overt Act No. 57: On or about March 10, 1994,

17  MILBERG WEISS, Lerach, and others caused to be filed a verified

18  class action complaint in the Lawsuit Steven Cooperman v. SCI

19  Television Inc., et al., No. BC100359 (Los Angeles County,

20  California, Superior Court) ("SCI-Television"), in which they

21  falsely represented, among other things, that Cooperman did "not

22  have interests antagonistic to or in conflict with those he

23  represents as a class representative."

24  Overt Act No. 58: On or about March 21, 1994, in an

25  under oath deposition in SCI-Television, Cooperman falsely stated

26  that he had never been compensated for appearing as a plaintiff

27  in a class action case.

28  / / /

36

1        Overt Act No. 59: On or about May 23, 1994, Vogel
2   signed an under-oath affidavit, to be filed with the court in
3   support of a proposed settlement of the Lawsuit Howard Vogel v.
4   Valero Energy Corp., C.A. No. 13194 (also known as In re Valero
5   Natural Gas Partners, L.P. Litigation) (New Castle County,
6   Delaware, Chancery Court) ("Valero II"), in which Vogel falsely
7   stated, among other things, "I have no claim or interest of any
8   kind [in the outcome of the case] that is adverse to Valero
9   Partners or its public unitholders . . . nor do I have any
10  conflict of interest of any kind that precludes me from bringing
11  or settling this action."

12        Overt Act No. 60: On or about November 11, 1994,
13  Cooperman executed a declaration under penalty of perjury, to be
14  filed with the court in SCI-Television, which falsely stated,
15  among other things, that there were no legal differences in
16  Cooperman's status as a class member and those of other persons
17  within the class; there were no unique legal issues pertaining to
18  Cooperman as a class representative; and Cooperman "anticipate[d]
19  receiving [his] pro rata share, and no more, of the damages
20  received by this class."

21        Overt Act No. 61: On or about November 29, 1994, LAZAR
22  wrote a memorandum to Bershad regarding a payment LAZAR had
23  requested to be made to one of LAZAR's sons, who was an attorney,
24  in which LAZAR stated, among other things, "You are right about
25  Z-Best.  It was filed in 1987 and [LAZAR's son] became a lawyer
26  in 1988."

27        Overt Act No. 62: On or about March 10, 1995, at the
28  direction of LAZAR, MILBERG WEISS, WEISS, and Bershad caused to

1  be sent to LAZAR's son a $250,000 check with a cover letter

2  falsely stating that the payment represented "your participation

3  in our fee in the [United Airlines] litigation in accordance with

4  our agreement."

5        Overt Act No. 63: In or about 1996, during a meeting at

6  MILBERG WEISS's New York offices, Partner E paid Vogel a

7  substantial amount of cash for having caused his wife to serve as

8  a named plaintiff in In re Mercer Int'l Securities Litigation,

9  NO. 94-533-WLD (United States District Court, Western District of

10  Washington) (related to Eugenia Vogel, et al. v. Mercer Int'l,

11  Inc., et al., No. CV 94-4229-WJR (United States District Court,

12  Central District of California)) ("Mercer").

13        Overt Act No. 64: On or about November 6, 1996,

14  Cooperman signed under penalty of perjury a certification to be

15  filed with the court in the Lawsuit Steven Cooperman v.

16  Individual, Inc., et al., 96-CV-12272, (United States District

17  Court, District of Massachusetts) ("Individual"), in which he

18  falsely stated that he would "not accept any payment for serving

19  as a representative party on behalf of a class beyond plaintiff's

20  pro rata share of any recovery, except such reasonable costs and

21  expenses (including lost wages) directly relating to the

22  representation of the Class as ordered or approved by the Court."

23        Overt Act No. 65: On or about March 13, 1997, in

24  [Cooperman Plaintiff 2] v. Heart Technology, Inc., C.A. No. 14513

25  (New Castle County, Delaware, Chancery Court) ("Heart

26  Technology"), Cooperman Plaintiff 2 subscribed under penalty of

27  perjury to an affirmation in which he falsely stated that he had

28  "no claim or interest that is adverse to Heart [Technology] or

1   its stockholders."

2          Overt Act No. 66: On or about October 8, 1997, Vogel
3   caused a trust of which he was the sole trustee (the "Howard
4   Vogel Retirement Plan," hereinafter referred to as "HVRP") to
5   purchase 50 shares of stock of Oxford Health Plans Inc. for the
6   purpose of positioning HVRP to be a named plaintiff in a
7   securities fraud class action lawsuit to be brought by MILBERG
8   WEISS against Oxford Health.

9          Overt Act No. 67: On or about October 31, 1997, Vogel
10  signed under penalty of perjury a certification, to be filed with
11  the court in the Lawsuit Howard Vogel Retirement Plan v. Oxford
12  Health Plans, Inc., et al., NO. 97 CV 2325 (United States
13  District Court, District of Connecticut) (related to In re Oxford
14  Health Plans, Inc. Securities Litigation, No. MDL 1222 (CLB)
15  (United States District Court, Southern District of New York))
16  ("Oxford Health"), in which Vogel falsely stated, among other
17  things, that HVRP did not purchase Oxford Health "in order to
18  participate in any private action arising under the federal
19  securities laws," and would "not accept any payment for serving
20  as a representative party on behalf of a class beyond plaintiff's
21  pro rata share of any recovery, except such reasonable costs and
22  expenses (including lost wages) directly relating to the
23  representation of the Class as ordered or approved by the Court."

24         Overt Act No. 68: On or about October 31, 1997,
25  MILBERG WEISS, Partner E, Vogel, and others caused to be filed
26  with the court a class action complaint in Oxford Health, naming
27  HVRP as a plaintiff, in which they falsely alleged, among other
28  things, that HVRP's claims were "typical of the claims of the

39

1  members of the Class."

2      Overt Act No. 69: On or about July 21, 1998, in an

3  under-oath deposition taken in the Lawsuit Howard Vogel, et al.

4  v. Marvin A Pomerantz, et al., C.A. No. 14722 (related to In re

5  Gaylord Container Corp. Shareholders Litigation, Consolidated

6  C.A. No. 14616 (New Castle County, Delaware, Chancery Ct.))

7  ("Gaylord Container"), Vogel refused to answer questions he was

8  asked concerning his income or sources of income.

9      Overt Act No. 70: On or about December 2, 1998, in the

10  Lawsuit Seymour Lazar v. Micro Focus Group PLC, et al., Civ. 98-

11  8591 (United States District Court, Southern District of New

12  York), LAZAR falsely certified, under penalty of perjury, that he

13  would "not accept any payment for serving as a representative

14  party on behalf of a class beyond plaintiff's pro rata share of

15  any recovery, except such reasonable costs and expenses

16  (including lost wages) directly relating to the representation of

17  the Class as ordered and approved by the Court."

18      Overt Act No. 71: On or about December 13, 1999, in the

19  Lawsuit Helene Giarputo and Seymour Lazar v. Xerox Corp. et al.,

20  99 CV 2374 (United States District Court, District of

21  Connecticut), LAZAR falsely certified, under penalty of perjury,

22  that he would "not accept any payment for serving as a

23  representative party on behalf of a class beyond plaintiff's pro

24  rata share of any recovery, except such reasonable costs and

25  expenses (including lost wages) directly relating to the

26  representation of the Class as ordered and approved by the

27  Court."

28  / / /

1        Overt Act No. 72: On or about May 26, 2000,

2    MILBERG WEISS and Bershad caused to be sent to the Palm Springs

3    Law Firm a $125,000 check, intended as a kickback payment to

4    LAZAR.

5        Overt Act No. 73: On or about July 9, 2001,

6    MILBERG WEISS and Bershad caused to be sent to the Palm Springs

7    Law Firm a $133,000 check, intended as a kickback payment to

8    LAZAR.

9        Overt Act No. 74: On or about September 14, 2001,

10   MILBERG WEISS, Vogel, and others caused Vogel's wife to sign an

11   under-oath affidavit, to be filed with the court in support of a

12   proposed settlement of Infinity Broadcasting, which falsely

13   stated, among other things, "I have no claim or interest that is

14   adverse to Infinity or its public shareholders."

15       Overt Act No. 75: On or about April 9, 2003, Vogel

16   signed a certification under penalty of perjury, to be filed with

17   the court in the Lawsuit Howard Vogel v. CIT Group Inc., et al.,

18   93-CV-2471-JES (United States District Court, Southern District

19   of New York) ("CIT"), in which Vogel falsely stated, among other

20   things, that he would "not accept any payment for serving as a

21   representative party on behalf of a class beyond plaintiff's pro

22   rata share of any recovery, except such reasonable costs and

23   expenses (including lost wages) directly relating to the

24   representation of the Class as ordered or approved by the Court."

25       Overt Act No. 76: On or about June 27, 2003,

26   MILBERG WEISS obtained approximately $40 million of the

27   attorneys' fees awarded in Oxford Health.

28   / / /

1    **Overt Act No. 77**: In or about September 2003, Schulman

2    told WEISS that Vogel's percentage of the fee award in

3    Oxford Health needed to be negotiated down in light of the size

4    of the award, and told WEISS that Vogel wanted to be paid in

5    Oxford Health through Vogel Intermediary A.

6    **Overt Act No. 78**: In or about September 2003, WEISS

7    told Schulman that, given a pending criminal investigation into

8    MILBERG WEISS's kickback arrangements with named plaintiffs,

9    WEISS did not want to negotiate Vogel's payment on Oxford Health

10   over the telephone with Vogel Intermediary A, and instead wanted

11   Vogel Intermediary A to travel to New York to discuss the matter

12   with WEISS in person.

13   **Overt Act No. 79**: In or about September 2003, Schulman

14   informed Vogel Intermediary A that WEISS would not speak with

15   Vogel Intermediary A over the telephone, but only face-to-face.

16   **Overt Act No. 80**: On or about October 15, 2003, Vogel

17   sent to WEISS's secretary a memorandum stating, in part:

18       "[E]nclosed is material from 1997/1998 relating to my
         role as initiating plaintiff in the Oxford and Baan
19       cases.  My dealings with MWB in those years centered
         around [Partner E].
20
         My attorney, who previously represented me in the two
21       Valero cases (working with [Partner E]) is [Vogel
         Intermediary A] . . . ."
22
23   **Overt Act No. 81**: On or about November 10, 2003, WEISS

     met with Vogel Intermediary A at MILBERG WEISS's New York offices
24
     and confirmed that MILBERG WEISS would pay Vogel a share of its
25
     attorneys' fees obtained in connection with Oxford Health and the
26
     Lawsuit In re The BAAN Co. Securities Litigation, 98-2465-ESH
27
     (United States District Court, District of Columbia) ("Baan"), in
28
     which Vogel had arranged for his step-son to serve as a named

1  plaintiff for MILBERG WEISS.

2          Overt Act No. 82: On or about December 18, 2003,

3  MILBERG WEISS, WEISS, Schulman, and others caused to be sent to

4  Vogel Intermediary A a $1.1 million check, with a cover letter

5  falsely stating, "Enclosed please find a check in the amount of

6  $1,100,000.00, reflecting your share of court ordered attorneys'

7  fees in consideration of your work, services and joint

8  representation of our clients in connection with

9  [Oxford Health]."

10         Overt Act No. 83:  On or about December 18, 2003,

11  MILBERG WEISS, WEISS, Schulman, and others also caused to be sent

12  to Vogel Intermediary A a $120,000 check, with a cover letter

13  falsely stating, "Enclosed please find a check in the amount of

14  $120,000.00, reflecting your share of court ordered attorneys'

15  fees in consideration of your work, services and joint

16  representation of our clients in connection with [Baan]."

17         Overt Act No. 84: On or about January 8, 2004, Vogel

18  caused Vogel Intermediary A to wire transfer approximately

19  $1,205,932.37 of the proceeds of the checks described in Overt

20  Acts Nos. 82 and 83 to a bank account controlled by Vogel.

21         Overt Act No. 85: On or about May 24, 2004, Vogel

22  signed a certification under penalty of perjury, to be filed with

23  the court in the Lawsuit Howard Vogel v. The Bisys Group Inc., et

24  al., 04-CV-4048-LTS (United States District Court, Southern

25  District of New York ("Bisys"), in which Vogel falsely stated,

26  among other things, that he "did not acquire the BISYS Group,

27  Inc. . . . stock at the direction of plaintiff's counsel or in

28  order to participate in any private action under the federal

43

1  securities laws," and would "not accept any payment for serving

2  as a representative party beyond my pro rata share of any

3  recovery, except reasonable costs and expenses, such as lost

4  wages and travel expenses, directly related to the class

5  representation, as ordered or approved by the court pursuant to

6  law."

7        Overt Act No. 86: On or about July 26, 2004, Vogel

8  signed a certification under penalty of perjury, to be filed with

9  the court in the Lawsuit Howard Vogel v. KVH Industries Inc., et

10  al., 04-CV-320-ML (United States District Court, District of

11  Rhode Island) ("KVH"), in which Vogel falsely stated, among other

12  things, that he would "not accept any payment for serving as a

13  representative party beyond my pro rata share of any recovery,

14  except reasonable costs and expenses, such as lost wages and

15  travel expenses, directly related to the class representation, as

16  ordered or approved by the court pursuant to law."

17        Overt Act No. 87: On or about September 23, 2004, Vogel

18  signed an under-oath affidavit, to be filed with the court in

19  support of a proposed settlement of the Lawsuit In re U.S.

20  Oncology, Inc. Shareholders Litigation, Consolidated C.A. No.

21  324-N (New Castle County, Delaware, Chancery Court) ("U.S.

22  Oncology"), falsely stating, among other things, "I have no claim

23  or interest of any kind that is adverse to [U.S. Oncology]

24  shareholders . . . nor do I have any conflict of interest of any

25  kind that would preclude me from bringing and prosecuting

26  [U.S. Oncology] as a class action."

27        Overt Act No. 88: On or about February 27, 2005,

28  MILBERG WEISS, Vogel, and others caused Vogel's wife to sign an

1   under-oath affidavit, to be filed with the court in support of a

2   proposed settlement of the Lawsuit In re BarnesandNoble.com Inc.

3   Shareholders Litigation, Consolidated C.A. No. 042-N (New Castle

4   County, Delaware, Chancery Court) ("BarnesandNoble.com"), falsely

5   stating, among other things, "I have no claim or interest of any

6   kind that is adverse to [BarnesandNoble.com] shareholders . . .

7   nor do I have any conflict of interest of any kind that would

8   preclude me from bringing and prosecuting [BarnesandNobel.com] as

9   a class action."

10        Overt Act No. 89: On or about May 19, 2005,

11  MILBERG WEISS, Schulman, and others caused to be sent to Vogel

12  Intermediary A a check in the amount of $10,800.67, along with a

13  cover letter falsely stating that the check was Vogel

14  Intermediary A's "referral fees" in connection with

15  BarnesandNoble.com.

16        Overt Act No. 90: On or about September 13, 2005, Vogel

17  signed on behalf of HVRP an under-oath affidavit, to be filed

18  with the court in support of a proposed settlement of the Lawsuit

19  In re Fox Entertainment Group, Inc. Shareholders Litigation,

20  Consolidated Case No. 1033-N (New Castle County, Delaware,

21  Chancery Court) ("Fox"), falsely stating, among other things, "I

22  have no claim or interest of any kind that is adverse to [Fox

23  Entertainment Group] shareholders . . . nor do I have any

24  conflict of interest of any kind that would preclude me from

25  bringing and prosecuting [Fox] as a class action."

26

27

28

COUNT TWO

[Defendants WEISS and LAZAR]

[18 U.S.C. § 1962(d)]

[Racketeering Conspiracy]

48.  The Grand Jury hereby repeats and realleges paragraphs 1 through 35 of this Indictment.

## I.    THE ENTERPRISE

49.  At all times relevant to this Indictment, the New York law firm partnership Milberg Weiss LLP, formerly known as "Milberg Weiss Bershad & Schulman LLP," "Milberg Weiss Bershad Hynes & Lerach LLP," "Milberg Weiss Bershad Specthrie & Lerach," and "Milberg Weiss Bershad & Specthrie" ("Milberg Weiss"), constituted an "enterprise" as defined by Title 18, United States Code, Section 1961(4), which was engaged in, and the activities of which affected, interstate commerce.

50.  Defendant MELVYN I. WEISS was employed by and associated with the enterprise.  Defendant SEYMOUR M. LAZAR was associated with the enterprise.

## II.    PURPOSES OF THE RACKETEERING CONSPIRACY

51.  The purposes of the racketeering conspiracy included the following:

a.    to provide Milberg Weiss and its partners, including WEISS, with a stable of persons who were ready, willing, and able to serve, and whom the courts would likely approve to serve, as named plaintiffs representing absent class members and shareholders in the Lawsuits;

b.    to enable Milberg Weiss and its partners, including WEISS, to file and maintain the Lawsuits;

46

1         c.   to assist Milberg Weiss and its partners,

2 including WEISS, in securing lead counsel status in the Lawsuits;

3 and

4         d.   to enrich WEISS, LAZAR, and the other members and

5 associates of the enterprise through the more than approximately

6 $250 million dollars of attorneys' fees Milberg Weiss obtained in

7 the Lawsuits and litigation resolving the Lawsuits and the more

8 than approximately $11.3 million dollars in kickbacks that WEISS

9 and others paid and caused to be paid to the Paid Plaintiffs.

10 **III.  THE RACKETEERING CONSPIRACY**

11     52.  Beginning on a date unknown but at least as early as in

12 or about 1979, and continuing through at least in or about 2005,

13 within the Central District of California and elsewhere,

14 defendants WEISS and LAZAR, together with other persons known and

15 unknown to the Grand Jury, being persons employed by and

16 associated with the enterprise described in paragraph 49 above,

17 which enterprise engaged in, and the activities of which

18 affected, interstate and foreign commerce, knowingly and

19 intentionally conspired to violate 18 U.S.C. § 1962(c), that is,

20 to conduct and participate, directly and indirectly, in the

21 conduct of the affairs of that enterprise through a pattern of

22 racketeering activity, as that term is defined in Sections

23 1961(1) and 1961(5) of Title 18, United States Code, consisting

24 of multiple acts indictable under the following provisions of

25 federal law:

26         a.   18 U.S.C. §§ 2, 1503 (obstruction of justice);

27         b.   18 U.S.C. §§ 2, 1952(a)(1), (3) (travel and use of

28                 facilities in interstate commerce in furtherance

of commercial bribery);

    c.   18 U.S.C. §§ 2, 1341, 1346 (mail fraud involving the deprivation of money and property and honest services);

    d.   18 U.S.C. §§ 2, 1343, 1346 (wire fraud involving the deprivation of money and property and honest services);

    e.   18 U.S.C. §§ 2, 201(c)(2) (illegal witness payments); and

    f.   18 U.S.C. §§ 2, 1956 (money laundering).

53. It was a further part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

## IV.  MANNER AND MEANS OF THE RACKETEERING CONSPIRACY

54. The object of the racketeering conspiracy was carried out in the manner and by the means described in paragraphs 39 through 46 above, which the Grand Jury incorporates herein by reference.

COUNTS THREE THROUGH FIVE

[Defendant LAZAR]

[18 U.S.C. §§ 1341, 1346, 2]

[Mail Fraud; Aiding and Abetting; and Causing An Act to be Done]

55.   The Grand Jury hereby repeats and realleges paragraphs 1 through 6, 10 through 31, and 39 through 46 of this Indictment.

56.   Beginning on a date unknown to the Grand Jury but at least as early as in or about 1981, and continuing until at least in or about 2004, within the Central District of California and elsewhere, defendant SEYMOUR M. LAZAR, together with Milberg Weiss, Bershad, and others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud as to a material matter absent class members and shareholders in the lawsuits in which LAZAR, his wife, or an entity LAZAR controlled served as a plaintiff, by depriving these victims of the honest services of Milberg Weiss, lawyers in Milberg Weiss, and LAZAR.

57.   On or about the following dates, within the Central District of California and elsewhere, for the purpose of executing and attempting to execute the above-described scheme to defraud, defendant LAZAR, aided and abetted by Milberg Weiss, Bershad, and others known and unknown to the Grand Jury, caused the following items to be placed in an authorized depository for mail matter and to be sent and delivered by the United States Postal Service, and to be deposited to be sent and delivered by private and commercial carrier, according to the directions thereon:

49

| COUNT | DATE | ITEM |
|-------|------|------|
| THREE | 05/25/00 | $125,000 check from Milberg Weiss in New York, New York, to the Palm Springs Law Firm in Rancho Mirage, California |
| FOUR | 06/15/00 | $30,564.03 check from the Palm Springs Law Firm in Indian Wells, California, to the Selzer Law Firm in Palm Springs, California |
| FIVE | 07/24/00 | $18,975 check from the Palm Springs Law Firm in Indian Wells, California, to the Selzer Law Firm in Palm Springs, California |

COUNTS SIX THROUGH EIGHT

[Defendants MILBERG WEISS and LAZAR]

[18 U.S.C. §§ 1341, 1346, 2]

[Mail Fraud; Aiding and Abetting; and Causing An Act to be Done]

58.  The Grand Jury hereby repeats and realleges paragraphs 1 through 6, 10 through 31, and 39 through 46 of this Indictment.

59.  Beginning on a date unknown to the Grand Jury but at least as early as in or about 1981, and continuing until at least in or about 2004, within the Central District of California and elsewhere, defendants MILBERG WEISS and SEYMOUR M. LAZAR, together with others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud as to a material matter absent class members and shareholders in the lawsuits in which LAZAR, his wife, or an entity LAZAR controlled served as a plaintiff, by depriving these victims of money and property and of the honest services of MILBERG WEISS, lawyers in MILBERG WEISS, and LAZAR, and to obtain money and property by means of material false and fraudulent pretenses, representations, and promises.

60.  On or about the following dates, within the Central District of California and elsewhere, for the purpose of executing and attempting to execute the above-described scheme to defraud, defendants MILBERG WEISS, LAZAR, and others known and unknown to the Grand Jury, aided and abetted by each other and by others known and unknown to the Grand Jury, caused the following items to be placed in an authorized depository for mail matter and to be sent and delivered by the United States Postal Service, and to be deposited to be sent and delivered by private and

51

1  commercial carrier, according to the directions thereon:

2

| COUNT | DATE | ITEM |
|-------|------|------|
| SIX | 12/28/00 | $50,000 check from MILBERG WEISS in New York, New York, to the Palm Springs Law Firm in Indian Wells, California |
| SEVEN | 06/18/01 | Letter from Bershad in New York City to the Palm Springs Law Firm in Palm Springs, California |
| EIGHT | 07/09/01 | $133,000 check from MILBERG WEISS in New York, New York, to the Palm Springs Law Firm in Indian Wells, California |

52

COUNT NINE

[Defendants MILBERG WEISS, LAZAR, and SELZER]

[18 U.S.C. § 1956(h)]

[Money Laundering Conspiracy]

61.   The Grand Jury hereby repeats and realleges paragraphs
1, 4, and 5 of this Indictment.

## I.   INTRODUCTION

62.   As used in this Count Nine, the term "Specified
Unlawful Activity" includes all acts and activities described in
Counts One and Three through Eight concerning defendant LAZAR
that are indictable as: (a) obstruction of justice, in violation
of Title 18, United States Code, Section 1503; (b) mail fraud
involving deprivation of honest services, in violation of Title
18, United States Code, Sections 1341 and 1346; (c) wire fraud
involving deprivation of honest services, in violation of Title
18, United States Code, Sections 1343 and 1346; (d) mail fraud
involving a scheme to obtain money and property in violation of
Title 18, United States Code, Section 1341; (e) wire fraud
involving a scheme to obtain money and property in violation of
Title 18, United States Code, Section 1343; and (f) illegal
witness payments, in violation of Title 18, United States Code,
Section 201(c)(2).

63.   As a result of the Specified Unlawful Activity,
MILBERG WEISS was awarded, obtained, and retained ownership and
control of certain monies and property, including more than
$44 million in attorneys' fees that were awarded to MILBERG WEISS
in the lawsuits in which LAZAR, his wife, or an entity LAZAR
controlled served as a named plaintiff, which became the proceeds

53

1 of the Specified Unlawful Activity no later than upon receipt of

2 these funds by MILBERG WEISS.

3 **II.    THE OBJECTS OF THE MONEY LAUNDERING CONSPIRACY**

4     64.  Beginning on or about October 28, 1992 (the date on

5 which Title 18, United States Code, Section 1956(h) was enacted),

6 and continuing until at least in or about 2002, in the Central

7 District of California and elsewhere, defendants MILBERG WEISS,

8 SEYMOUR M. LAZAR, and PAUL T. SELZER, together with others known

9 and unknown to the Grand Jury, knowingly combined, conspired, and

10 agreed to commit the following money laundering offenses against

11 the United States:

12         a.   To commit concealment money laundering by

13 knowingly conducting, willfully causing others to conduct, and

14 attempting to conduct and to cause others to conduct financial

15 transactions involving the proceeds of Specified Unlawful

16 Activity, knowing that the property involved in the transactions

17 represented the proceeds of some form of unlawful activity, and

18 knowing that the transactions were designed, in whole or in part,

19 to conceal or disguise the nature, source, ownership, or control

20 of the proceeds of Specified Unlawful Activity, in violation of

21 Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2(b);

22 and

23         b.   To commit promotional money laundering by

24 knowingly conducting, willfully causing others to conduct, and

25 attempting to conduct and to cause others to conduct financial

26 transactions involving the proceeds of Specified Unlawful

27 Activity, knowing that the property involved in the transactions

28 represented the proceeds of some form of unlawful activity, with

54

1  the intent to promote the carrying on of Specified Unlawful

2  Activity, in violation of Title 18, United States Code,

3  Section 1956(a)(1)(A)(i) and 2(b).

4  III. **THE MANNER AND MEANS OF THE MONEY LAUNDERING CONSPIRACY**

5       65.   The objects of the money laundering conspiracy were

6  carried out, in part, in the manner and by the means described

7  below.

8       66.   As described in Count One of this Indictment,

9  MILBERG WEISS and others known and unknown to the Grand Jury paid

10 and caused to be paid secret and illegal kickbacks to LAZAR

11 through SELZER and the other intermediary law firms and lawyers.

12      67.   As further described in Count One of this Indictment,

13 SELZER and the other intermediary law firms and lawyers used and

14 applied the kickback payments at LAZAR's direction and for his

15 benefit, including to: (a) satisfy legal fees and expenses that

16 LAZAR owed to SELZER and the other intermediary law firms and

17 lawyers, for work related to LAZAR's real estate holdings and

18 personal matters; (b) pay real estate appraisers, engineers,

19 surveyors, and others who performed work for LAZAR relating to

20 his real estate holdings; (c) pay permitting fees relating to

21 LAZAR's real estate holdings; (d) make political contributions on

22 LAZAR's behalf; (e) make and maintain investments for the benefit

23 of LAZAR; (f) make payments to and for the benefit of one of

24 LAZAR's sons; and (g) make payments directly to LAZAR.

25      68.   These transactions concealed and disguised the nature,

26 source, ownership, and control of the proceeds of Specified

27 Unlawful Activity by, among other means: (a) concealing and

28 disguising the payments from MILBERG WEISS to SELZER and the

1   other of LAZAR's intermediary law firms and lawyers as fees paid

2   to and for the benefit of the law firms and lawyers, when in fact

3   they were secret and illegal kickback payments to and for the

4   benefit of LAZAR; and (b) concealing and disguising the payments

5   by SELZER and the other of LAZAR's intermediary law firms and

6   lawyers to and for the benefit of LAZAR as payments involving

7   legitimately obtained proceeds of LAZAR, when in fact they were

8   secret and illegal kickback payments from MILBERG WEISS.

9       69.   These transactions promoted the Specified Unlawful

10  Activity by, among other means: (a) inducing and rewarding LAZAR

11  for serving and causing his wife to serve as named plaintiffs in

12  Lawsuits; (b) causing LAZAR to make false statements, conceal

13  material facts, and engage in other dishonest conduct in the

14  Lawsuits in order to maintain the secrecy of his illegal kickback

15  arrangement with MILBERG WEISS; and (c) ensuring that LAZAR would

16  serve and cause his wife to serve as named plaintiffs in future

17  Lawsuits to be brought by MILBERG WEISS.

18

19

20

21

22

23

24

25

26

27

28

COUNTS TEN THROUGH THIRTEEN

[Defendants LAZAR and SELZER]

[18 U.S.C. §§ 1956(a)(1)(B)(i) and 2]

[Concealment Money Laundering; Aiding and Abetting

and Causing an Act to be Done]

70.  The Grand Jury hereby repeats and realleges paragraphs 1, 2, 4, 5, 62, 63, and 66 through 68 of this Indictment.

71.  On or about the dates listed below, within the Central District of California and elsewhere, defendants SEYMOUR M. LAZAR and PAUL T. SELZER, aided and abetted by each other and by others known and unknown to the Grand Jury, conducted and willfully caused others to conduct the following financial transactions affecting interstate commerce, which transactions in fact involved the proceeds of Specified Unlawful Activity (as defined in paragraph 62 in Count Nine above), knowing that the property involved in the transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed, in whole or in part, to conceal and disguise the nature, source, ownership, and control of the proceeds of Specified Unlawful Activity:

| COUNT | DATE | TRANSACTION |
|-------|------|-------------|
| TEN | 06/22/00 | transfer of approximately $30,564 from the Palm Springs Law Firm's business checking account (Bank of America account # XXXXX-X0990) to the Selzer Law Firm's business checking account (Union Bank of California account #XXXXXX4299) |

| COUNT | DATE | TRANSACTION |
|---|---|---|
| ELEVEN | 06/26/00 | transfer of approximately $5,000 from the Selzer Law Firm's client trust account (Union Bank of California account #XXXXX-X0884) to LAZAR's personal trust account (Bank of America account # XXXXX-X8703, in the name "Paul T. Selzer, FBO Seymour Lazar") |
| TWELVE | 07/25/00 | transfer of approximately $18,975 from the Palm Springs Law Firm's business checking account (Bank of America account #XXXXX-X0990) to the Selzer Law Firm's client trust account (Union Bank of California #XXXXXX0884) |
| THIRTEEN | 08/10/00 | transfer of approximately $19,100 from the Selzer Law Firm's client trust account (Union Bank of California account #XXXXXX0884) to LAZAR's personal trust account (Bank of America account # XXXXX-X8703, in the name "Paul T. Selzer, FBO Seymour Lazar") |

58

COUNTS FOURTEEN THROUGH SIXTEEN

[Defendant LAZAR]

[26 U.S.C. § 7206(1)]

[Subscribing to False Tax Return]

72.  The Grand Jury hereby repeats and realleges paragraphs 1 through 6, 10 through 31, and 39 through 46 of this Indictment.

73.  On or about the following dates, in Riverside County, within the Central District of California, defendant SEYMOUR M. LAZAR willfully made and subscribed a Personal Income Tax Return Form 1040 for the tax years identified below, which contained and was verified by a written declaration that it was made under the penalties of perjury, and which LAZAR knew and believed was not true and correct as to a material matter, in that it failed to report as income kickbacks paid during the year by Milberg Weiss for LAZAR's benefit, in the following amounts:

| COUNT | DATE | TAX YEAR | AMOUNT OF KICKBACKS FROM MILBERG WEISS |
|-------|------|----------|------------------------------------------|
| FOURTEEN | 10/17/00 | 1999 | $ 125,000 |
| FIFTEEN | 10/12/01 | 2000 | $ 175,000 |
| SIXTEEN | 05/21/03 | 2001 | $ 133,000 |

59

COUNT SEVENTEEN

[Defendant LAZAR]

[18 U.S.C. §§ 1503, 2]

[Obstruction of Justice; Causing an Act to be Done]

74.  The Grand Jury hereby repeats and realleges paragraphs 1 through 35 and 39 through 46 of this Indictment.

75.  At all times relevant to this Count Seventeen, there was pending in the Central District of California a federal grand jury proceeding involving allegations that Milberg Weiss had paid secret and illegal kickbacks to named plaintiffs in class actions and shareholder derivative actions, including LAZAR (the "Grand Jury Proceeding").

76.  On or about January 9, 2002, LAZAR was personally served at his residence in Palm Springs, California, with a grand jury subpoena (the "Subpoena").  The Subpoena required LAZAR to produce to the Grand Jury certain specified documents relating to the Grand Jury Proceeding that were in his possession, custody, or control, which, as defined and instructed by the Subpoena, included documents that were in the possession of LAZAR's accountant and tax return preparer.

77.  In or about February 2002, within the Central District of California, defendant SEYMOUR M. LAZAR corruptly influenced, obstructed, and impeded, and endeavored to influence, obstruct, and impede, the due administration of justice in the Grand Jury Proceeding by directing his accountant and tax return preparer to destroy certain documents relating to LAZAR, including documents that LAZAR knew: (a) were responsive to the Subpoena; and (b) were and would become relevant to the Grand Jury Proceeding.

60

COUNT EIGHTEEN

[Defendants MILBERG WEISS, WEISS]

[18 U.S.C. §§ 1503, 2]

[Obstruction of Justice; Causing an Act to be Done]

78.  The Grand Jury hereby repeats and realleges paragraphs 1 through 35, 39 through 46, and the allegations set forth in Overt Act Nos. 18-34, 37, 39, 41, and 44-45 of paragraph 47 of this Indictment.

79.  At all times relevant to this Count Eighteen, there was pending in the Central District of California a federal grand jury proceeding involving allegations that MILBERG WEISS had paid secret and illegal kickbacks to named plaintiffs in class actions and shareholder derivative actions, including Cooperman (the "Grand Jury Proceeding").

80.  On or about January 8, 2002, MILBERG WEISS was served with a grand jury subpoena for certain documents in its possession, custody, or control concerning Cooperman (the "Grand Jury Subpoena").  Among the documents responsive to the Grand Jury Subpoena was a telefax from Cooperman to Bershad, dated November 15, 1990 (the "11/15/1990 telefax"), which stated, among other things:

> "This is what I've found so far.  I faxed Bill copies of 3 checks in 12/89 . . . .  According to my records, after 12/89, Mel sent Bruce another 35,000, & I think I may still owe that to Mel."

81.  Beginning in or about 2003, and continuing through on or about August 8, 2007, within the Central District of California and elsewhere, defendants MILBERG WEISS and MELVYN I. WEISS ("WEISS"), together with others known and unknown to the Grand Jury, corruptly influenced, obstructed, and impeded,

1  and endeavored to influence, obstruct, and impede, the due

2  administration of justice in the Grand Jury Proceeding by causing

3  the 11/15/1990 telefax to be withheld from production in response

4  to the Grand Jury Subpoena.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT NINETEEN

[Defendant WEISS]

[18 U.S.C. §§ 1001, 2]

[False Statements; Causing an Act to be Done]

82.  The Grand Jury hereby repeats and realleges paragraphs 1 through 35, 39 through 46, 79, 80, and the allegations set forth in Overt Act Nos. 18-34, 37, 39, 41, and 44-45 of paragraph 47 of this Indictment.

83.  On or about August 29, 2003, in Los Angeles County, within the Central District of California, in a matter within the jurisdiction of the executive branch of the Government of the United States, defendant MELVYN I. WEISS ("WEISS") knowingly and willfully caused to be made material false, fictitious, and fraudulent statements and representations.  Specifically, WEISS caused to be represented to the United States Attorney's Office for the Central District of California and the United States Postal Inspection Service that: (a) WEISS, only a couple of months before, had found the 11/15/1990 telefax and certain other documents in his safe located in his office at Milberg Weiss, in which he kept personal items; (b) before finding the documents, including the 11/15/1990 telefax, WEISS had forgotten they were in his safe; and (c) the documents, including the 11/15/1990 telefax, were personal documents of WEISS and therefore did not have to be produced in response to the Grand Jury Subpoena.  In truth and in fact, as WEISS then knew: (a) WEISS had not discovered the 11/15/1990 telefax in his safe, but instead had taken the document from David J. Bershad, who had found it in his desk drawer when searching for documents responsive to the Grand

63

1    Jury Subpoena; and (b) the 11/15/1990 telefax was not a personal

2    document of WEISS, but instead was a document of Milberg Weiss

3    that should have been produced in response to the Grand Jury

4    Subpoena.

COUNT TWENTY

[Defendants MILBERG WEISS, WEISS, and LAZAR]

[28 U.S.C. § 2461(c), 18 U.S.C. § 981(a)(1)(C),

and 21 U.S.C. § 853]

[Criminal Forfeiture]

84.   The allegations contained in Count One of this
Indictment are hereby repeated, realleged, and incorporated by
reference herein as though fully set forth at length for the
purpose of alleging forfeiture pursuant to the provisions of
Title 28, United States Code, Section 2461(c), Title 18, United
States Code, Section 981(a)(1)(C), and Title 21, United States
Code, Section 853.

85.   Pursuant to Title 28, United States Code,
Section 2461(c), Title 18, United States Code,
Section 981(a)(1)(C), and Title 21, United States Code,
Section 853, each of defendants MILBERG WEISS,
MELVYN I. WEISS, and SEYMOUR M. LAZAR convicted under Count One
of this Indictment shall forfeit to the United States any and all
property, real or personal, which constitutes or is derived from
proceeds traceable to such offense, including the following:

          a.   with respect to MILBERG WEISS, the more than
approximately $251 million in attorneys' fees obtained by MILBERG
WEISS in the Lawsuits and litigation resolving the Lawsuits (the
"tainted attorneys' fees");

          b.   with respect to WEISS and LAZAR, the portion of
the tainted attorneys' fees that each of these defendants
received, namely:

65

1           i.   the more than approximately $41.8 million in

2  tainted attorneys' fees that WEISS received as a result of his

3  partnership interest in MILBERG WEISS; and

4           ii. the more than approximately $1.2 million that

5  LAZAR received as kickback payments derived from the tainted

6  attorneys' fees;

7         c.   A sum of money equal to the total amount of

8  proceeds traceable to such offense, which sum for each defendant

9  will be up to the following approximate amount:

| Defendant | Amount |
|---|---|
| MILBERG WEISS . . . | $251 million |
| WEISS . . . . . . | $251 million |
| LAZAR . . . . . . | $57.7 million |

14    86.   Pursuant to Title 21, United States Code,

15  Section 853(p), as incorporated by Title 28, United States Code,

16  Section 2461(c), each of defendants MILBERG WEISS, WEISS, and

17  LAZAR, if so convicted, shall forfeit substitute property, up to

18  the value of the amount described in the preceding paragraph, if,

19  by any act or omission of the defendant, the property described

20  therein, or any portion thereof, (a) cannot be located upon the

21  exercise of due diligence; (b) has been transferred or sold to,

22  or deposited with, a third party; (c) has been placed beyond the

23  jurisdiction of the court; (d) has been substantially diminished

24  in value; or (e) has been commingled with other property which

25  cannot be divided without difficulty.

26

27

28

COUNT TWENTY-ONE

[Defendants WEISS and LAZAR]

[18 U.S.C. § 1963]

[Criminal Forfeiture]

87.  The allegations contained in Count Two of this Indictment are hereby repeated, realleged, and incorporated by reference herein as though fully set forth at length for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 1963.  Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 1963 in the event of any defendant's conviction under Count Two of this Indictment.

88.  The defendants, MELVYN I. WEISS and SEYMOUR M. LAZAR:

a.  have acquired and maintained interests in violation of Title 18, United States Code, Section 1962, which interests are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1);

b.  have an interest in, security of, claims against, and property and contractual rights that afford a source of influence over, the enterprise named and described herein, which the defendants established, operated, controlled, conducted, and participated in the conduct of, in violation of Title 18, United States Code, Section 1962, which interests, securities, claims, and rights are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(2); and

67

c.   have property constituting and derived from proceeds obtained, directly and indirectly, from racketeering activity, in violation of Title 18, United States Code, Section 1962, which property is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(3).

89.   The properties of the defendants subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1), (a)(2), and (a)(3), include but are not limited to:

a.   any and all interests defendant WEISS has in Milberg Weiss;

b.   defendant WEISS's share of the more than approximately $251 million in attorneys' fees obtained by Milberg Weiss in the Lawsuits and litigation resolving the Lawsuits, which share exceeds approximately $41.8 million;

c.   with respect to LAZAR, the more than $2.6 million in illegal kickback payments he acquired from Milberg Weiss; and

d.   a sum of money equal to the total value of any and all property constituting, or derived from, any proceeds the defendants obtained, directly and indirectly, from racketeering activity, in the minimum amount of $44.4 million.

90.   If any of the property described in the preceding paragraph as being subject to forfeiture, as a result of any act or omission of any defendant:

a.   cannot be located upon the exercise of due
          diligence;

b.   has been transferred or sold to, or deposited
     with, a third party;

c.   has been placed beyond the jurisdiction of the
     court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which
     cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18,
United States Code, Section 1963(m), to seek forfeiture of any
other property of said defendant up to the value of the
forfeitable property.

91.  The above-named defendants, WEISS and LAZAR, and each
of them, are jointly and severally liable for the forfeiture
obligations as alleged above.

COUNT TWENTY-TWO

[MILBERG WEISS, LAZAR, SELZER]

[18 U.S.C. § 982(a)(1) and 21 U.S.C. § 853]

[Criminal Forfeiture]

92.   The allegations contained in Count Nine of this Indictment are hereby repeated, realleged, and incorporated by reference herein as though fully set forth at length for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 982, and Title 21, United States Code, Section 853.

93.   Pursuant to Title 18, United States Code, Section 982(a)(1), each of defendants MILBERG WEISS, SEYMOUR M. LAZAR, and PAUL T. SELZER convicted under Count Nine of this Indictment shall forfeit to the United States the following property:

a.   All right, title, and interest in any and all property involved in each offense in violation of Title 18, United States Code, Section 1956, or conspiracy to commit such offense, for which the defendant is convicted, and all property traceable to such property, including the following:

(1) all money or other property that was the subject of each transaction in violation of Title 18, United States Code, Sections 1956(h) and/or 1956(a)(1)(A)(I);

(2) all commissions, fees, and other property constituting proceeds obtained as a result of those violations;

(3) all property used in any manner or part to commit or to facilitate the commission of those violations; and

(4) all property traceable to money or property

70

1   described in this paragraph 93.a.(1) to 93.a.(3).

2           b.    A sum of money equal to the total amount of money

3   involved in each offense in violation of Title 18, United States

4   Code, Section 1956, or conspiracy to commit such offense, for

5   which the defendant is convicted, which sum for each defendant

6   will be up to at least $883,463.

7       94.    If, as a result of any act or omission by defendants

8   MILBERG WEISS, LAZAR, or SELZER, any of the foregoing money or

9   property (a) cannot be located upon the exercise of due

10  diligence; (b) has been transferred or sold to, or deposited

11  with, a third party; (c) has been placed beyond the jurisdiction

12  of the court; (d) has been substantially diminished in value; or

13  (e) has been commingled with other property that cannot be

14  subdivided without difficulty, then any other property or

15  / / /

16  / / /

17  / / /

18

19

20

21

22

23

24

25

26

27

28

1  interests of that defendant, up to the value of the money and

2  property described in the preceding paragraph of this Indictment,

3  shall be subject to forfeiture to the United States.

4                                    A TRUE BILL

5

6                                    /s/
                                     Foreperson

7

8
   GEORGE S. CARDONA
9  United States Attorney

10

11 THOMAS P. O'BRIEN
   Assistant United States Attorney
12 Chief, Criminal Division

13 DOUGLAS A. AXEL
   Assistant United States Attorney
14 Deputy Chief, Major Frauds Section

15 RICHARD E. ROBINSON
   ROBERT J. McGAHAN
16 Assistant United States Attorneys
   Major Frauds Section

17

18

19

20

21

22

23

24

25

26

27

28

                        72