GEORGE S. CARDONA
United States Attorney
THOMAS P. O'BRIEN
Assistant United States Attorney
Chief, Criminal Division
DOUGLAS A. AXEL (Cal. Bar #173814)
Deputy Chief, Major Frauds Section
RICHARD E. ROBINSON (Cal. Bar #090840)
ROBERT J. MCGAHAN (Cal. Bar #196568)
Assistant United States Attorneys
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:    (213) 894-0713
     Facsimile:    (213) 894-6269
     E-mail:   Richard.Robinson@usdoj.gov
               Doug.Axel@usdoj.gov
               Robert.McGahan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 07-__ **07-00964** |
|---|---|
| Plaintiff, | **PLEA AGREEMENT FOR DEFENDANT WILLIAM S. LERACH PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 11(c)(1)(C)** |
| v. | |
| WILLIAM S. LERACH, | |
| Defendant. | |

        1.    This constitutes the binding plea agreement between

WILLIAM S. LERACH ("defendant"), on the one hand, and the United

States Attorney's Office for the Central District of California,

on the other hand (the "USAO"). Except as provided in paragraphs

22(a) and (b) below, this agreement is limited to the USAO and

cannot bind any other federal, state, or local prosecuting,

administrative or regulatory authorities.

/ / /

## PLEA

2.    Defendant gives up the right to indictment by a grand jury, waives any applicable statute of limitations, and agrees to plead guilty to a one-count information in the form attached to this agreement or a substantially similar form.

## NATURE OF THE OFFENSE

3.    In order for defendant to be guilty of count one of the information, which charges a violation of Title 18, United States Code, Section 371, the following must be true:

(a)    Beginning in or before 1981, and continuing at least into 2002, there was an agreement between two or more persons to commit at least one of the crimes charged in the information, namely:

(i) to obstruct justice by corruptly influencing, obstructing, and impeding, and endeavoring to influence, obstruct, and impede, the due administration of justice in lawsuits filed and litigated in courts of the United States, in violation of Title 18, United States Code, Section 1503; and

(ii) to make false material declarations under oath in proceedings before and ancillary to courts of the United States, in violation of Title 18, United States Code, Section 1623(a);

(b)    defendant became a member of the conspiracy, that is, he joined in the illegal agreement, knowing of at least one of its objects and intending to help accomplish it; and

(c)    one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

4. Defendant admits that defendant is, in fact, guilty of this offense, as described in count one of the information.

## PENALTIES

5. The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 371, is five-years imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

6. Supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

7. Defendant also understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury.

8. Defendant further understands that the conviction in this case may subject defendant to various collateral consequences, including revocation or suspension of his license to practice law. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's plea of guilty.

9. The parties agree and stipulate that, in accordance with United States Sentencing Guidelines § 5E1.1(b)(2), determining complex issues of fact concerning restitution, if any, that should be awarded would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process.

## FACTUAL BASIS

10. Defendant and the USAO agree and stipulate to the statement of facts set forth in Exhibit A hereto. This statement of facts includes facts sufficient to support a plea of guilty to the charge described in this agreement. It is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

## WAIVER OF CONSTITUTIONAL AND OTHER RIGHTS

11. By pleading guilty, defendant gives up the following rights:

    (a) The right to persist in a plea of not guilty.

    (b) The right to a speedy and public trial by jury.

    (c) The right to the assistance of legal counsel at trial, including the right to have the Court appoint counsel for defendant for the purpose of representation at trial. (In this regard, defendant understands that, despite his plea of guilty, he retains the right to be represented by counsel -- and, if necessary, to have the Court appoint counsel if defendant cannot afford counsel -- at every other stage of the proceeding.)

    (d) The right to be presumed innocent and to have the

1  burden of proof placed on the government to prove defendant

2  guilty beyond a reasonable doubt.

3  　　　　(e)  The right to confront and cross-examine witnesses

4  against defendant.

5  　　　　(f)  The right, if defendant wished, to testify on

6  defendant's own behalf and present evidence in opposition to the

7  charges, including the right to call witnesses and to subpoena

8  those witnesses to testify.

9  　　　　(g)  The right not to be compelled to testify, and, if

10  defendant chose not to testify or present evidence, to have that

11  choice not be used against defendant.

12  　　　12.  By pleading guilty, defendant gives up any and all

13  rights to pursue any affirmative defenses, Fourth Amendment or

14  Fifth Amendment claims, and other pretrial motions that could be

15  filed on his behalf, including assertion of any defense based on

16  statute of limitations or venue. Further, as a result of

17  defendant's consent to the assistance of a settlement judge in

18  the negotiation of this binding plea agreement, defendant waives

19  any right to pursue any claim that this binding plea agreement

20  was reached in violation of Federal Rule of Criminal Procedure

21  11(c)(1).

22  　　　　　　　　　　　SENTENCING FACTORS

23  　　　13.  Defendant understands that the Court is required to

24  consider the factors set forth in 18 U.S.C. § 3553(a)(1)-(7),

25  including the kinds of sentence and sentencing range established

26  under the United States Sentencing Guidelines ("U.S.S.G." or

27  "Sentencing Guidelines") in determining defendant's sentence.

28  　　　14.  Defendant and the USAO have no agreement concerning

1 the applicable Sentencing Guidelines or Sentencing Guidelines

2 factors.

3     15. As part of this binding plea agreement, defendant and

4 the USAO agree that an appropriate disposition of this case is

5 that the court impose: a sentence of imprisonment within the

6 range of 12-24 months imprisonment, with the court retaining

7 discretion to substitute community confinement or home detention

8 for no more than one-half of the term of imprisonment imposed; a

9 fine of $250,000; a three-year period of supervised release

10 (with conditions, which may include community confinement or

11 home detention, to be fixed by the Court); and a special

12 assessment of $100.

13     16. There is no agreement as to defendant's criminal

14 history or criminal history category.

15     17. The Court will determine the facts and calculations

16 relevant to sentencing and decide whether to agree to be bound

17 by this agreement. Both defendant and the USAO are free to: (a)

18 supplement the facts by supplying relevant information to the

19 United States Probation Office and the Court, and (b) correct

20 any and all factual misstatements relating to the calculation of

21 the sentence.

22     18. Defendant understands and agrees that this agreement

23 is entered into pursuant to Federal Rule of Criminal Procedure

24 11(c)(1)(C). So long as defendant does not breach the agreement,

25 defendant may withdraw from this agreement and render it null

26 and void if the Court refuses to be bound by this agreement. The

27 USAO may also withdraw from this agreement and render it null

28 and void if the Court refuses to be bound by this agreement.

## DEFENDANT'S OBLIGATIONS

19. Defendant agrees that he will:

(a) Deliver to the USAO at the time of this Agreement an executed waiver of indictment in substantially the form attached hereto as Exhibit B and an executed waiver of the statute of limitations in substantially the form attached hereto as Exhibit C.

(b) Plead guilty as set forth in this agreement.

(c) Not knowingly and willfully fail to abide by all sentencing stipulations contained in this agreement.

(d) Not knowingly and willfully fail to: (i) appear for all court appearances, (ii) surrender as ordered for service of sentence, (iii) obey all conditions of any bond, and (iv) obey any other ongoing court order in this matter.

(e) Not commit any crime; however, offenses which would be excluded for sentencing purposes under U.S.S.G. § 4A1.2(c) are not within the scope of this agreement.

(f) Not knowingly and willfully fail to be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

(g) Pay the applicable special assessment at or before the time of sentencing.

(h) Within seven days of sentencing, pay the fine imposed by the Court, up to a maximum of $250,000. In this regard, defendant agrees that consideration of the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2)(A)-(C), and (a)(3), justifies a fine amount of $250,000.

20. Defendant further agrees to forfeit to the United

States the amount of $7,750,000 (the "Forfeitable Currency"),
which defendant agrees shall be forfeited through
administrative, judicial criminal or judicial civil forfeiture
(at the sole election of the United States), pursuant to 28
U.S.C. § 2461(c), 18 U.S.C. § 981(a)(1)(C) and/or 18 U.S.C.
§ 981(a)(1)(A). Defendant further agrees:

(a)   That the Forfeitable Currency constitutes or is
derived from net proceeds of the conspiracy to obstruct justice
(18 U.S.C. § 1503) and to make material false statements under
oath (18 U.S.C. § 1623) in violation of 18 U.S.C. § 371
described in count one of the information;

(b)   That said conspiracy resulted in net proceeds in
excess of $7,750,000;

(c)   That at the sole and absolute discretion of the
USAO, the USAO may elect to cause to be entered (i) a money
judgment of forfeiture in the amount of the Forfeitable Currency
and apply the Forfeitable Currency toward satisfaction of the
judgment and/or (ii) a preliminary and final order of forfeiture
of the Forfeitable Currency;

(d)   That the Forfeitable Currency shall be paid to
the United States in the following manner and by the following
means:

(i) Within seven days of sentencing, defendant
shall pay to the United States the amount of $3,750,000 by
electronic funds transfers. Said transfer of the funds shall be
made to the Federal Reserve Bank of New York, 33 Liberty Street,
New York, New York, 10045, pursuant to instructions to be
provided by the USAO. The government will hold the funds in the

1  Seized Asset Deposit Funds Account until the funds are applied

2  to satisfy any money judgment and/or are forfeited pursuant to

3  any final order of forfeiture described in paragraph 20(c)

4  above; and

5            (ii) Within 180 days of sentencing, defendant

6  shall pay to the United States the amount of $4,000,000 by

7  electronic funds transfers. Said transfer of the funds shall be

8  made to the Federal Reserve Bank of New York, 33 Liberty Street,

9  New York, New York, 10045, pursuant to instructions to be

10  provided by the USAO. The government will hold the funds in the

11  Seized Asset Deposit Funds Account until the funds are applied

12  to satisfy any money judgment and/or are forfeited pursuant to

13  any final order of forfeiture described in paragraph 20(c)

14  above.

15            (e)  That defendant will have clear and sole title to

16  the Forfeitable Currency he promises to deliver to the USAO when

17  it is transferred;

18            (f)  Not to contest the forfeiture of the Forfeitable

19  Currency in any administrative or judicial proceeding;

20            (g)  To abandon, relinquish, and waive, and by

21  executing this agreement defendant hereby abandon, relinquish

22  and waive any and all rights in the Forfeitable Currency in

23  favor of the United States;

24            (h)  To waive, and by executing this agreement

25  defendant does waive, all constitutional and statutory

26  challenges to forfeiture of the Forfeitable Currency on any

27  grounds, including any statutes of limitations and the Excessive

28  Fines Clause;

9

1    (i) To take all steps as requested by the USAO that

2 are reasonable to pass to the United States clear title to the

3 Forfeitable Currency, including, without limitation, the

4 execution of a consent decree of forfeiture, the completing of

5 any other legal documents required for the transfer of title to

6 the United States, and causing defendant's spouse to execute a

7 consent to decree of forfeiture, all such documents to be

8 delivered to the United States along with the electronic funds

9 transfers described in paragraph 20(d) above;

10    (j) Not to assist any other person in any effort

11 falsely to contest the forfeiture of the Forfeitable Currency;

12    (k) That forfeiture of the Forfeitable Currency shall

13 not be counted toward satisfaction of any special assessment,

14 fine, restitution, or any other penalty the Court may impose,

15 nor shall it be counted toward satisfaction of any taxes,

16 penalties, or interest owed to the Internal Revenue Service or

17 any other taxing authority; and

18    (l) With respect to any forfeiture of the Forfeitable

19 Currency, to waive and relinquish, and by executing this

20 agreement defendant does waive and relinquish the requirements

21 of: (i) Federal Rules of Criminal Procedure 32.2 and 43(a)

22 regarding notice of the forfeiture in the charging instrument,

23 announcement of the forfeiture at the sentencing, and

24 incorporation of the forfeiture in the judgment; and (ii) 21

25 U.S.C. § 853(p)(1) regarding due diligence, transfer to third

26 party, placement beyond the jurisdiction of the Court,

27 substantial diminution of value and commingling.

28

21. Defendant is not required by this agreement to cooperate in any way with the USAO, the United States Attorney's Offices for each of the other 93 judicial districts of the United States ("the other USAOs"), the United States Department of Justice ("DOJ"), the Internal Revenue Service, the Postal Inspection Service, or any other federal law enforcement agency.

THE USAO'S OBLIGATIONS

22. If defendant complies fully with all defendant's obligations under this agreement, the USAO agrees:

(a) Not to further prosecute defendant for violations of federal law occurring prior to the execution of this agreement and arising out of: (i) the conduct charged in the first superseding indictment in <u>United States v. Milberg Weiss Bershad & Schulman LLP, et al.</u>, Cr. No. 05-587(A)-JFW and/or described in Exhibit A hereto; (ii) payments to or for the benefit of stockbrokers, non-lawyers, and/or lawyers for serving as plaintiffs and/or for referring other persons and/or entities to serve as plaintiffs; (iii) requests to courts for reimbursement of fees and costs of a damages expert witness and/or his relatives and/or his associated entities based in Princeton, New Jersey, and Hilton Head, South Carolina (collectively the "Princeton Expert"); (iv) any payments to, or on behalf of, the Princeton Expert; (v) the Princeton Expert's participation as an expert witness or consultant in cases litigated by Milberg Weiss (as defined in Exhibit A hereto) or Coughlin Stoia Geller Rudman & Robbins, LLP, formerly known as Lerach Coughlin Stoia Geller Rudman & Robbins, LLP ("the Lerach Firm"); (vi) the Princeton Expert's financial relationship with

11

1    PNC Bank; (vii) election, campaign, or other political

2    contributions made using only funds generated by the conduct

3    described in (i) – (v) above; and (viii) defendant's investment

4    in, or relationship with, the Acorn Technology Fund

5    (collectively, "the non-prosecution conduct"). The non-

6    prosecution provisions of this paragraph are binding on the

7    USAO, the other USAOs, and DOJ. Defendant understands and agrees

8    that the USAO, the other USAOs, and DOJ are free to prosecute

9    defendant for any other unlawful past conduct not specifically

10   exempted by this agreement or any illegal conduct that occurs

11   after the date of this agreement.

12           (b)  Not to prosecute the Lerach Firm for violations

13   of federal law occurring prior to the execution of this

14   agreement and arising out of "the non-prosecution conduct" as

15   defined in paragraph 22(a).  The non-prosecution provisions of

16   this paragraph are binding on the USAO, the other USAOs, and

17   DOJ. Defendant understands and agrees that the USAO, the other

18   USAOs, and DOJ are free to prosecute the Lerach Firm for any

19   other unlawful past conduct not specifically exempted by this

20   agreement or any illegal conduct that occurs after the date of

21   this agreement.

22           (c)  Not to prosecute the following current partners

23   in the Lerach Firm, Patrick J. Coughlin and Keith F. Park, for

24   violations of federal law occurring prior to the execution of

25   this agreement and arising out of "the non-prosecution conduct"

26   as defined in paragraph 22(a).  The non-prosecution provisions

27   of this paragraph are binding solely on the USAO and do not bind

28   the other USAOs or DOJ.  Defendant understands and agrees that

12

1 the USAO remains free to prosecute Partners Patrick J. Coughlin

2 and Keith F. Park for any other unlawful past conduct not

3 specifically exempted by this agreement or any illegal conduct

4 that occurs after the date of this agreement.

5        (d) Not to pursue any additional civil or criminal

6 forfeiture claims against defendant based on conduct occurring

7 prior to the execution of this agreement and arising out of the

8 non-prosecution conduct.

9        (e) To abide by all sentencing stipulations contained

10 in this agreement.

11                  BREACH OF AGREEMENT

12    23. If defendant, at any time after the execution of this

13 agreement knowingly and willfully violates or fails to perform

14 any of defendant's obligations under this agreement ("a

15 breach"), the USAO may declare this agreement breached. If the

16 USAO declares the agreement breached, and the Court finds such a

17 breach to have occurred, defendant will not be able to withdraw

18 defendant's guilty plea (if, at the time of the breach, he had

19 previously entered his guilty plea), and the USAO will be

20 relieved of all its obligations under this agreement.

21    24. Following a knowing and willful breach of this

22 agreement by defendant, should the USAO elect to pursue any

23 charge that was dismissed or that it would have been obligated

24 to dismiss or that was not filed as a result of this agreement,

25 then:

26        (a) Defendant agrees that any applicable statute of

27 limitations is tolled between the date of defendant's signing of

28 this agreement and the commencement of any such prosecution or

1   action.

2         (b)  Defendant gives up all defenses based on the

3   statute of limitations, any claim of pre-indictment delay, or

4   any speedy trial claim with respect to any such prosecution,

5   except to the extent that such defenses existed as of the date

6   of defendant's signing this agreement.

7         (c)  Defendant agrees that: (i) any statements made by

8   defendant, under oath, at the guilty plea hearing (if there was

9   such a hearing); (ii) the stipulated factual basis statement in

10  this agreement; and (iii) any evidence derived from such

11  statements, are admissible against defendant in any prosecution

12  of defendant, and defendant shall assert no claim under the

13  United States Constitution, any statute, Rule 410 of the Federal

14  Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal

15  Procedure, or any other federal rule, that the statements or

16  evidence derived from any statements should be suppressed or are

17  inadmissible.

18  LIMITED MUTUAL WAIVER OF APPEAL AND COLLATERAL ATTACK

19        25.  Defendant gives up the right to appeal any sentence

20  imposed by the Court and the manner in which the sentence is

21  determined, provided that the sentence is within the range set

22  forth in paragraph 15 and is constitutional. Defendant also

23  gives up any right to bring a post-conviction collateral attack

24  on the conviction or sentence.

25        26.  The USAO gives up its right to appeal the sentence,

26  provided that the Court imposes a sentence within the range set

27  forth in paragraph 15.

28

## COURT NOT A PARTY

27. The Court is not a party to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' stipulations.

28. This agreement has no effect on any proceedings against defendant not expressly mentioned herein.

## NO ADDITIONAL AGREEMENTS

29. Except as set forth herein, there are no promises, understandings or agreements between the USAO and defendant or defendant's counsel. Nor may any additional agreement, understanding or condition be entered into unless in a writing signed by all parties or on the record in court.

## PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

30. The parties agree and stipulate that this agreement will be considered part of the record of defendant's guilty plea hearing as if this entire agreement had been read into the record of such proceedings.

///

///

///

///

///

///

///

///

///

1      31.   This agreement is effective upon signature by

2   defendant, defendant's attorney, and an Assistant United States

3   Attorney.

4   AGREED AND ACCEPTED

5   UNITED STATES DEPARTMENT OF JUSTICE
    (as to paragraphs 22(a) and (b) only)

6

7                                                9/17/07

8   GEORGE S. CARDONA                           Date
    United States Attorney

9

10  AGREED AND ACCEPTED

11  UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF CALIFORNIA

12

13                                               9/17/07

14  GEORGE S. CARDONA                           Date
    United States Attorney

15

16                                               9/17/07

17  DOUGLAS A. AXEL                             Date
    Assistant United States Attorney

18  Deputy Chief, Major Frauds Section

19

20                                               9/17/07

    RICHARD E. ROBINSON                         Date
21  Assistant United States Attorney
    Major Frauds Section

22

23                                               9/17/07

24  ROBERT J. McGAHAN                           Date
    Assistant United States Attorney
25  Major Frauds Section

26

27

28

                            16

I, WILLIAM S. LERACH, have read this agreement and
carefully discussed every part of it with my attorney. I
understand the terms of this agreement, and I voluntarily agree
to those terms. My attorney has advised me of my rights, of
possible defenses, of the Sentencing Guideline provisions, and
of the consequences of entering into this agreement. No promises
or inducements have been made to me other than those contained
in this agreement. No one has threatened or forced me in any way
to enter into this agreement. Finally, I am satisfied with the
representation of my attorney in this matter.

_____     9/17/07
WILLIAM S. LERACH                    Date
Defendant

I am WILLIAM S. LERACH's attorney. I have carefully
discussed every part of this agreement with my client. Further,
I have fully advised my client of his rights, of possible
defenses, of the sentencing factors set forth in 18 U.S.C.
§ 3553(c), including the relevant Sentencing Guidelines
provisions, and of the consequences of entering into this
agreement. To my knowledge, my client's decision to enter into
this agreement is an informed and voluntary one.

_____     9/17/07
JOHN KEKER, ESQ.                     Date
KEKER & VAN NEST LLP
Counsel for Defendant
WILLIAM S. LERACH

17

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,  )   CR 07-___
                           )
            Plaintiff,     )   **I N F O R M A T I O N**
                           )
       v.                  )   [18 U.S.C. § 371: Conspiracy]
                           )
WILLIAM S. LERACH,         )
                           )
            Defendant.     )
_____)

The United States Attorney charges:

COUNT ONE

[18 U.S.C. § 371]

[Conspiracy]

1.   Beginning on a date unknown but at least as early as in or about 1981, and continuing into at least in or about 2002, within the Central District of California and elsewhere, defendant WILLIAM S. LERACH, together with the law firm Milberg Weiss Bershad Hynes & Lerach LLP (formerly known as "Milberg Weiss Bershad Spechthrie & Lerach") ("Milberg Weiss"); David J. Bershad ("Bershad"); other partners in Milberg Weiss; and others known and unknown to the United States Attorney, knowingly combined, conspired, and agreed to commit the following offenses

DAA:RER:RJM

DAA RER RJM

against the United States:

(a)  to commit obstruction of justice by corruptly influencing, obstructing, and impeding, and endeavoring to influence, obstruct, and impede, the due administration of justice in lawsuits filed and litigated in federal courts, in violation of Title 18, United States Code, Section 1503; and

(b)  to make false material declarations under oath in proceedings before and ancillary to courts of the United States, in connection with lawsuits filed and litigated in federal courts, in violation of Title 18, United States Code, Section 1623(a).

2.  In furtherance of the conspiracy and to accomplish its objects, defendant LERACH and other co-conspirators committed and caused others to commit the following overt acts, among others:

(a)  On or about November 6, 1996, in Steven Cooperman v. Individual, Inc. et al., 96-CV-12272 (United States District Court, District of Massachusetts), in which Steven Cooperman was a named plaintiff, Cooperman falsely certified, under penalty of perjury, that he would "not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court."

(b)  On or about December 13, 1999, in Helene Giarputo and Seymour Lazar v. Xerox Corp. et al., 99-CV-2374 (United States District Court, District of Connecticut), in which Seymour Lazar was a named plaintiff, Lazar falsely certified, under penalty of perjury, that he would "not accept any payment for

serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court."

SALLY L. MELOCH
Acting United States Attorney

*[signature]* Daniel A. Goodman, Deputy Chief, Criminal Division, FOR:

THOMAS P. O'BRIEN
Assistant United States Attorney
Chief, Criminal Division

DOUGLAS A. AXEL
Assistant United States Attorney
Deputy Chief, Major Frauds Section

RICHARD E. ROBINSON
ROBERT J. McGAHAN
Assistant United States Attorneys
Major Frauds Section

**EXHIBIT A**

**STATEMENT OF FACTS IN SUPPORT OF WILLIAM S. LERACH**
**PLEA AGREEMENT AND INFORMATION**

Defendant WILLIAM S. LERACH ("LERACH") represents and admits that the following facts are true.  Pseudonyms, capitalized terms, and case names herein have the same meanings as are ascribed to them in the first superseding indictment in <u>United States v. Milberg Weiss Bershad & Schulman LLP</u>, et al., CR 05-587(A)-JFW (the "FSI").

Introduction

1.  LERACH joined Milberg Weiss in 1976. LERACH worked in Milberg Weiss's office in San Diego, California.  LERACH later became a name partner in Milberg Weiss Bershad Hynes & Lerach, LLP, formerly known as "Milberg Weiss Bershad Specthrie & Lerach" (hereinafter "Milberg Weiss").

2.  Milberg Weiss specialized in serving as plaintiff's counsel in class actions and shareholder derivative actions (collectively "Class Actions") brought in federal and state courts throughout the United States, including in the Central District of California.

3.  As counsel representing class members or shareholders not before the courts (collectively "absent class members"), Milberg Weiss and its attorneys, including LERACH, had fiduciary duties of loyalty, honesty, and trust to absent class members.  Individuals who served as representative plaintiffs on behalf of absent class

- 1 -

members (hereinafter "named plaintiffs") likewise had fiduciary duties of loyalty, honesty, and trust to those absent class members.

### Overview of Secret Payment Arrangement

4. Beginning in or about the 1970s and continuing at least into 2002, in order to facilitate the recruitment and retention of named plaintiffs, certain senior Milberg Weiss partners agreed with various individuals that Milberg Weiss would secretly pay those individuals a portion of the attorneys' fees that Milberg Weiss obtained in Class Actions in which such individuals served, or caused a relative or associate to serve, as a named plaintiff.

5. The Milberg Weiss partners who agreed during the relevant times to secretly pay the named plaintiffs included LERACH, David J. Bershad ("Bershad"), and others.

6. The individuals who agreed to serve as named plaintiffs in Class Actions pursuant to the secret payment arrangement with Milberg Weiss included Steven G. Cooperman ("Cooperman") and others. Generally, these individuals were promised that they would be paid approximately 10% of the net attorneys' fees that Milberg Weiss obtained in their respective Class Actions. They were also told that the amount would be lower if they were paid in cash or if Milberg Weiss had payment obligations on the same case to others.

7. By entering into such payment arrangements, LERACH and other conspiring partners were able to secure a reliable source of

- 2 -

individuals who were ready, willing, and able to serve as named
plaintiffs in Class Actions that Milberg Weiss wanted to bring. In
addition, some of these individuals would investigate and propose
to LERACH and other conspiring partners lucrative potential Class
Actions for Milberg Weiss to bring. Such payment arrangements
generally enabled Milberg Weiss to file more Class Actions and to
file them more quickly than would be possible absent such
arrangements.

8.  At all relevant times, LERACH, other conspiring partners,
and the paid plaintiffs understood that, to the extent necessary,
they would make or cause to be made false and/or misleading
statements in documents filed in federal Class Actions (including
complaints, motions, and under-oath certifications) and in under-
oath testimony and other discovery in such actions in order to
conceal the existence of their secret payment arrangements.

9.  LERACH believed that discovery in a Class Action of the
secret payment arrangement with a named plaintiff could have
resulted in, among other things: (a) the disqualification of the
named plaintiff from serving as a class representative in that
action and other Class Actions; and (b) the disqualification of
Milberg Weiss, including the conspiring partners, from serving as
class counsel in that action and other Class Actions.

10.  LERACH and other conspiring partners concealed the
payments to named plaintiffs. They had the paid plaintiffs select
intermediary law firms, lawyers, and other professionals through

whom they would be paid their payments. LERACH and other conspiring partners would cause Milberg Weiss checks to be issued to these intermediaries, with the understanding and intent that the money would be distributed to or used for the benefit of the paid plaintiffs. LERACH and other conspiring partners knew that although these payments were variously documented and described as, among other things, "referral fees" and "professional fees" owed by Milberg Weiss to the intermediaries, they were actually disguised payments to the paid plaintiffs.

### Secret Payment Arrangements With Steven Cooperman

11.  LERACH, on behalf of Milberg Weiss, established a secret payment arrangement with Steven Cooperman, pursuant to which Milberg Weiss would pay Cooperman a percentage of the attorneys' fees that Milberg Weiss obtained in Cooperman's cases, as described in paragraph 6 above. LERACH discussed Cooperman's payment arrangement with other conspiring partners.

12.  Cooperman, Cooperman Plaintiff 1, Cooperman Plaintiff 2, and certain of Cooperman's relatives and associates served as named plaintiffs for Milberg Weiss in numerous other Class Actions. To satisfy Milberg Weiss's payment obligation to Cooperman on these cases, LERACH caused Milberg Weiss checks to be written to intermediary attorneys and their associated law firms selected by Cooperman, namely Richard R. Purtich and James P. Tierney (referred to as Cooperman Intermediary A and Cooperman

- 4 -

Intermediary B in the FSI). These payments were documented and disguised as, among other things, "referral fees" and the "share" of attorneys' fees owed by Milberg Weiss to these intermediaries, even though such payments represented monies that Milberg Weiss owed to Cooperman, were made solely to satisfy Milberg Weiss's payment obligation to Cooperman, and would be used for Cooperman's benefit or at his direction.

<u>Overt Act</u>

13. In furtherance of the conspiracy described above, LERACH and other members of the conspiracy committed and caused to be committed the following act, among others:

On or about November 6, 1996, in the <u>Individual</u> class action, brought by Milberg Weiss in the United States District Court for the District of Massachusetts, in which Cooperman was a named plaintiff, Cooperman falsely certified, under penalty of perjury, that he would "not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court."

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>PLAINTIFF,<br><br>v.<br><br>WILLIAM S. LERACH,<br><br>DEFENDANT. | **CASE NUMBER**<br><br>CR 07-_____<br><br>**WAIVER OF INDICTMENT** |

I,  **William S. Lerach** , the above-named defendant, who is accused of violating Title 18, United States

Code, Section 371, Conspiracy to Obstruct Justice and to Make False Material Statements  being advised of the

nature of the charge(s), the proposed information, and of my rights, hereby waive in open court on ____

prosecution by indictment and consent that the proceedings may be by information rather than by indictment.


Date: _____


_____
William S. Lerach
Defendant


_____
John Keker
Keker & Van Nest
Counsel for Defendant William S. Lerach


Before _____
             *Judicial Officer*


CR - 57 (5/00)[AO 455 Rev. 5/85]          WAIVER OF INDICTMENT

EXHIBIT B

## STATUTE OF LIMITATIONS WAIVER AGREEMENT
## BETWEEN WILLIAM S. LERACH AND THE UNITED STATES
## ATTORNEY'S OFFICE FOR THE CENTRAL DISTRICT OF CALIFORNIA

### Dated September 17, 2007

### Effective as of the Effective Date of the Plea Agreement
### Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C)
### in the Matter of United States v. William S. Lerach,
### Cr. 07-___-JFW

This Statute of Limitations Waiver Agreement ("Waiver") is entered into between William S. Lerach ("LERACH") and the United States Attorney's Office for the Central District of California ("the USAO"), in connection with a Plea Agreement Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) in the matter of United States v. William S. Lerach, Cr. No. 07-___-JFW (hereinafter "United States v. Lerach").

### RECITALS

WHEREAS, LERACH has entered into a Plea Agreement Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) ("the Binding Plea Agreement") to resolve a pending criminal investigation in the Central District of California;

WHEREAS, pursuant to the Binding Plea Agreement LERACH has agreed to plead guilty to a one-count Information charging him with conspiracy to obstruct justice and to make material false declarations under oath, in violation of Title 18, United States Code, Section 371 ("the Information");

WHEREAS, pursuant to the Binding Plea Agreement, LERACH has agreed to waive any affirmative defenses he may have, including



EXHIBIT C

any applicable statute of limitations, relating to the conduct charged in the Information;

NOW, THEREFORE, IT IS HEREBY AGREED as follows:

LERACH hereby waives any affirmative defense based on the statute of limitations or any claims relating to preindictment delay relating to the conduct charged in the Information;

This Waiver shall be effective upon the effective date of the Binding Plea Agreement; and

This Waiver shall be deemed void and shall no longer have any effect in the event that the Court presiding over the matter of United States v. Lerach refuses to accept the Binding Plea Agreement.

READ AND AGREED TO:

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA

_____          9·17·2007
DOUGLAS A. AXEL                          _____
RICHARD E. ROBINSON                       Date
ROBERT J. McGAHAN
Assistant United States Attorneys
Major Frauds Section

WILLIAM S. LERACH:


_____          _____
WILLIAM S. LERACH                         Date



_____          _____
JOHN W. KEKER                             Date
Keker & Van Nest
Counsel for William S. Lerach

any applicable statute of limitations, relating to the conduct charged in the Information;

NOW, THEREFORE, IT IS HEREBY AGREED as follows:

LERACH hereby waives any affirmative defense based on the statute of limitations or any claims relating to preindictment delay relating to the conduct charged in the Information;

This Waiver shall be effective upon the effective date of the Binding Plea Agreement; and

This Waiver shall be deemed void and shall no longer have any effect in the event that the Court presiding over the matter of United States v. Lerach refuses to accept the Binding Plea Agreement.

READ AND AGREED TO:

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA


DOUGLAS A. AXEL                                    Date
RICHARD E. ROBINSON
ROBERT J. McGAHAN
Assistant United States Attorneys
Major Frauds Section

WILLIAM S. LERACH:


WILLIAM S. LERACH                                  Date 9/17/07


JOHN W. KEKER                                      Date 9/17/07
Keker & Van Nest
Counsel for William S. Lerach

## CERTIFICATIONS

I, William S. Lerach, have read this Statute of Limitations Waiver carefully and discussed it with my counsel, John W. Keker of Keker & Van Nest. I understand the terms of this Statute of Limitations Waiver, and I voluntarily, knowingly, and willfully agree to all of those terms, after due consideration and without force, threat, or coercion. No promises, representations, or inducements, other than those set forth in this Statute of Limitations Waiver and the Binding Plea Agreement, have been made to cause me to enter into this Statute of Limitations Waiver. I am satisfied with the representation that Keker & Van Nest have provided to me in this matter.

_____     Date 9/17/07
WILLIAM S. LERACH

I am counsel for William S. Lerach in this matter. I have carefully reviewed and discussed the terms of this Statute of Limitations Waiver with Mr. Lerach. To the best of my knowledge, his decision to enter into this Agreement was informed and voluntary.

_____     9/17/07
JOHN W. KEKER    BxD    Date
Keker & Van Nest
Counsel for William S. Lerach

CERTIFICATE OF SERVICE

I, **Temeria Wylie,** declare:

That I am a citizen of the United States and resident or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, United States Courthouse, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of eighteen years, and am not a party to the above-entitled action;

That I am employed by the United States Attorney for the Central District of California who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of: **PLEA AGREEMENT FOR DEFENDANT WILLIAM S. LERACH PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 11 (c)(1)(C)**

service was:     **John Keker, Esq.**
                 **710 Sansome Street**
                 **San Francisco, California 94111**

[] Placed in a closed              [X] Placed in a sealed
envelope, for collection           envelope for collection and
and interoffice delivery           mailing via United States Mail,
addressed as follows:              addressed as follows:

[] By hand delivery                [] By e-mail as follows
addressed as follows:
**IN COURT**                       [] By facsimile as follows

[] By messenger as follows:        [] By federal express as follows:

This Certificate is executed on **September 18, 2007**, at Los Angeles, California.

I certify under penalty of perjury that the foregoing is true and correct.

**TEMERIA WYLIE**