GEORGE S. CARDONA
United States Attorney
THOMAS P. O'BRIEN
Assistant United States Attorney
Chief, Criminal Division
DOUGLAS A. AXEL (Cal. Bar #173814)
Deputy Chief, Major Frauds Section
RICHARD E. ROBINSON (Cal. Bar #090840)
ROBERT J. MCGAHAN (Cal. Bar #196568)
Assistant United States Attorneys
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-0713
    Facsimile:  (213) 894-6269
    E-mail: Richard.Robinson@usdoj.gov
            Doug.Axel@usdoj.gov
            Robert.McGahan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED

2007 SEP 20 PM 1:52

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

                    UNITED STATES DISTRICT COURT

                FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,      )    No. CR 05-587(C)-JFW
                               )
              Plaintiff,       )    **PLEA AGREEMENT FOR DEFENDANT**
                               )    **STEVEN G. SCHULMAN**
         v.                    )
                               )
STEVEN G. SCHULMAN,            )
                               )
              Defendant.       )
_____)

        1.    This constitutes the plea agreement between STEVEN G.

SCHULMAN ("defendant") and the United States Attorney's Office

for the Central District of California (the "USAO").  Except as

provided in paragraph 20(d) below, this agreement is limited to

the USAO and cannot bind any other federal, state, or local

prosecuting, administrative or regulatory authorities.

/ / /

/ / /

PLEA

2.    Defendant gives up the right to indictment by a grand jury and agrees to plead guilty to a one-count information in the form attached to this agreement or a substantially similar form.

NATURE OF THE OFFENSE

3.    In order for defendant to be guilty of count one of the information, which charges a violation of Title 18, United States Code, Section 1962(d), the following must be true:

(a)    The New York law firm partnership Milberg Weiss LLP, formerly known as "Milberg Weiss Bershad & Schulman LLP," "Milberg Weiss Bershad Hynes & Lerach LLP" and "Milberg Weiss Bershad Specthrie & Lerach" ("Milberg Weiss"), constituted an enterprise, that is, a partnership or group of individuals associated in fact;

(b)    Milberg Weiss was engaged in interstate commerce;

(c)    No later than 2003 and continuing through at least in or about 2005, there was an agreement between two or more persons employed by or associated with Milberg Weiss to conduct Milberg Weiss's affairs through a "pattern of racketeering activity" as defined by Title 18, United States Code, Section 1961(a) & (5), namely, multiple acts indictable under Title 18, United States Code, Section 1503, the last of which was to occur within ten years after the commission of a prior such act;

(d)    Defendant was employed by or associated with Milberg Weiss; and

(e)    Defendant joined in the illegal agreement referenced in subparagraph (c) above, knowing of its object and intending to help accomplish it.

2

1  4.    Defendant admits that defendant is, in fact, guilty of

2  this offense, as described in count one of the information.

3                              PENALTIES

4  5.    The statutory maximum sentence that the Court can

5  impose for a violation of Title 18, United States Code,

6  Section 1962(d), is twenty years imprisonment; a three-year

7  period of supervised release; a fine of $250,000 or twice the

8  gross gain or gross loss resulting from the offense, whichever is

9  greatest; and a mandatory special assessment of $100.

10  6.    Supervised release is a period of time following

11  imprisonment during which defendant will be subject to various

12  restrictions and requirements.  Defendant understands that if

13  defendant violates one or more of the conditions of any

14  supervised release imposed, defendant may be returned to prison

15  for all or part of the term of supervised release, which could

16  result in defendant serving a total term of imprisonment greater

17  than the statutory maximum stated above.

18  7.    Defendant also understands that, by pleading guilty,

19  defendant may be giving up valuable government benefits and

20  valuable civic rights, such as the right to vote, the right to

21  possess a firearm, the right to hold office, and the right to

22  serve on a jury.

23  8.    Defendant further understands that the conviction in

24  this case may subject defendant to various collateral

25  consequences, including revocation or suspension of his license

26  to practice law.  Defendant understands that unanticipated

27  collateral consequences will not serve as grounds to withdraw

28  defendant's plea of guilty.

3

1    9.   The parties agree and stipulate that restitution is not

2  warranted.

### FACTUAL BASIS

4    10.   Defendant and the USAO agree and stipulate to the

5  statement of facts set forth in Exhibit A hereto.  This statement

6  of facts includes facts sufficient to support a plea of guilty to

7  the charge described in this agreement, and to establish the

8  sentencing guideline factors set forth in paragraph 14.  It is

9  not meant to be a complete recitation of all facts relevant to

10  the underlying criminal conduct or all facts known to either

11  party that relate to that conduct.

### WAIVER OF CONSTITUTIONAL AND OTHER RIGHTS

13    11.   By pleading guilty, defendant gives up the following

14  rights:

15         (a)   The right to persist in a plea of not guilty.

16         (b)   The right to a speedy and public trial by jury.

17         (c)   The right to the assistance of legal counsel at

18  trial, including the right to have the Court appoint counsel for

19  defendant for the purpose of representation at trial.  (In this

20  regard, defendant understands that, despite his plea of guilty,

21  he retains the right to be represented by counsel -- and, if

22  necessary, to have the Court appoint counsel if defendant cannot

23  afford counsel -- at every other stage of the proceeding.)

24         (d)   The right to be presumed innocent and to have the

25  burden of proof placed on the government to prove defendant

26  guilty beyond a reasonable doubt.

27         (e)   The right to confront and cross-examine witnesses

28  against defendant.

(f)  The right, if defendant wished, to testify on defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

(g)  The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

12.  By pleading guilty, defendant gives up any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that could be filed on his behalf, including assertion of any defense based on statute of limitations or venue.

<u>SENTENCING FACTORS</u>

13.  Defendant understands that the Court is required to consider the factors set forth in 18 U.S.C. § 3553(a)(1)-(7), including the kinds of sentence and sentencing range established under the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") in determining defendant's sentence. Defendant further understands that the Sentencing Guidelines are advisory only, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court may be free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime of conviction.

///
///
///

14.    Defendant and the USAO agree and stipulate that pursuant to U.S.S.G. § 2E1.1 (a)(2), (the racketeering activity guidelines), the base and total offense level will be determined by applying the guidelines applicable to the underlying racketeering activity, here, the obstruction of justice guidelines of U.S.S.G. § 2J1.2(a).  Defendant and the USAO agree and stipulate to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 14 | [U.S.S.G. § 2J1.2(a)] |
| Specific Offense Characteristics | | |
| Substantial interference with admin. of justice: | +3 | [U.S.S.G. § 2J1.2(b)(2)] |
| Obstruction extensive in scope | +2 | [U.S.S.G. § 2J1.2(b)(3)] |
| Abuse of position of trust: | +2 | [U.S.S.G. § 3B1.3] |
| Acceptance of responsibility: | -3 | [U.S.S.G. § 3E1.1] |

Total offense level:          18

The USAO will agree to a downward adjustment for acceptance of responsibility only if the conditions set forth in paragraph 20(c) are met.  Subject to paragraphs 16 and 20(i), defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments or departures, relating to either the applicable Offense Level or the Criminal History Category, be imposed.  If, however, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant

6

prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section.  Defendant and the USAO, pursuant to the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7), further reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines, except that the USAO agrees not to argue for a sentence above the low end of the applicable guideline range.

15.    There is no agreement as to defendant's criminal history or Criminal History Category.

16.    The stipulations in this agreement do not bind either the United States Probation Office or the Court.  Both defendant and the USAO are free to:

(a)    Supplement the facts by supplying relevant information to the United States Probation Office and the Court;

(b)    Correct any and all factual misstatements relating to the calculation of the sentence; and

(c)    Argue on appeal and collateral review that the Court's Sentencing Guidelines calculations are not error, although each party agrees to maintain its view that the stipulated calculations in paragraph 14 are correct given the facts of this case.

DEFENDANT'S OBLIGATIONS

17.    Defendant agrees that he will:

(a)    Plead guilty as set forth in this agreement.

(b)    Not knowingly and willfully fail to abide by all

7

1   sentencing stipulations contained in this agreement.

2          (c)   Not knowingly and willfully fail to: (i) appear

3   for all court appearances, (ii) surrender as ordered for service

4   of sentence, (iii) obey all conditions of any bond, and (iv) obey

5   any other ongoing court order in this matter.

6          (d)   Not commit any crime; however, offenses which

7   would be excluded for sentencing purposes under U.S.S.G.

8   § 4A1.2(c) are not within the scope of this agreement.

9          (e)   Not knowingly and willfully fail to be truthful at

10  all times with Pretrial Services, the United States Probation

11  Office, and the Court.

12         (f)   Pay the applicable special assessment at or before

13  the time of sentencing.

14         (g)   At the time of sentencing, pay the fine imposed by

15  the Court, up to a maximum of $250,000.  In this regard,

16  defendant agrees that consideration of the factors set forth in

17  18 U.S.C. § 3553(a)(1), (a)(2)(A)-(C), and (a)(3), justifies a

18  fine amount of $250,000.

19     18.   Defendant further agrees to cooperate fully with the

20  USAO, the Internal Revenue Service, the Postal Inspection Service

21  and, as directed by the USAO, with any other federal law

22  enforcement agency.  As used in this agreement, "cooperation"

23  requires defendant to:

24         (a)   Respond truthfully and completely to all questions

25  that may be put to defendant, whether in interviews, before a

26  grand jury, or at any trial or other court proceeding.

27         (b)   Attend all interviews, meetings, grand jury

28  sessions, trials or other proceedings at which defendant's

8

1  presence is requested by the USAO or compelled by subpoena or

2  court order.

3          (c)  Produce voluntarily all documents, records, or

4  other tangible evidence relating to matters about which the USAO,

5  or its designee, inquires.

6          (d)  Authorize the disclosure and release by any third

7  parties of any and all documents, records, or other tangible

8  evidence relating to his cooperation.

9      19.  Defendant further agrees to forfeit to the United

10 States the amount of $1,850,000 (the "Forfeitable Currency"),

11 which defendant agrees shall be forfeited through administrative,

12 judicial criminal, or judicial civil forfeiture (at the sole

13 election of the United States), pursuant to 18 U.S.C. § 1963.

14 Defendant further agrees:

15         (a)  That the Forfeitable Currency constitutes or is

16 derived from net proceeds of the racketeering conspiracy in

17 violation of 18 U.S.C. § 1962(d) described in count one of the

18 information;

19         (b)  That said conspiracy resulted in net proceeds in

20 excess of $1,850,000;

21         (c)  That at the sole and absolute discretion of the

22 USAO, the USAO may elect to cause to be entered (i) a money

23 judgment of forfeiture in the amount of the Forfeitable Currency

24 and apply the Forfeitable Currency toward satisfaction of the

25 judgment and/or (ii) a preliminary and final orders of forfeiture

26 of the Forfeitable Currency at or before sentencing;

27         (d)  That the Forfeitable Currency shall be paid to the

28 United States by means of electronic funds transfers to the

Federal Reserve Bank of New York, 33 Liberty Street, New York,
New York, 10045, pursuant to instructions to be provided by the
USAO, in the following installments:

        (i) A payment in the amount of $1,000,000, within
seven days of the entry of defendant's guilty plea; and

        (ii) A payment in the amount of $850,000, on a
date that is at least 7 days prior to defendant's sentencing.
The government will hold the foregoing funds in the Seized Asset
Deposit Funds Account until the funds are applied to satisfy any
money judgment and/or are forfeited pursuant to any final order
of forfeiture described in paragraph 19(c) above;

        (e)   That defendant has clear and sole title to the
Forfeitable Currency he promises to deliver to the USAO;

        (f)   Not to contest the forfeiture of the Forfeitable
Currency in any administrative or judicial proceeding;

        (g)   To abandon, relinquish, and waive, and by
executing this agreement defendant hereby does abandon,
relinquish and waive, any and all rights in the Forfeitable
Currency in favor of the United States;

        (h)   To waive all constitutional and statutory
challenges to forfeiture of the Forfeitable Currency on any
grounds, including any statutes of limitations and the Excessive
Fines Clause;

        (i)   To take all steps as requested by the USAO that
are reasonable to pass to the United States clear title to the
Forfeitable Currency, including, without limitation, the
execution of a consent decree of forfeiture and the completing of
any other legal documents required for the transfer of title to

10

1 the United States, all such documents to be delivered to the

2 United States at the time of the electronic funds transfers

3 described in paragraph 19(d) above;

4          (j)  Not to assist any other person in any effort

5 falsely to contest the forfeiture of the Forfeitable Currency;

6          (k)  That forfeiture of the Forfeitable Currency shall

7 not be counted toward satisfaction of any special assessment,

8 fine, restitution, or any other penalty the Court may impose, nor

9 shall it be counted toward satisfaction of any taxes, penalties,

10 or interest owed to the Internal Revenue Service or any other

11 taxing authority; and

12          (l)  With respect to any forfeiture of the Forfeitable

13 Currency, to waive and relinquish, and by executing this

14 agreement defendant does hereby waive and relinquish, the

15 requirements of: (i) Federal Rules of Criminal Procedure 32.2 and

16 43(a) regarding notice of the forfeiture in the charging

17 instrument, announcement of the forfeiture at the  sentencing,

18 and incorporation of the forfeiture in the judgment; and (ii) 18

19 U.S.C. § 1963(m) regarding due diligence, transfer to third

20 party, placement beyond the jurisdiction of the court,

21 substantial diminution of value and commingling.

                         THE USAO'S OBLIGATIONS

22

23    20.  If defendant complies fully with all defendant's

24 obligations under this agreement, the USAO agrees:

25          (a)  To abide by all sentencing stipulations contained

26 in this agreement and to advocate to the Court that the only

27 applicable specific offense characteristics, adjustments, and

28 departures are those set forth in paragraph 14 above and,

                                  11

1    potentially, paragraph 20(i) below.

2              (b)  At the time of sentencing to move to dismiss the

3    underlying indictment against defendant only.

4              (c)  At the time of sentencing, provided that defendant

5    demonstrates an acceptance of responsibility for the offense with

6    which he is charged in the information up to and including the

7    time of sentencing, to recommend a three-level reduction in the

8    applicable Sentencing Guidelines offense level, pursuant to

9    U.S.S.G. § 3E1.1.

10             (d)  Not to further prosecute defendant for violations

11   of federal law occurring prior to the execution of this agreement

12   and arising out of: (i) the conduct charged in the first

13   superseding indictment in this case and/or described in Exhibit A

14   hereto; (ii) payments to or for the benefit of stockbrokers

15   and/or non-lawyers for serving as plaintiffs and/or for referring

16   other persons and/or entities to serve as plaintiffs;

17   (iii) requests to courts for reimbursement of fees and costs of a

18   damages expert witness and/or his associated entities based in

19   Princeton, New Jersey (collectively the "Princeton Expert");

20   (iv) the Princeton Expert's financial relationship with PNC Bank;

21   and (v) election, campaign, or other political contributions made

22   using only funds generated from the conduct described in (i) -

23   (iv) above.  The non-prosecution provisions of this paragraph are

24   binding on the USAO, the United States Attorney's Offices for

25   each of the other 93 judicial districts of the United States

26   ("the other USAOs"), and the United States Department of Justice

27   ("DOJ").  Defendant understands and agrees that the USAO, the

28   other USAOs, and DOJ are free to prosecute defendant for any

1  other unlawful past conduct not specifically exempted by this

2  agreement or any illegal conduct that occurs after the date of

3  this agreement.

4         (e)  Not to offer as evidence in its case-in-chief in

5  the above-captioned case or in any other prosecution that may be

6  brought against defendant by the USAO, the other USAOs, or DOJ

7  any statements made by defendant or documents, records, or

8  tangible evidence provided by defendant pursuant to the this

9  agreement or the proffer letter agreements between defendant and

10  the USAO signed by defendant on June 27, 2005 and September 5,

11  2007 (the "Letter Agreements").  Defendant, however, agrees that

12  the USAO, the other USAOs, and DOJ may use such statements,

13  documents, records, and tangible evidence: (1) to obtain and

14  pursue leads to other evidence, which evidence may be used for

15  any purpose, including prosecution of defendant; (2) to cross-

16  examine defendant should defendant testify, or to rebut any

17  evidence, argument or representations made by defendant or a

18  witness called by defendant in any trial, sentencing hearing, or

19  other court proceeding; and (3) in any prosecution of defendant

20  for false statement, obstruction of justice, or perjury.

21         (f)  Not to use any information provided by defendant

22  pursuant to this agreement or the Letter Agreements against

23  defendant at sentencing for the purpose of determining the

24  applicable Sentencing Guideline range, including the

25  appropriateness of an upward departure, and to recommend to the

26  Court that such information not be used in determining the

27  sentence to be imposed.  Defendant understands, however, that

28  information provided by defendant pursuant to this agreement or

13

the Letter Agreements will be disclosed to the Probation Office
and the Court, and that the Court may use this information for
the purposes set forth in U.S.S.G § 1B1.8(b) and for determining
the sentence to be imposed.

(g)   Not to pursue any additional civil or criminal
forfeiture claims against defendant.

(h)   If requested by defendant or his counsel, to bring
to the Court's attention the nature and extent of defendant's
cooperation, in connection with his sentencing.

(i)   If the USAO determines, in its exclusive judgment,
that defendant has both complied with his obligations under
paragraphs 17, 18, and 19 above and provided substantial
assistance to law enforcement in the prosecution or investigation
of another ("substantial assistance"), to move the Court pursuant
to U.S.S.G. § 5K1.1 to fix an offense level and corresponding
guideline range below that otherwise advised by the Sentencing
Guidelines, and to recommend a sentence no greater than the low-
end of this reduced range.

(j)   To recommend to the Court that a fine of $250,000
is reasonable and that no other fine amount should be imposed.

DEFENDANT'S UNDERSTANDINGS REGARDING SUBSTANTIAL ASSISTANCE

21.   Defendant understands the following:

(a)   Any knowingly false or misleading statement by
defendant will subject defendant to prosecution for false
statement, obstruction of justice, and perjury and will
constitute a breach by defendant of this agreement.

(b)   Nothing in this agreement requires the USAO or any
other prosecuting or law enforcement agency to accept any

14

cooperation or assistance that defendant may offer, or to use it
in any particular way.

(c)   Defendant cannot withdraw defendant's guilty plea
if the USAO does not make a motion pursuant to U.S.S.G. § 5K1.1
for a reduced sentence or if the USAO make such a motion and the
Court does not grant it or if the Court grants such a motion by
the USAO but elects to sentence above the reduced range.

(d)   At this time the USAO makes no agreement or
representation as to whether any cooperation that defendant has
provided or intends to provide constitutes substantial
assistance.  The decision whether defendant has provided
substantial assistance rests solely within the discretion of the
USAO.

(e)   The USAO's determination of whether defendant has
provided substantial assistance will not depend in any way on
whether the government prevails at any trial or court hearing in
which defendant testifies.

<u>BREACH OF AGREEMENT</u>

22.   If defendant, at any time after the execution of this
agreement knowingly and willfully violates or fails to perform
any of defendant's obligations under this agreement ("a breach"),
the USAO may declare this agreement breached.  For example,
defendant will have breached this agreement if defendant: fails
to enter a guilty plea pursuant to paragraph 17(a) of this
agreement; fails to cooperate pursuant to paragraph 18 of this
agreement; knowingly and willfully in an interview, before a
grand jury, or at trial, falsely accuses another person or entity
of criminal conduct or falsely minimizes his own role, or the

15

1 role of another, in criminal conduct; or fails to pay the

2 Forfeitable Currency pursuant to paragraph 19 of this agreement.

3 If the USAO declares the agreement breached and the Court finds

4 such a breach to have occurred, defendant will not be able to

5 withdraw defendant's guilty plea (if, at the time of the breach,

6 he had previously entered his guilty plea), the USAO will be

7 relieved of all its obligations under this agreement, and the

8 USAO, the other USAOs, and DOJ will no longer be bound by the

9 non-prosecution provisions of paragraph 20(d) above.

10     23.   Following a knowing and willful breach of this

11 agreement by defendant, should the USAO, the other USAOs, or DOJ

12 elect to pursue any charge that was dismissed or that it would

13 have been obligated to dismiss or that was not filed as a result

14 of this agreement, then:

15          (a)   Defendant agrees that any applicable statute of

16 limitations is tolled between the date of defendant's signing of

17 this agreement and the commencement of any such prosecution or

18 action.

19          (b)   Defendant gives up all defenses based on the

20 statute of limitations, any claim of pre-indictment delay, or any

21 speedy trial claim with respect to any such prosecution, except

22 to the extent that such defenses existed as of the date of

23 defendant's signing this agreement.

24          (c)   Defendant agrees that: (i) any statements made by

25 defendant, under oath, at the guilty plea hearing (if there was

26 such a hearing); (ii) the stipulated factual basis statement in

27 this agreement; and (iii) any evidence derived from such

28 statements, are admissible against defendant in any prosecution

16

1  of defendant by the USAO, the other USAOs, or DOJ, and defendant

2  shall assert no claim under the United States Constitution, any

3  statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of

4  the Federal Rules of Criminal Procedure, or any other federal

5  rule, that the statements or evidence derived from any statements

6  should be suppressed or are inadmissible.

7  <u>LIMITED MUTUAL WAIVER OF APPEAL AND COLLATERAL ATTACK</u>

8      24.  Defendant gives up the right to appeal any sentence

9  imposed by the Court and the manner in which the sentence is

10  determined, provided that (a) the sentence is within the

11  statutory maximum specified above and is constitutional, (b) the

12  Court in determining the applicable guideline range does not

13  depart upward in offense level or criminal history category and

14  determines that the total offense level is 18 or below, and

15  (c) the Court imposes a sentence within or below the range

16  corresponding to the determined total offense level and criminal

17  history category.  Defendant also gives up any right to bring a

18  post-conviction collateral attack on the conviction or sentence,

19  except a post-conviction collateral attack based on a claim of

20  ineffective assistance of counsel, a claim of newly discovered

21  evidence, or an explicitly retroactive change in the applicable

22  Sentencing Guidelines, sentencing statutes, or statutes of

23  conviction.  Notwithstanding the foregoing, defendant retains any

24  ability defendant has to appeal the amount or terms of any

25  restitution order; any fine imposed by the Court in excess of

26  $250,000; and the conditions of supervised release imposed by the

27  Court, with the exception of the following: conditions set forth

28  in General Orders 318 and 01-05 of this Court; the drug testing

17

1  conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(b)(7);

2  and the alcohol and drug use conditions authorized by 18 U.S.C.

3  § 3563(b)(7).

4      25.  The USAO gives up its right to appeal the sentence,

5  provided that (a) the Court in determining the applicable

6  guideline range does not depart downward in offense level or

7  criminal history category (except by a downward departure in

8  offense level pursuant to, and to the extent requested by the

9  USAO in a motion under U.S.S.G. § 5K1.1), (b) the Court

10 determines that the total offense level is 18 or above prior to

11 any departure under U.S.S.G. § 5K1.1, and (c) the Court imposes a

12 sentence within or above the range corresponding to the

13 determined offense level (after any downward departure under

14 U.S.S.G. § 5K1.1) and criminal history category.

15                    COURT NOT A PARTY

16     26.  The Court is not a party to this agreement and need not

17 accept any of the USAO's sentencing recommendations or the

18 parties' stipulations.  Even if the Court ignores any sentencing

19 recommendation, finds facts or reaches conclusions different from

20 any stipulation, and/or imposes any sentence up to the maximum

21 established by statute, defendant cannot, for that reason,

22 withdraw defendant's guilty plea, and defendant will remain bound

23 to fulfill all defendant's obligations under this agreement.  No

24 one -- not the prosecutor, defendant's attorney, or the Court --

25 can make a binding prediction or promise regarding the sentence

26 defendant will receive, except that it will be within the

27 statutory maximum.

28     27.  This agreement applies only to crimes committed by

18

1  defendant and has no effect on any proceedings against defendant
2  not expressly mentioned herein.

3                          SCOPE OF AGREEMENT

4      28.   Except as specified in paragraph 20(d) above, which
5  makes the non-prosecution provisions of this agreement binding on
6  the USAO, the other USAOs, and DOJ, this agreement is binding
7  only on defendant and the USAO, and does not bind any federal,
8  state, or local agency or prosecuting authority, or any federal,
9  state, or local administrative or regulatory authority.

10                      NO ADDITIONAL AGREEMENTS

11     29.   Except as set forth herein, there are no promises,
12 understandings or agreements between the USAO and defendant or
13 defendant's counsel.  This agreement supersedes and replaces the
14 Letter Agreements.  Nor may any additional agreement,
15 understanding or condition be entered into unless in a writing
16 signed by all parties or on the record in court.

17          PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

18     30.   The parties agree and stipulate that this agreement
19 will be considered part of the record of defendant's guilty plea
20 hearing as if this entire agreement had been read into the record
21 of such proceedings.

22     31.   This agreement is effective upon signature by
23 ///
24 ///
25 ///
26
27
28
                              19

1  defendant, defendant's attorney, and the United States Attorney.

2  AGREED AND ACCEPTED

3  UNITED STATES DEPARTMENT OF JUSTICE:

4

5  _____          9/20/2007
   GEORGE S. CARDONA                       Date
6  United States Attorney

7

8  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF CALIFORNIA:

9

10 _____          9/20/2007
   GEORGE S. CARDONA                       Date
11 United States Attorney

12 _____          9/19/07
13 DOUGLAS A. AXEL                         Date
   Assistant United States Attorney
14 Deputy Chief, Major Frauds Section

15 _____          9/19/07
16 RICHARD E. ROBINSON                     Date
   Assistant United States Attorney
17 Major Frauds Section

18 _____          9/17/07
19 ROBERT J. MCGAHAN                       Date
   Assistant United States Attorney
20 Major Frauds Section

21      I, STEVEN G. SCHULMAN, have read this agreement and

22 carefully discussed every part of it with my attorneys.  I

23 understand the terms of this agreement, and I voluntarily agree

24 to those terms.  My attorneys have advised me of my rights, of

25 possible defenses, of the Sentencing Guideline provisions, and of

26 the consequences of entering into this agreement.  No promises or

27 inducements have been made to me other than those contained in

28 this agreement.  No one has threatened or forced me in any way to

1  enter into this agreement.  Finally, I am satisfied with the

2  representation of my attorneys in this matter.

3

4  _____          9/19/07
   STEVEN G. SCHULMAN                        Date

5  Defendant

6      We are STEVEN G. SCHULMAN's attorneys.  We have carefully

7  discussed every part of this agreement with our client.  Further,

8  we have fully advised our client of his rights, of possible

9  defenses, of the sentencing factors set forth in 18 U.S.C.

10  § 3553(c), including the relevant Sentencing Guidelines

11  provisions, and of the consequences of entering into this

12  agreement.  To our knowledge, our client's decision to enter into

13  this agreement is an informed and voluntary one.

14

15  _____          9/19/07
   HERBERT J. STERN, ESQ.                    Date

16  ALAIN LIEBMAN, ESQ.

17  STERN & KILCULLEN LLP

18

19  _____          9/19/07
   GORDON GREENBERG, ESQ.                    Date

20  ADAM KAMENSTEIN, ESQ.
   HOYT SZE, ESQ.

21  McDERMOTT, WILL & EMERY LLP

22  Counsel for Defendant
   STEVEN G. SCHULMAN

23

24

25

26

27

28

                              21

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR 05-587(D)-JFW |
| Plaintiff, | ) ) ) | **S E C O N D** |
| v. | ) ) | **S U P E R S E D I N G** **I N F O R M A T I O N** |
| STEVEN G. SCHULMAN, | ) ) | [18 U.S.C. § 1962(d): |
| Defendant. | ) ) | Racketeering Conspiracy] |

The United States Attorney charges:

COUNT ONE

[18 U.S.C. § 1962]

[Racketeering Conspiracy]

1.    At all times relevant to this Information, the New York law firm partnership Milberg Weiss LLP, formerly known as "Milberg Weiss Bershad & Schulman LLP," "Milberg Weiss Bershad Hynes & Lerach LLP," and "Milberg Weiss Bershad Specthrie & Lerach," ("Milberg Weiss"), constituted an "enterprise" as defined by Title 18, United States Code, Section 1961(4), which was engaged in, and the activities of which affected, interstate commerce.

2.    Defendant STEVEN G. SCHULMAN ("SCHULMAN") and others were employed by and associated with the enterprise.

DAA:RER:RJM

1

    3.   SCHULMAN, together with other Milberg Weiss attorneys whom SCHULMAN supervised, worked with Howard Vogel ("Vogel") to prepare and file numerous class actions in which Vogel, his relatives, and entities that Vogel controlled served as named plaintiffs for Milberg Weiss.

    4.   By no later than early 2003, SCHULMAN knew that there was a secret payment arrangement pursuant to which Milberg Weiss paid Vogel a portion of the attorneys' fees that Milberg Weiss obtained in class actions in which Vogel served, or caused his relatives or entities that he controlled to serve, as named plaintiffs. By no later than March 2003 and continuing through 2005, SCHULMAN participated in negotiating with Vogel the amounts paid by Milberg Weiss to Vogel pursuant to the secret payment arrangement.

    5.   The individuals who agreed with SCHULMAN secretly to pay Vogel included Melvyn I. Weiss ("Weiss") and others.

    6.   At all relevant times herein, SCHULMAN, Weiss and others knew that their payment arrangement with Vogel had to be concealed from the federal and state courts presiding over their class actions. SCHULMAN, Weiss, and others also understood that, to the extent necessary, they would make or cause to be made false and/or misleading statements in documents filed in federal and state class actions (including complaints, motions, and under-oath certifications) and in under-oath testimony and other discovery in such actions in order to conceal the existence of their secret payment arrangement.

    7.   The purposes of the racketeering conspiracy included the following:

1

      a.   to provide Milberg Weiss and its partners,

2  including SCHULMAN, with a stable of persons who were ready,

3  willing, and able to serve, and whom the courts would likely

4  approve to serve, as named plaintiffs representing absent class

5  members in class actions;

6        b.   to enable Milberg Weiss and its partners,

7  including SCHULMAN, to file and maintain class actions;

8        c.   to assist Milberg Weiss and its partners,

9  including SCHULMAN, in securing lead counsel status in class

10  actions; and

11        d.   to enrich SCHULMAN and the other members and

12  associates of the enterprise.

13      8.   Beginning in or before 2003, and continuing through at

14  least in or about 2005, within the Central District of California

15  and elsewhere, defendant SCHULMAN, together with Weiss and other

16  persons known and unknown, being persons employed by and

17  associated with Milberg Weiss, which was engaged in, and the

18  activities of which affected, interstate and foreign commerce,

19  knowingly and intentionally conspired to violate 18 U.S.C.

20  § 1962(c), that is, to conduct and participate, directly and

21  indirectly, in the conduct of the affairs of Milberg Weiss

22  through a pattern of racketeering activity, as that term is

23  defined in Sections 1961(1) and 1961(5) of Title 18, United

24  States Code, consisting of multiple acts indictable under the

25  Title 18, United States Code, Section 1503 (Obstruction of

26  Justice).

27  / / /

28  / / /

9.     It was a further part of the conspiracy that SCHULMAN agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

GEORGE S. CARDONA
United States Attorney

THOMAS P. O'BRIEN
Assistant United States Attorney
Chief, Criminal Division

DOUGLAS A. AXEL
Assistant United States Attorney
Deputy Chief, Major Frauds Section

RICHARD E. ROBINSON
ROBERT J. McGAHAN
Assistant United States Attorneys
Major Frauds Section

4

**EXHIBIT A**

**STATEMENT OF FACTS IN SUPPORT OF PLEA AGREEMENT AND INFORMATION**

Defendant STEVEN G. SCHULMAN ("SCHULMAN") represents and admits that the following facts are true. Pseudonyms and capitalized terms herein have the same meaning as are ascribed to them in the first superseding indictment in United States v. Milberg Weiss Bershad & Schulman LLP, et al., CR 05-587(A)-JFW.

Introduction

1.   At all relevant times herein, Milberg Weiss LLP, formerly known as "Milberg Weiss & Bershad LLP," "Milberg Weiss Bershad & Schulman LLP," "Milberg Weiss Bershad Hynes & Lerach LLP," and "Milberg Weiss Bershad Specthrie & Lerach" (hereinafter "Milberg Weiss") was a law firm partnership with offices in New York and California. Milberg Weiss constituted an enterprise, that is, a partnership or group of individuals associated in fact.

2.   SCHULMAN joined Milberg Weiss in 1986; became a non-equity partner in Milberg Weiss on or about January 1, 1989; became an equity partner on or about January 1, 1991; and became a name partner in 2004.

3.   Milberg Weiss specialized in serving as plaintiff's counsel in class actions and shareholder derivative actions brought in federal and state courts throughout the United States, including in the Central District of California. Through its law practice, Milberg Weiss was engaged in, and its activities affected, interstate commerce.

4.   As counsel seeking to represent and representing class members or shareholders not before the courts, Milberg Weiss and its attorneys, including SCHULMAN, had fiduciary duties of loyalty, honesty, and trust to absent class members or shareholders.  Individuals who sought to be authorized by the courts to serve and who served as representative plaintiffs on behalf of absent class members or shareholders (hereinafter "named plaintiffs") likewise had fiduciary duties of loyalty, honesty, and trust to those absent class members or shareholders.

Paid Plaintiff Howard Vogel

5.   SCHULMAN, together with other Milberg Weiss attorneys whom SCHULMAN supervised, worked with Howard Vogel ("Vogel") to prepare and file numerous class actions in which Vogel, his relatives, and entities that Vogel controlled served as named plaintiffs for Milberg Weiss.

6.   By no later than early 2003, SCHULMAN knew that there was a secret payment arrangement pursuant to which Milberg Weiss paid Vogel a portion of the attorneys' fees that Milberg Weiss obtained in class actions in which Vogel served, or caused his relatives and entities that he controlled to serve, as named plaintiffs (the "Vogel Lawsuits").  By no later than March 2003 and continuing through 2005, SCHULMAN participated in negotiating with Vogel the amounts paid by Milberg Weiss to Vogel pursuant to the secret payment arrangement.

/ / /

2

7.    The Milberg Weiss partners who agreed with SCHULMAN secretly to pay Vogel in connection with the Vogel Lawsuits included Melvyn I. Weiss ("Weiss") and David J. Bershad ("Bershad") (collectively the "Conspiring Partners").  SCHULMAN also learned by no later than 2003 that Milberg Weiss Partner E had participated in Milberg Weiss's secret payment arrangement with Vogel.

8.    Entering into the secret payment arrangement with Vogel enabled SCHULMAN and the other Conspiring Partners to secure a reliable source of named plaintiffs in class actions that Milberg Weiss wanted to bring.  In addition, Vogel would investigate and propose to SCHULMAN and others potential class actions for Milberg Weiss to bring.  The payment arrangement generally enabled Milberg Weiss to file more class actions and to file them more quickly than would be possible absent such an arrangement.  Filing class actions more quickly than other competing plaintiffs' law firms enhanced Milberg Weiss's ability to obtain lead counsel status in cases.  Lead counsel generally obtained a larger share of the attorneys' fees awarded in a class action than other counsel.

9.    At all relevant times herein, SCHULMAN knew that it was improper for Milberg Weiss to secretly share attorneys' fees with Vogel, and that the payment arrangement could create material conflicts of interest between Vogel and the absent class members Vogel purported to represent.  SCHULMAN believed that discovery

3

in a Vogel Lawsuit of the secret payment arrangement with Vogel could have resulted in, among other things: (a) the disqualification of the named plaintiff from serving as a class representative in that action and other Vogel Lawsuits; and (b) the disqualification of Milberg Weiss, including the Conspiring Partners, from serving as class counsel in that action and other class actions.

10.  At all relevant times herein, SCHULMAN, the other Conspiring Partners, and Vogel knew that their payment arrangement had to be concealed from the federal and state courts presiding over their class actions.  SCHULMAN, the other Conspiring Partners, and Vogel also understood that, to the extent necessary, they would make or cause to be made false and/or misleading statements in documents filed in federal and state class actions (including complaints, motions, and under-oath certifications) and in under-oath testimony and other discovery in such actions in order to conceal the existence of their secret payment arrangement.

11.  SCHULMAN and the other Conspiring Partners also concealed the Milberg Weiss payments to Vogel by having Vogel select intermediary law firms and lawyers through whom Vogel would be paid, namely certain attorneys in Denver, Colorado and New York, New York, and their associated law firms ("Vogel Intermediary A" and "Vogel Intermediary B," respectively). Between 2003 and 2005, SCHULMAN caused Milberg Weiss checks to be

4

issued to Vogel Intermediary A and Vogel Intermediary B, as
directed by Vogel, with the understanding and intent that the
money would be distributed to or used for the benefit of Vogel.
SCHULMAN knew that these checks were falsely described in
transmittal letters by SCHULMAN as the "share" of attorneys' fees
owed by Milberg Weiss to Vogel Intermediary A and Vogel
Intermediary B for their "work, services, and joint
representation" of their clients in a class action; or as Vogel
Intermediary A's "share of referral fees" in connection with a
class action.  SCHULMAN knew that there had in fact been no work
or services rendered by Vogel Intermediary A or Vogel
Intermediary B, nor any client referral or joint client
representation by them in these class actions.

12.  By no later than 2003, SCHULMAN learned that in the
Oxford Health class action, Vogel's retirement plan served as
initial named plaintiff for Milberg Weiss pursuant to the secret
payment arrangement.  After Oxford Health settled in 2003 and
Milberg Weiss obtained approximately $40 million in attorneys'
fees, Vogel told SCHULMAN that Vogel wanted to receive his share
of the fees through Vogel Intermediary A.  SCHULMAN and Vogel
agreed that the amount of Vogel's fee share in Oxford Health
would be less than Vogel's usual 12% share of Milberg Weiss's
attorneys' fees in Vogel Lawsuits, given, among other reasons,
the size of the fee award in Oxford Health.

/ / /

5

13.  In or about September 2003, SCHULMAN discussed with
Weiss the firm's obligation to pay Vogel in connection with
Oxford Health, Vogel's willingness to negotiate a smaller
percentage of the fee award in Oxford Health, and Vogel's
designation of Vogel Intermediary A to serve as the attorney
through whom Milberg Weiss would make payment for Vogel's
benefit.  Weiss told SCHULMAN that given the pending criminal
investigation, Weiss did not want to negotiate the amount of
Vogel's payment over the telephone with Vogel Intermediary A.
Instead, Weiss wanted to have Vogel Intermediary A come to
New York and meet with Weiss face to face to discuss the amount
of payment.  Weiss instructed SCHULMAN to arrange a meeting with
Vogel Intermediary A for that purpose.  SCHULMAN contacted Vogel
Intermediary A and referred him to Weiss's personal assistant
since she scheduled Weiss's meetings.

14.  In or about November 2003, Weiss told SCHULMAN that
Weiss had met with Vogel Intermediary A and worked out Vogel's
share of Milberg Weiss's attorneys' fees in Oxford Health.  Weiss
told SCHULMAN the percentage share he had negotiated and
instructed SCHULMAN to pay Vogel Intermediary A accordingly.
After some further discussion with Vogel Intermediary A, SCHULMAN
caused a Milberg Weiss check in the amount of $1,100,000 to be
sent to Vogel Intermediary A on or about December 18, 2003, with
a cover letter from SCHULMAN that he knew falsely described the
check as reflecting Vogel Intermediary A's "share of court

6

ordered attorneys' fees in consideration of your work, services and joint representation of our clients in connection with" Oxford Health.

15.  No later than March 2003, and continuing through at least in or about 2005, there was an agreement between two or more persons employed by or associated with Milberg Weiss, including SCHULMAN, Weiss, and others, to conduct the affairs of Milberg Weiss through a "pattern of racketeering activity" as defined by Title 18, United States Code, Section 1961(a) & (5), namely, multiple acts indictable under Title 18, United States Code, Section 1503, the last of which was to occur within ten years after the commission of a prior such act.  Beginning no later than March 2003, SCHULMAN joined in this agreement, knowing of its object and intending to help accomplish it.

16.  Among the false and/or misleading statements SCHUMAN, the other Conspiring Partners, and Vogel made in order to conceal their secret payment arrangements were the following, made in connection with the following class actions:

a.   On or about April 9, 2003, SCHULMAN and others caused to be submitted to the court in the class action Howard Vogel v. CIT Group Inc., et al., 93-CV-2471-JES (United States District Court, Southern District of New York), a certification signed by Vogel under penalty of perjury, in which Vogel falsely stated, among other things, that he would "not accept any payment for serving as a representative party of behalf of a class beyond

7

plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court."

b.    On or about May 24, 2004, SCHULMAN and others caused to be submitted to the court in the class action Howard Vogel v. The Bisys Group Inc., et al., 04-CV-4048-LTS (United States District Court, Southern District of New York), a certification signed by Vogel under penalty of perjury, in which Vogel falsely stated, among other things, that he would "not accept any payment for serving as a representative party beyond my pro rata share of any recovery, except reasonable costs and expenses, such as lost wages and travel expenses, directly related to the class representation, as ordered or approved by the court pursuant to law."

c.    On or about July 26, 2004, SCHULMAN and others caused to be submitted to the Court in the class action Howard Vogel v. KVH Industries Inc., et al., 04-CV-320-ML (United States District Court, District of Rhode Island), a certification signed by Vogel under penalty of perjury, in which Vogel falsely stated, among other things, that he would "not accept any payment for serving as a representative party beyond my pro rata share of any recovery, except reasonable costs and expenses, such as lost wages and travel expenses, directly related to the class representation, as ordered or approved by the court pursuant to

8

law."

CERTIFICATE OF SERVICE

I, **STEPHANIE SWISHER,** declare:

That I am a citizen of the United States and resident or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, United States Courthouse, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of eighteen years, and am not a party to the above-entitled action;

That I am employed by the United States Attorney for the Central District of California who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of:

**PLEA AGREEMENT FOR DEFENDANT STEVEN G. SCHULMAN**

**service was:**

[ ] Placed in a closed envelope, for collection and interoffice delivery addressed as follows:

[ ] Placed in a sealed envelope for collection and mailing via United States Mail, addressed as follows:
**SEE ATTACHMENT**

[ ] By hand delivery in court as follows:

[ ] By facsimile as follows:

[ ] By messenger as follows:

[ ] By federal express as follows:

[] By electronic mail

This Certificate is executed on **September 20, 2007** at Los Angeles, California. I certify under penalty of perjury that the foregoing is true and correct.

_____
STEPHANIE SWISHER

**SERVICE LIST**

William W. Taylor III, Esq.
Blair G. Brown, Esq.
Zuckerman Spaeder LLP
1800 M Street N.W.
Washington D.C. 20036-5802
wwtaylor@zuckerman.com
bbrown@zuckerman.com

Bryan D. Daly, Esq.
Marc S. Harris, Esq.
Beck, DeCorso, Daly, Kreindler & Harris, P.C.
601 W Fifth Street, 12th Floor
Los Angeles, CA 90071-2025
bdaly@beckdecorso.com
mharris@beckdecorso.com

**Attorneys for defendant
Milberg Weiss Bershad & Schulman LLP**

Andrew M. Lawler, Esq.
Andrew M. Lawler P.C.
641 Lexington Avenue, 27th Floor
New York, NY 10022
alawler@amlpc.com

Christina Arguedas, Esq.
Ted Cassman, Esq.
Julie Salamon, Esq.
Arguedas, Cassman & Headley LLP
803 Hearst Ave
Berkeley, CA 94710
arguedas@achlaw.com
cassman@achlaw.com
salamon@achlaw.com

Robert D. Luskin, Esq.
Patton Boggs LLP
2550 M Street, NW
Washington D.C. 20037
rluskin@pattonboggs.com

**Attorney for defendant
David J. Bershad**

/ / /

/ / /

Herbert J. Stern, Esq.
Alain Leibman, Esq.
Stern & Kilcullen
75 Livingston Avenue
Roseland, NJ 07068
dpenna@sghlaw.com
aleibman@sgklaw.com

Gordon Greenberg, Esq.
Hoyt Sze, Esq.
McDermott Will & Emery
2049 Century Park East, 34th Floor
Los Angeles, CA 90067-3208
ggreenberg@mwe.com
hsze@mew.com

**Attorneys for defendant**
**Steven G. Schulman**

Thomas H. Bienert, Jr., Esq.
Louis P. Feuchtbaum, Esq.
Bienert & Krongold
115 Avenida Miramar
San Clemente, CA 92672
tom@bnklaw.com
louis@bnklaw.com

**Attorneys for defendant**
**Seymour M. Lazar**

David Wiechert, Esq.
107 Avenida Miramar #A
San Clemente, CA 92672
dwiechert@aol.com

**Attorney for defendant**
**Paul T. Selzer**