THOMAS P. O'BRIEN
United States Attorney
GEORGE S. CARDONA
Chief Assistant United States Attorney
DOUGLAS A. AXEL (Cal. Bar #173814)
Chief, Major Frauds Section
RICHARD E. ROBINSON (Cal. Bar #090840)
ROBERT J. MCGAHAN (Cal. Bar #196568)
Assistant United States Attorneys
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:  (213) 894-0713
     Facsimile:  (213) 894-6269
     E-mail: Richard.Robinson@usdoj.gov
             Doug.Axel@usdoj.gov
             Robert.McGahan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                UNITED STATES DISTRICT COURT

            FOR THE CENTRAL DISTRICT OF CALIFORNIA


UNITED STATES OF AMERICA,     )    No. CR 05-587(D)-JFW
                              )    No. CR 05-587(E)-JFW
               Plaintiff,     )
                              )    PLEA AGREEMENT FOR DEFENDANT
          v.                  )    SEYMOUR M. LAZAR
                              )
SEYMOUR M. LAZAR,             )
                              )
               Defendant.     )
_____)


     1.   This constitutes the plea agreement between SEYMOUR M.

LAZAR ("defendant"), on the one hand, and the United States

Attorney's Office for the Central District of California, on the

other hand (the "USAO") in the above-captioned case.  This

agreement is limited to the USAO and cannot bind any other

federal, state, or local prosecuting, administrative or

regulatory authorities.

//

1 PLEA

2    2.   Defendant agrees to plead guilty to counts fifteen and

3 seventeen of the second superseding indictment in this case.

4 Defendant also gives up the right to indictment by a grand jury

5 and agrees to plead guilty to a one-count information in the form

6 attached to this agreement or a substantially similar form.  The

7 information charges defendant with false declaration before a

8 court, in violation of Title 18, United States Code, Section

9 1623(a).

10 NATURE OF THE OFFENSES

11    3.   In order for defendant to be guilty of count fifteen of

12 the second superseding indictment, which charges a violation of

13 Title 26, United States Code, Section 7206(1), the following must

14 be true:

15        (a)   defendant made and signed a tax return that

16              defendant knew contained false information as to a

17              material matter;

18        (b)   the tax return contained a written description

19              that it was being signed subject to the penalties

20              of perjury; and

21        (c)   in filing the false tax return, defendant acted

22              willfully.

23    4.   In order for defendant to be guilty of count seventeen

24 of the second superseding indictment, which charges a violation

25 of Title 18, United States Code, Section 1503, the following must

26 be true:

27        (a)   there was a federal grand jury proceeding

28              involving allegations that the Milberg Weiss law firm

2

had paid secret and illegal kickbacks to named

plaintiffs in class actions, including to defendant;

(b)   defendant knew or had notice that the grand

jurying proceeding was pending; and

(c)   defendant corruptly influenced, obstructed, or

impeded, or endeavored to influence, obstruct, or

impede the due administration of justice in the grand

jury proceeding by directing his accountant and tax

return preparer to destroy certain documents relating

to defendant that defendant knew were or would become

relevant to the grand jury proceeding.

5.    In order for defendant to be guilty of count one of the

information, which charges a violation of Title 18, United States

Code, Section 1623(a), the following must be true:

(a)   defendant made a declaration under penalty of

perjury to a federal court;

(b)   defendant's declaration was false; and

(c)   defendant knew that his declaration was false and

material to proceedings before the court.

Defendant admits that defendant is, in fact, guilty of these

offenses, as described in counts fifteen and seventeen of the

second superseding indictment and count one of the information.

<u>PENALTIES</u>

6.    The statutory maximum sentence that the Court can

impose for a violation of Title 26, United States Code, Section

7206(1), is three-years imprisonment; a one-year period of

supervised release; a fine of $100,000; a mandatory special

assessment of $100.  The Court may order defendant to pay any

3

1   additional taxes, interest and penalties that defendant owes to

2   the United States.  Also, the Court must order defendant to pay

3   the costs of prosecution, which may be in addition to the

4   statutory maximum fine stated above.

5       7.   The statutory maximum sentence that the Court can

6   impose for a violation of Title 18, United States Code, Section

7   1503, is ten-years imprisonment; a three-year period of

8   supervised release; a fine of $250,000 or twice the gross gain or

9   gross loss resulting from the offense, whichever is greatest; and

10  a mandatory special assessment of $100.

11      8.   The statutory maximum sentence that the Court can

12  impose for a violation of Title 18, United States Code, Section

13  1623(a), is five-years imprisonment; a three-year period of

14  supervised release; a fine of $250,000 or twice the gross gain or

15  gross loss resulting from the offense, whichever is greatest; and

16  a mandatory special assessment of $100.

17      9.   Therefore, the total maximum sentence for all the

18  offenses to which defendant is pleading guilty is: eighteen-years

19  imprisonment; a three-year period of supervised release; a fine

20  of $600,000 or twice the gross gain or gross loss resulting from

21  defendant's Title 18, United States Code, Sections 1503 and

22  1623(a) offenses, whichever is greatest; mandatory special

23  assessments of $300; any additional taxes, interest and penalties

24  that defendant owes the United States; and the costs of

25  prosecution of the tax offense.

26      10.  Supervised release is a period of time following

27  imprisonment during which defendant will be subject to various

28  restrictions and requirements.  Defendant understands that if

1  defendant violates one or more of the conditions of any

2  supervised release imposed, defendant may be returned to prison

3  for all or part of the term of supervised release, which could

4  result in defendant serving a total term of imprisonment greater

5  than the statutory maximum stated above.

6      11.  Defendant also understands that, by pleading guilty,

7  defendant may be giving up valuable government benefits and

8  valuable civic rights, such as the right to vote, the right to

9  possess a firearm, the right to hold office, and the right to

10  serve on a jury.

11      12.  Defendant further understands that the conviction in

12  this case may subject defendant to various collateral

13  consequences, including but not limited to, suspension or

14  revocation of a professional license.  Defendant understands that

15  unanticipated collateral consequences will not serve as grounds

16  to withdraw defendant's plea of guilty.

17                  FACTUAL BASIS

18      13.  Defendant and the USAO agree and stipulate to the

19  statement of facts set forth in Exhibit A hereto.  This statement

20  of facts includes facts sufficient to support a plea of guilty to

21  the charges described in this agreement, and to establish the

22  Sentencing Guideline factors set forth in paragraphs 17 - 19.

23      WAIVER OF CONSTITUTIONAL AND OTHER RIGHTS

24      14.  By pleading guilty, defendant gives up the following

25  rights:

26            (a)  The right to persist in a plea of not guilty.

27            (b)  The right to a speedy and public trial by jury.

28            (c)  The right to the assistance of legal counsel at

1  trial, including the right to have the Court appoint counsel for

2  defendant for the purpose of representation at trial.  (In this

3  regard, defendant understands that, despite his plea of guilty,

4  he retains the right to be represented by counsel - and, if

5  necessary, to have the Court appoint counsel if defendant cannot

6  afford counsel - at every other stage of the proceedings.)

7       (d)  The right to be presumed innocent and to have the

8  burden of proof placed on the government to prove defendant

9  guilty beyond a reasonable doubt.

10      (e)  The right to confront and cross-examine witnesses

11  against defendant.

12      (f)  The right, if defendant wished, to testify on

13  defendant's own behalf and present evidence in opposition to the

14  charges, including the right to call witnesses and to subpoena

15  those witnesses to testify.

16      (g)  The right not to be compelled to testify, and, if

17  defendant chose not to testify or present evidence, to have that

18  choice not be used against defendant.

19  15.  By pleading guilty, defendant also gives up any and all

20  rights to pursue any affirmative defenses, Fourth Amendment or

21  Fifth Amendment claims, and other pretrial motions that could be

22  filed on his behalf, including assertion of any statute of

23  limitations defense or objection to venue in the Central District

24  of California.

25                    SENTENCING FACTORS

26  16.  Defendant understands that the Court is required to

27  consider the United States Sentencing Guidelines ("U.S.S.G." or

28  "Sentencing Guidelines") among other factors in determining

1  defendant's sentence.  Defendant understands that the Sentencing

2  Guidelines are only advisory, and that after considering the

3  Sentencing Guidelines, the Court may be free to exercise its

4  discretion to impose any reasonable sentence up to the maximum

5  set by statute for the crime of conviction.

6      17.  Defendant and the USAO agree that the Court should

7  consider the November 2001 Guidelines Manual because this version

8  was in effect at the time defendant committed the most recent

9  offense to which he is pleading guilty, i.e., count seventeen of

10  the second superseding indictment which charges defendant with

11  obstruction of justice in or about February 2002.  Defendant

12  agrees that consideration of the November 2001 Guidelines Manual

13  does not violate the ex post facto clause, and defendant waives

14  any claim that any other Guidelines Manual version should be

15  considered instead of, or in addition to, the November 2001

16  Guidelines Manual.

17      18.  With respect to determining defendant's Sentencing

18  Guidelines offense level based on "tax loss," defendant and the

19  USAO stipulate and agree as follows:

20          (a)  Defendant's offense conduct encompasses his

21  subscription to a false 2000 personal income return that failed

22  to report gross income of $175,000 to defendant arising from

23  payments in that sum made during year 2000 by the law firm of

24  Milberg Weiss & Bershad LLP, then known as Milberg Weiss Bershad

25  Hynes & Lerach ("Milberg Weiss"), at defendant's direction and

26  for defendant's financial benefit.

27          (b)  Defendant also subscribed to false 1999 and 2001

28  personal income tax returns that failed to report gross income

7

totaling $258,000 to defendant arising from payments made during 1999 and 2001 by Milberg Weiss, at defendant's direction and for defendant's financial benefit.  The parties agree that these payments by Milberg Weiss also constitute unreported income of defendant, and that defendant's conduct with respect to these false tax returns is relevant conduct for purposes of determining defendant's sentence, pursuant to U.S.S.G. § 1B1.3.

(c)   The parties further agree that, only for the purpose of computing the Offense Level under the Sentencing Guidelines, the total tax loss with respect to unreported income to defendant arising from the payments made by Milberg Weiss, at defendant's direction and for defendant's financial benefit, during the years 1999 through 2001, stipulated to be more than $80,000 and less than $200,000.

19.   Defendant Seymour M. Lazar and the USAO agree and stipulate to the following applicable sentencing guideline factors (based on the November 2001 Guidelines Manual):

With respect to defendant's violation of 18 U.S.C. § 1623(a):

| | | |
|---|---|---|
| Base Offense Level: | 12 | [U.S.S.G. § 2J1.3(a)] |
| Specific Offense Characteristics | | |
| Substantial interference with admin. of justice: | +3 | [U.S.S.G. § 2J1.3(b)(2)] |
| Abuse of position of trust: | +2 | [U.S.S.G. § 3B1.3] |
| Offense Level: | <u>17</u> | |

//

//

//

1    With respect to defendant's violation of 18 U.S.C.

2  § 1503:

3    Base Offense Level:              12    [U.S.S.G. § 2J1.2]

4    Offense Level:                   <u>12</u>

5    With respect to defendant's violation of 26 U.S.C.

6  § 7206(1):

7    Base Offense Level:

8    Tax Loss more than
   $80,000 and less than
9    $200,000:                        16    [U.S.S.G. § 2T1.1(a)]

10   Specific Offense
   Characteristics

11

12   Failure to report more
   than $10,000 of criminal
   activity income:                +2    [U.S.S.G. § 2T1.1(b)(1)]

13

14   Offense Level:                   <u>18</u>

   Combined Offense Level:         +3    [U.S.S.G. § 3D1.4]

15

16   Total Combined Offense
   Level:                           <u>21</u>

17   Acceptance of
   responsibility:                 -3    [U.S.S.G. § 3E1.1]

18

19   Total Adjusted Offense
   Level:                           <u>18</u>

20   The USAO will agree to a downward adjustment for acceptance

21 of responsibility only if the conditions set forth in paragraph

22 26(c) below are met.  Subject to paragraph 26(h) below, defendant

23 and the USAO agree not to seek, argue, or suggest in any way,

24 either orally or in writing, that any other specific offense

25 characteristics, adjustments or departures, from either the

26 applicable Offense Level or Criminal History Category, be

27 imposed.  If, however, after signing this agreement but prior to

28 sentencing, defendant were to commit an act, or the USAO were to

discover a previously undiscovered act committed by defendant
prior to signing this agreement, which act, in the judgment of
the USAO, constituted obstruction of justice within the meaning
of U.S.S.G. § 3C1.1, the USAO would be free to seek the
enhancement set forth in that section.

20. There is no agreement as to defendant's criminal
history or criminal history category.

21. The stipulations in this agreement do not bind either
the United States Probation Office or the Court. Both defendant
and the USAO are free to:

(a) Supplement the facts by supplying relevant
information to the United States Probation Office and the Court;

(b) Correct any and all factual misstatements relating
to the calculation of the sentence; and

(c) Argue on appeal and collateral review that the
Court's Sentencing Guidelines calculations are not error,
although each party agrees to maintain its view that the
calculations in paragraphs 17 - 19 and 26(h) of this agreement
are consistent with the facts of this case.

<u>DEFENDANT'S OBLIGATIONS</u>

22. Defendant agrees that he will:

(a) Plead guilty as set forth in this agreement.

(b) Not knowingly and willfully fail to abide by all
sentencing stipulations contained in this agreement.

(c) Not knowingly and willfully fail to: (i) appear as
ordered for all court appearances, (ii) surrender as ordered for
service of sentence, (iii) obey all conditions of any bond, and
(iv) obey any other ongoing court order in this matter.

1    (d)  Not commit any crime; however, offenses which

2    would be excluded for sentencing purposes under U.S.S.G.

3    § 4A1.2(c) are not within the scope of this agreement.

4    (e)  Not knowingly and willfully fail to be truthful at

5    all times with Pretrial Services, the United States Probation

6    Office, and the Court.

7    (f)  Pay the applicable special assessment of $300 at

8    or before the time of sentencing.

9    ~~(g)  Pay a fine of $600,000 within the time period~~

10   ordered by the Court, after defendant's sentencing.

11   23.  Defendant further agrees to:

12   (a)  Produce voluntarily all documents and records in

13   his possession, custody or control that are responsive to the

14   subpoena served on defendant dated January 8, 2002.

15   (b)  Authorize the disclosure and release by Milberg

16   Weiss of any and all client papers and property, documents,

17   records, or other tangible evidence relating to Milberg Weiss'

18   representation of defendant and/or any payments made by Milberg

19   Weiss' at defendant's direction or for defendant's benefit.  To

20   facilitate the foregoing, defendant will sign and provide to the

21   USAO a written waiver of any attorney client confidential

22   communications privilege, work product protection, or other

23   privilege in the form of Exhibit B attached hereto.

24   (c)  Authorize the disclosure and release by the law

25   firm of Best Best & Krieger ("BBK Firm") of any and all client

26   papers and property, documents, records, or other tangible

27   evidence relating to defendant's relationship with Milberg Weiss,

28   including any financial transactions involving the BBK Firm and

Milberg Weiss.  To facilitate the foregoing, defendant will sign
and provide to the USAO a written waiver of any attorney client
confidential communications privilege, work product protection,
or other privilege in the form of Exhibit C attached hereto.

　　　24.  Defendant further agrees to pay $1,500,000 to the
United States in two installments, which defendant agrees shall
be civilly forfeited, administratively or judicially (at the sole
election of the United States), pursuant to 18 U.S.C.
§ 981(a)(1)(A) (the "Forfeitable Currency").  Defendant further
agrees:

　　　(a)  To pay the first installment of Forfeitable
Currency, in the sum of $500,000, to the United States by
electronic funds transfer within 10 days after the date
defendant's plea is accepted by the court.  Said transfer of the
funds shall be made to the Federal Reserve Bank of New York, 33
Liberty Street, New York, New York 10045, pursuant to
instructions to be provided by the USAO;

　　　(b)  To pay the second installment of the Forfeitable
Currency, in the sum of $1,000,000, to the United States by
electronic funds transfer at least one business day prior to the
date of defendant's sentencing, pursuant to instructions to be
provided by the USAO;

　　　(c)  That the Forfeitable Currency was involved in
transactions or attempted transactions in violation of 18 U.S.C.
§ 1956, or is property traceable to such property;

　　　(d)  Not to file a claim or statement of interest to
contest the forfeiture of the Forfeitable Currency in any
administrative or judicial proceeding;

     (e)  To waive all constitutional and statutory challenges to forfeiture of the Forfeitable Currency on any grounds, including that the forfeiture constitutes an excessive fine or punishment;

     (f)  To deliver, within 10 business days of executing this agreement, a notarized release, in the form of Exhibit D hereto, executed by defendant's wife, Alyce Lazar, of all her rights to contest the forfeiture of the Forfeitable Currency, and to take all other steps as requested by the United States that are necessary to pass to the United States clear title to the Forfeitable Currency, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States;

     (g)  Not to assist any other person in any effort falsely to contest the forfeiture of the Forfeitable Currency;

     (h)  The government will hold the Forfeitable Currency in the Seized Asset Deposit Funds Account until the funds are applied to satisfy a forfeiture order or judgment obtained pursuant to this paragraph 24, which order or judgment the USAO shall not caused to be entered until on or after the date of defendant's sentencing; and

     (i)  That forfeiture of the Forfeitable Currency shall not be counted toward satisfaction of any special assessment, fine, or any other penalty the Court may impose, nor shall it be counted toward satisfaction of any taxes, penalties, or interest owed to the Internal Revenue Service or any other taxing authority.

25. Defendant agrees to cooperate with the Internal Revenue Service ("IRS") in the determination of defendant's tax liability for his personal returns for tax years 1999, 2000, and 2001. Defendant agrees:

(a) That defendant will file, prior to the time of sentencing, amended returns for the years 1999, 2000, and 2001 correctly reporting unreported income and correcting improper deductions and credits, and will, if requested to do so by the IRS, provide the IRS with information regarding the tax years covered by the returns, and will pay by the time of sentencing all additional taxes, and will pay promptly all penalties and interest assessed by the IRS to be owing as a result of any computational error(s);

(b) That nothing in this agreement forecloses or limits the ability of the IRS to examine and make adjustments to defendant's personal returns after they are filed;

(c) That defendant will not, after filing the returns, file any claim for refund of taxes, penalties, or interest for amounts attributable to the returns filed in connection with this agreement;

(d) That defendant is liable for the fraud penalty imposed, if any, by the Internal Revenue Code, 26 U.S.C. § 6663, as against the total amount of tax underpaid on the income underreported on his personal income tax returns for years 1999, 2000, and 2001; and

(e) To give up any and all objections that could be asserted to the Examination Division of the IRS receiving materials or information obtained during the criminal

14

1  investigation of this matter, including materials and information

2  obtained through grand jury subpoenas.

3  <u>THE USAO'S OBLIGATIONS</u>

4     26.  If defendant complies fully with all defendant's

5  obligations under this agreement, the USAO agrees:

6       (a)  To abide by all sentencing stipulations contained

7  in this agreement;

8       (b)  At the time of sentencing to move the Court to

9  dismiss the underlying second superseding indictment, as against

10  defendant only.  Defendant understands, however, that at the time

11  of sentencing the Court may consider the dismissed counts in

12  determining the applicable Sentencing Guidelines range, where the

13  sentence should fall within that range, and the determination of

14  the sentence to be imposed after consideration of the Sentencing

15  Guidelines and all other relevant facts;

16       (c)  At the time of sentencing, provided that

17  defendant demonstrates an acceptance of responsibility for the

18  offenses up to and including the time of sentencing, to recommend

19  a two-level reduction in the applicable Sentencing Guideline

20  offense level, pursuant to U.S.S.G. § 3E1.1, and to recommend an

21  additional one-level reduction if available under that section;

22       (d)  Not to offer as evidence in its case-in-chief in

23  the above-captioned case or in any other prosecution that may be

24  brought against defendant by the USAO, any statements made by

25  defendant or documents, records, or tangible evidence provided by

26  defendant to the USAO pursuant to the letter agreement between

27  defendant and the USAO dated February 1, 2002 (the "Letter

28  Agreement").  Defendant, however, agrees that the USAO may use

15

1  such statements, documents, records, and tangible evidence: (i)

2  to obtain and pursue leads to other evidence, which evidence may

3  be used for any purpose, including any prosecution of defendant;

4  (ii) to cross-examine defendant should defendant testify, or to

5  rebut any evidence, argument or representations made by defendant

6  or a witness called by defendant in any trial, sentencing

7  hearing, or other court proceeding; (iii) in any prosecution of

8  defendant for false statement, obstruction of justice, or

9  perjury; and (iv) at defendant's sentencing.   Defendant

10 understands that information provided by defendant pursuant to

11 this agreement will be disclosed to the Probation Office and the

12 Court;

13         (e)   Not to further prosecute defendant for violations

14 of federal law arising out of defendant's conduct alleged in the

15 second superseding indictment or described in the stipulated

16 facts set forth in Exhibit A hereto;

17         (f)   Defendant understands and agrees that the USAO is

18 free to prosecute defendant for any other unlawful past conduct

19 not specifically exempted by this agreement or any illegal

20 conduct that occurs after the date of this agreement;

21         (g)   If requested by the defendant or his counsel, to

22 bring to the Court's attention the nature and extent of

23 defendant's cooperation, in connection with his sentencing; and

24         (h)   To recommend that: (i) the Court make a 8-level

25 variance from defendant's adjusted offense level of 18, thereby

26 resulting in an offense level 10, in view of defendant's poor

27 health condition and advanced age; (ii) defendant be sentenced at

28 the low-end of his Sentencing Guideline range; and (iii) that

1   Court impose a sentence of probation that defendant may serve in

2   home detention.

3                             <u>BREACH OF AGREEMENT</u>

4       27.   If defendant, at any time after the execution of this

5   agreement knowingly and willfully violates or fails to perform

6   any of defendant's obligations under this agreement ("a breach"),

7   the USAO may declare this agreement breached.  For example,

8   defendant will have breached this agreement if defendant: fails

9   to enter his guilty pleas pursuant to paragraph 22(a) of this

10   agreement; fails to produce documents and records pursuant to

11   paragraph 23(a) of this agreement; fails to authorize the

12   disclosures and releases by Milberg Weiss and BBK of items

13   pursuant to paragraphs 23(b) and 23(c) of this agreement; fails

14   to pay the Forfeitable Currency pursuant to paragraph 24 of this

15   agreement; or fails to cooperate with the IRS, including filing

16   amended returns, pursuant to paragraph 25 of this agreement.  If

17   the USAO declares the agreement breached and the Court finds such

18   a breach to have occurred, defendant will not be able to withdraw

19   defendant's guilty pleas (if, at the time of the breach, he had

20   previously entered his guilty pleas), the USAO will be relieved

21   of all its obligations under this agreement.

22       28.   Following a knowing and willful breach of this

23   agreement by defendant, should the USAO elect to pursue any

24   charge that was dismissed or that it would have been obligated to

25   dismiss or that was not filed as a result of this agreement,

26   then:

27         (a)  Defendant agrees that any applicable statute of

28   limitations is tolled between the date of defendant's signing of

1 this agreement and the commencement of any such prosecution or
2 action.

3       (b)  Defendant gives up all defenses based on the
4 statute of limitations, any claim of pre-indictment delay, or any
5 speedy trial claim with respect to any such prosecution, except
6 to the extent that such defenses existed as of the date of
7 defendant's signing this agreement.

8       (c)  Defendant agrees that: (i) any statements made by
9 defendant, under oath, at the guilty plea hearing (if there was
10 such a hearing); (ii) the stipulated factual basis statement in
11 this agreement; and (iii) any evidence derived from such
12 statements, are admissible against defendant in any prosecution
13 of defendant by the USAO and defendant shall assert no claim
14 under the United States Constitution, any statute, Rule 410 of
15 the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of
16 Criminal Procedure, or any other federal rule, that the
17 statements or evidence derived from any statements should be
18 suppressed or are inadmissible.

19         <u>LIMITED MUTUAL WAIVER OF APPEAL AND COLLATERAL ATTACK</u>

20    29.  Defendant gives up the right to appeal any sentence
21 imposed by the Court and the manner in which the sentence is
22 determined, provided that (a) the sentence is within the
23 statutory maximum specified above and is constitutional, (b) the
24 Court in determining the applicable guideline range does not
25 depart upward in offense level or criminal history category,
26 determines that the total offense level is 10 or below, and (c)
27 the Court imposes a sentence within or below the range
28 corresponding to the determined total offense level and criminal

1  history category.  Defendant also gives up any right to bring a

2  post-conviction collateral attack on the conviction or sentence,

3  except a post-conviction collateral attack based on a claim of

4  ineffective assistance of counsel, a claim of newly discovered

5  evidence, or an explicitly retroactive change in the applicable

6  Sentencing Guidelines, sentencing statutes, or statutes of

7  conviction.  Notwithstanding the foregoing, defendant retains the

8  ability to appeal the conditions of supervised release imposed by

9  the Court, with the exception of the following: standard

10  conditions set forth in district court General Orders 318 and 01-

11  05; and the drug testing conditions mandated by 18 U.S.C.

12  §§ 3563(a)(5) and 3583(b)(7).

13      30.  The USAO gives up its right to appeal the Court's

14  Sentencing Guidelines calculations, provided that (a) the Court

15  in determining the applicable guideline range does not depart

16  downward in offense level or criminal history category, (b) the

17  Court determines that the total offense level is 10 or above, and

18  (c) the Court imposes a sentence within or above the range

19  corresponding to the determined offense level and criminal

20  history category.

21                      <u>COURT NOT A PARTY</u>

22      31.  The Court is not a party to this agreement and need not

23  accept any of the USAO's sentencing recommendations or the

24  parties' stipulations.  Even if the Court ignores any sentencing

25  recommendation, finds facts or reaches conclusions different from

26  any stipulation, and/or imposes any sentence up to the maximum

27  established by statute, defendant cannot, for that reason,

28  withdraw defendant's guilty plea, and defendant will remain bound

19

to fulfill all defendant's obligations under this agreement.  No one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

32.  This agreement applies only to crimes committed by defendant, has no effect on any proceedings against defendant not expressly mentioned herein, and shall not preclude any past, present, or future forfeiture actions.

<u>NO ADDITIONAL AGREEMENTS</u>

33.  Except as set forth herein, there are no promises, understandings or agreements between the USAO and defendant or defendant's counsel.  This agreement supersedes and replaces the Letter Agreement.  Nor may any additional agreement, understanding or condition be entered into unless in a writing signed by all parties or on the record in court.

<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

34.  The parties agree and stipulate that this agreement will be considered part of the record of defendant's guilty plea hearing as if this entire agreement had been read into the record of such proceedings.

This agreement is effective upon signature by defendant and

//
//
//

1 an Assistant United States Attorney.

2 AGREED AND ACCEPTED

3 THOMAS P. O'BRIEN
United States Attorney

4 GEORGE S. CARDONA
Chief Assistant United States Attorney

5

6 _____     10/16/07
                                      Date

7 DOUGLAS A. AXEL
Assistant United States Attorney
Chief, Major Frauds Section

8

9 _____     10/16/07
                                      Date

10 RICHARD E. ROBINSON
Assistant United States Attorney
Major Frauds Section

11

12 _____     10·17·07
                                      Date

13 ROBERT J. MCGAHAN
Assistant United States Attorney
Major Frauds Section

14

15    I have read this agreement and carefully discussed every

16 part of it with my attorney.  I understand the terms of this

17 agreement, and I voluntarily agree to those terms.  My attorney

18 has advised me of my rights, of possible defenses, of the

19 Sentencing Guideline provisions, and of the consequences of

20 entering into this agreement.  No promises or inducements have

21 been made to me other than those contained in this agreement.  No

22 one has threatened or forced me in any way to enter into this

23 agreement.  Finally, I am satisfied with the representation of my

24 //

25 //

26 //

27

28

1  attorney in this matter.

2

3  _____    __10/12/07__
   SEYMOUR M. LAZAR                     Date

4  Defendant

5       I am SEYMOUR M. LAZAR's attorney.  I have carefully

6  discussed every part of this agreement with our client.  Further,

7  I have fully advised our client of his rights, of possible

8  defenses, of the sentencing factors set forth in 18 U.S.C.

9  § 3553(c), including the relevant Sentencing Guidelines

10 provisions, and of the consequences of entering into this

11 agreement.  To my knowledge, my client's decision to enter into

12 this agreement is an informed and voluntary one.

13

14 _____    __10/12/2007__
   THOMAS BIENERT / LOUIS FEUCHTBAUM    Date

15 Bienert & Miller
   Counsel for Defendant

16 SEYMOUR M. LAZAR

17

18

19

20

21

22

23

24

25

26

27

28

                          22

## EXHIBIT A

## STATEMENT OF FACTS IN SUPPORT OF PLEA AGREEMENT

### Background

Defendant SEYMOUR M. LAZAR ("LAZAR") represents and admits that the following facts are true:

1.    During the relevant times, LAZAR resided in Palm Springs, California.  LAZAR owned and controlled substantial real property throughout Riverside County, California, and elsewhere, and was an active purchaser and seller of publicly traded stocks.

2.    During the relevant times, Milberg Weiss Bershad Hynes & Lerach LLP, formerly known as "Milberg Weiss Bershad Specthrie & Lerach," and "Milberg Weiss Bershad & Specthrie" ("Milberg Weiss"), was headquartered in New York, New York, and specialized in representing plaintiffs in securities class action and shareholder derivative lawsuits.

3.    Between in or about 1976 and 2004, LAZAR and certain of his family members served as plaintiffs in numerous class actions and shareholder derivative actions brought and caused to be brought by Milberg Weiss (the "Lazar Lawsuits").  Milberg Weiss represented LAZAR and his family members in the Lazar Lawsuits.

### Secret Payment Arrangement

4.    Beginning in 1979 and continuing to at least 2002, LAZAR and Milberg Weiss had an established arrangement and practice that Milberg Weiss would pay defendant LAZAR a portion of the attorneys' fees that Milberg Weiss obtained in the Lazar

Lawsuits.  The payment arrangement was initially discussed and agreed to between LAZAR and Milberg Weiss senior partner Melvyn I. Weiss ("Weiss") or senior partner David J. Bershad ("Bershad").  The amounts of Milberg Weiss's payments for Lazar Lawsuits were discussed by LAZAR and Bershad and generally constituted 10% of Milberg Weiss's attorneys' fees obtained in those cases.  It was further agreed that instead of Milberg Weiss paying LAZAR directly, LAZAR would select intermediary lawyers and law firms through whom Milberg Weiss would pay LAZAR his share of Milberg Weiss's attorneys' fees in the Lazar Lawsuits (the "Intermediary Lawyers").

5.    The Intermediary Lawyers selected by LAZAR included the "Palm Springs Law Firm" (as defined in the second superseding indictment), and various other attorneys and law firms located in Santa Ana and Los Angeles, California, and elsewhere.

6.    After an Intermediary Lawyer received a payment from Milberg Weiss, LAZAR would direct the Lazar Intermediary Lawyer to use or apply the payment for the benefit of LAZAR including, among other things, (a) to satisfy legal fees or expenses that LAZAR owed or would owe the Lazar Intermediary Lawyer; and (b) to pay third parties to whom LAZAR owed money.

7.    The payments of LAZAR'S fee share by Milberg Weiss to the Palm Springs Law Firm and other Intermediary Lawyers were falsely characterized in accompanying Milberg Weiss cover letters

2

as, among other things, for their "referral" of LAZAR or for
their "work and responsibility assumed as counsel" in the Lazar
Lawsuits.   Nonetheless, LAZAR understood that such payments
represented monies that Milberg Weiss owed to LAZAR and were made
to satisfy Milberg Weiss's payment obligation to LAZAR.

8.    Milberg Weiss's payments pursuant to the arrangement
with LAZAR included the following checks issued by Milberg Weiss
to the Palm Springs Law Firm on or about the following date:

    a.    June 25, 1999: $50,000

    b.    December 7, 1999: $75,000

    c.    May 26, 2000: $125,000

    d.    December 28, 2000: $50,000

    e.    July 9, 2001: $133,000

LAZAR understood that all of the Milberg Weiss payments
identified above were in fact payments from Milberg Weiss to
LAZAR, pursuant to Milberg Weiss's agreement with LAZAR to pay
LAZAR a portion of the attorneys' fees that Milberg Weiss
obtained in the Lazar Lawsuits, and therefore constituted income
of LAZAR.

<u>False Tax Returns</u>

9.    On or about the following dates, in Riverside County,
within the Central District of California, LAZAR willfully made
and subscribed to a Personal Income Tax Return Form 1040 for the
tax years identified below, which contained and was verified by a

3

written declaration that it was made under the penalties of
perjury, and which LAZAR knew and believed was not true and
correct as to a material matter, in that it failed to report as
income the payments during the year by Milberg Weiss for LAZAR's
benefit, as described in paragraph 8 above, in the following
amounts:

| DATE | TAX YEAR | AMOUNT OF PAYMENTS FROM MILBERG WEISS |
|------|----------|----------------------------------------|
| 10/17/00 | 1999 | $ 125,000 |
| 10/12/01 | 2000 | $ 175,000 |
| 05/21/03 | 2001 | $ 133,000 |

### False Declaration to Courts

10.    Pursuant to the Private Securities Litigation Reform
Act of 1995 ("PSLRA"), all securities fraud class action
complaints filed in federal court after December 22, 1995 must be
accompanied by a certification, signed under penalty of perjury
by "[e]ach plaintiff seeking to serve as a representative party
on behalf of a class," stating, among other things, that:
(a) "the plaintiff did not purchase the security that is the
subject of the complaint at the direction of plaintiff's counsel
or in order to participate in any private action arising under
[the federal laws prohibiting securities fraud]" and (b) "the
plaintiff will not accept any payment for serving as a
representative party on behalf of a class beyond the plaintiff's
pro rata share of any recovery, except as approved by the court

4

in accordance with [the PSLRA]."

11.   LAZAR understood that he could not disclose his payment arrangement with the Milberg Weiss to the courts presiding over, or the other parties to, the Lazar Lawsuits.  As a result, in response to questions in his depositions and other discovery in the Lazar Lawsuits, LAZAR consistently avoided disclosing the existence of his secret payment arrangement with Milberg Weiss.

12.   On or about December 13, 1999, Milberg Weiss and LAZAR caused to be filed in the United States District Court for the District of Connecticut a class action complaint against Xerox Corporation and others for violation of federal securities laws, naming LAZAR as a plaintiff, captioned Helene Giarputo and Seymour Lazar v. Xerox Corp. et al., 99 CV 2374 ("Xerox").

13.   Along with the Xerox class action complaint, Milberg Weiss and LAZAR caused to be filed a document entitled "Certification of Seymour Lazar In Support of Class Action Complaint" (the "Certification"), which was prepared by Milberg Weiss and signed by LAZAR on or about December 13, 1999, under penalty of perjury.

14.   At the time LAZAR signed the Certification, he knew that Milberg Weiss would submit the Certification to the federal court presiding over the Xerox class action, and that the Certification was required under federal law to be filed with the court to assist the court in determining whether LAZAR would

fairly and adequately represent the interests of the members of the proposed class.

15. At the time he executed the Certification, LAZAR knew it to be false because in it he declared, with respect to the <u>Xerox</u> class action, that he would "not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court." Pursuant to his long standing secret payment arrangement with Milberg Weiss, LAZAR intended to receive and accept the benefit of some portion of the attorneys' fees, if any, that Milberg Weiss obtained in the <u>Xerox</u> case, for his serving as a representative plaintiff.

16. LAZAR knew, at the time he signed the Certification, that it would be material to the court to learn that LAZAR had secretly arranged with Milberg Weiss to obtain a share of the firm's attorneys' fees received in the <u>Xerox</u> class action. LAZAR knew that disclosure of these facts to the court could potentially cause the court to exclude him, as well as Milberg Weiss, from participation in the <u>Xerox</u> class action and eliminate their prospect of sharing in any attorneys' fees award in that case. During the course of the <u>Xerox</u> class action, LAZAR concealed these facts and the falsity of the Certification from

6

the court.

## Obstruction of Justice

17. During the relevant times there was pending in the Central District of California a federal grand jury proceeding involving allegations that Milberg Weiss had paid secret and illegal kickbacks to named plaintiffs in class actions and shareholder derivative actions, including LAZAR (the "Grand Jury Proceeding").

18. On or about January 9, 2002, LAZAR was personally served at his residence in Palm Springs, California, with a grand jury subpoena (the "Subpoena"). The Subpoena required LAZAR to produce to the Grand Jury certain specified documents relating to the Grand Jury Proceeding that were in his possession, custody, or control, which, as defined and instructed by the Subpoena, included documents that were in the possession of LAZAR's accountant and tax return preparer.

19. At the time of the service of the Subpoena on LAZAR, LAZAR's accountant and tax return preparer ("his Accountant") had for many years retained at his office in Woodland Hills, California and in storage various financial records and other documents used for the preparation and filing of LAZAR'S tax returns, including documents reflecting LAZAR's stock trading activity, LAZAR's legal fees and expenses incurred for services rendered by the Palm Springs Law Firm and other Intermediary

7

Lawyers on LAZAR's various real estate and business ventures, and other business matters of LAZAR.

20.  The documents required to be produced by the Subpoena included, among other things, those relating to (a) any payments that Milberg Weiss caused to be paid directly or indirectly to LAZAR and/or to any attorney who received any referral fee for securing the employment of Milberg Weiss; (b) any reporting or non-reporting of such payments on any federal or state tax return filed by LAZAR; and (c) any securities purchased by LAZAR in any business entity that was the subject of a class action in which LAZAR served, or sought to serve, as a representative plaintiff.

21.  In or about early February 2002, after he was served with the Subpoena, LAZAR instructed his Accountant to destroy any records in his Accountant's possession concerning LAZAR that were older than the record retention requirements of the Internal Revenue Service and the California Franchise Tax Board.  In doing so, LAZAR failed to disclose to his Accountant that LAZAR had been served with the Subpoena that required LAZAR's production of responsive documents in the possession of his Accountant.

22.  Pursuant to LAZAR's instructions, his Accountant then caused LAZAR records in the possession of his Accountant that were from approximately the year 1994 and earlier to be destroyed.

23.  LAZAR corruptly influenced, obstructed, and impeded,

8

and endeavored to influence, obstruct, and impede, the due administration of justice in the Grand Jury Proceeding by directing his Accountant to destroy these documents relating to LAZAR, including documents that LAZAR knew: (a) were responsive to the Subpoena; and (b) were and would become relevant to the Grand Jury Proceeding.

**EXHIBIT B TO PLEA AGREEMENT OF SEYMOUR M. LAZAR**

October ___, 2007

Milberg Weiss LLP
c/o  Bryan Daly, Esq.
     Marc Harris, Esq.
     Beck, De Corso, Daly, Kreindler & Harris

     William W. Taylor, Esq.
     Zuckerman Spaeder LLP

Dear Counsel:

This will confirm that I, Seymour M. Lazar, hereby authorize Milberg Weiss LLP to disclose and release to the United States Attorney's Office for the Central District of California (the "USAO") any and all client papers and property, documents, records, or other tangible evidence relating to Milberg Weiss's representation of me and/or any payments made by Milberg Weiss at my direction or for my benefit.

This will further confirm that I hereby waive the attorney-client confidential communications privilege and any other associated privilege, including, but not limited to, any protection afforded by the attorney work-product doctrine, with respect to Milberg Weiss's disclosure and release of the above-described items to the USAO.  Accordingly, I do not want Milberg Weiss to assert the attorney-client confidential communications privilege and any other associated privilege, including, but not limited to, any protection afforded by the attorney work-product doctrine, on behalf of me in connection with Milberg Weiss's disclosure and release of these items to the USAO.

I further request that any such items that Milberg Weiss has previously withheld from disclosure and release to the USAO based on the assertion of any such privilege or protection on my behalf now be disclosed and released by Milberg Weiss to the USAO immediately.

Sincerely,


Seymour M. Lazar



cc: Thomas Bienert, Esq.

**EXHIBIT C TO PLEA AGREEMENT OF SEYMOUR M. LAZAR**

October ___, 2007


Best Best & Krieger LLP
c/o  Thomas E. Holliday, Esq.
     Gibson, Dunn & Crutcher LLP

Dear Counsel:

This will confirm that I, Seymour M. Lazar, hereby authorize Best Best & Krieger LLP ("BBK") to disclose and release to the United States Attorney's Office for the Central District of California (the "USAO") any and all client papers and property, documents, records, or other tangible evidence relating to my relationship with the Milberg Weiss law firm, including any financial transactions involving BBK and Milberg Weiss.

This will further confirm that I hereby waive the attorney-client confidential communications privilege and any other associated privilege, including, but not limited to, any protection afforded by the attorney work-product doctrine, with respect to BBK's disclosure and release of the above-described items to the USAO. Accordingly, I do not want BBK to assert the attorney-client confidential communications privilege and any other associated privilege, including, but not limited to, any protection afforded by the attorney work-product doctrine, on behalf of me in connection with BBK's disclosure and release of these items to the USAO.

I further request that any such items that BBK has previously withheld from disclosure and release to the USAO based on the assertion of any such privilege or protection on my behalf now be disclosed and released by BBK to the USAO immediately.

Sincerely,



Seymour M. Lazar




cc: Thomas Bienert, Esq.

**EXHIBIT D TO PLEA AGREEMENT OF SEYMOUR M. LAZAR**

**WAIVER AND RELEASE
OF CLAIMS TO CONTEST FORFEITURE**

## I.  INTRODUCTION.

A.   Seymour M. Lazar ("defendant") has entered into a plea agreement with the United States Attorneys Office for the Central District of California.

B.   Defendant has agreed to forfeit $_____ to the United pursuant to 18 U.S.C. § 981(a)(1)(A) ("the Forfeitable Currency")

C.   Alyce Lazar is the defendant's wife.

## II.  WAIVER AND RELEASE BY ALYCE LAZAR

Alyce Lazar hereby knowingly, voluntarily, and intelligently waives, relinquishes, and surrenders all rights to contest the forfeiture of the Forfeitable Currency, and all rights to judicial review of the forfeiture of the Forfeitable Currency. To the extent that Alyce Lazar has already filed one or more claims to contest administrative or judicial forfeiture of the Forfeitable Currency, this Waiver and Release constitutes a complete withdrawal of such claims.


_____         _____
                                    Alyce Lazar

Subscribed and sworn before me this __ day of _____, 2007.


_____
Notary Public

26

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) No. CR 05-587(E)-JFW |
| Plaintiff, | ) |
| | ) T H I R D |
| | ) S U P E R S E D I N G |
| v. | ) I N F O R M A T I O N |
| | ) |
| SEYMOUR M. LAZAR, | ) [18 U.S.C. § 1623(a): False |
| | ) Declaration Before Federal |
| Defendant. | ) Court] |

The United States Attorney charges:

COUNT ONE

[18 U.S.C. § 1623(a)]

I.

BACKGROUND

1.  At all time relevant to this Information, defendant SEYMOUR M. LAZAR ("LAZAR") was a resident of Palm Springs, California.

2.  At all times relevant to this Information, Milberg Weiss Bershad Hynes & Lerach LLP, formerly known as "Milberg Weiss Bershad Specthrie & Lerach," was a law firm headquartered in New York, New York ("Milberg Weiss"). Milberg Weiss

1  specialized in representing plaintiffs in securities fraud class

2  actions and shareholder derivative actions in federal and state

3  courts throughout the United States.  Among the plaintiffs

4  represented by Milberg Weiss in such actions were defendant LAZAR

5  and his spouse.

6       3.   From in or about 1976 through at least in or about

7  2004, defendant LAZAR and his spouse served as named plaintiffs

8  in class actions and shareholder derivative actions brought and

9  caused to be brought by Milberg Weiss (hereinafter the "Lazar

10 Lawsuits").

11      4.   Beginning in 1979 and continuing to at least 2002,

12 defendant LAZAR and Milberg Weiss had an established arrangement

13 and practice that Milberg Weiss would secretly pay defendant

14 LAZAR a portion of the attorneys' fees that Milberg Weiss

15 obtained in the Lazar Lawsuits.

16      5.   Pursuant to the Private Securities Litigation Reform

17 Act of 1995 ("PSLRA"), all securities fraud class action

18 complaints filed in federal court after December 22, 1995 must be

19 accompanied by a certification, signed under penalty of perjury

20 by "[e]ach plaintiff seeking to serve as a representative party

21 on behalf of a class," stating, among other things, that:

22 (a) "the plaintiff did not purchase the security that is the

23 subject of the complaint at the direction of plaintiff's counsel

24 or in order to participate in any private action arising under

25 [the federal laws prohibiting securities fraud]" and (b) "the

26 plaintiff will not accept any payment for serving as a

27 representative party on behalf of a class beyond the plaintiff's

28 pro rata share of any recovery, except as approved by the court

2

1  in accordance with [the PSLRA]."

2                              II.

3       FALSE CERTIFICATION IN XEROX SECURITIES LITIGATION

4       6.   On or about December 13, 1999, Milberg Weiss and LAZAR

5  caused to be filed in the United States District Court for the

6  District of Connecticut a class action complaint against Xerox

7  Corporation and others for violation of federal securities laws,

8  naming LAZAR as a plaintiff, captioned Helene Giarputo and

9  Seymour Lazar v. Xerox Corp. et al., 99 CV 2374 ("Xerox").

10      7.   Along with the Xerox class action complaint, Milberg

11 Weiss and LAZAR caused to be filed a document entitled

12 "Certification of Seymour Lazar In Support of Class Action

13 Complaint" (the "Certification"), which was prepared by Milberg

14 Weiss and signed by LAZAR on or about December 13, 1999, under

15 penalty of perjury.

16      8.   At the time defendant LAZAR signed the Certification,

17 he knew that Milberg Weiss would submit the Certification to the

18 federal court presiding over the Xerox class action, and that the

19 Certification was required under federal law to be filed with the

20 court to assist the court in determining whether LAZAR would

21 fairly and adequately represent the interests of the members of

22 the proposed class.

23      9.   At the time he executed the Certification, defendant

24 LAZAR knew it to be false because in it he declared, with respect

25 to the Xerox class action, that he would "not accept any payment

26 for serving as a representative party on behalf of a class beyond

27 plaintiff's pro rata share of any recovery, except such

28 reasonable costs and expenses (including lost wages) directly

                              3

relating to the representation of the Class as ordered or approved by the Court." In truth and fact, as LAZAR then well knew, LAZAR intended to receive and accept the benefit of some portion of the attorneys' fees, if any, that Milberg Weiss obtained in the <u>Xerox</u> case, for his serving as a representative plaintiff.

10. Defendant LAZAR knew, at the time he signed the Certification, that it would be material to the court to learn that defendant LAZAR had secretly arranged with Milberg Weiss to obtain a share of the firm's attorneys' fees received in the <u>Xerox</u> class action. Defendant LAZAR knew that disclosure of these facts to the court could potentially cause the court to exclude him, as well as Milberg Weiss, from participation in the <u>Xerox</u> class action and eliminate their prospect of sharing in any attorneys' fees award in that case. During the course of the <u>Xerox</u> class action, LAZAR concealed these facts and the falsity of the Certification from the court.

THOMAS P. O'BRIEN
United States Attorney


GEORGE S. CARDONA
Chief Assistant U.S. Attorney


DOUGLAS A. AXEL
Assistant United States Attorney
Chief, Major Frauds Section

RICHARD E. ROBINSON
ROBERT J. MCGAHAN
Assistant United States Attorneys
Major Frauds Section

# CERTIFICATE OF SERVICE

I, **Shaton L. McDaniel**, declare:

That I am a citizen of the United States and resident or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, United States Courthouse, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of eighteen years, and am not a party to the above-entitled action;

That I am employed by the United States Attorney for the Central District of California who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of:

## PLEA AGREEMENT FOR DEFENDANT SEYMOUR M. LAZAR

service  was:

| | | | |
|---|---|---|---|
| [ ] | Placed in a closed envelope, for collection and interoffice delivery addressed as follows: | [✗] | Placed in a sealed envelope for collection and mailing via United States Mail, addressed as follows: |
| [ ] | By hand delivery addressed as follows: | [ ] | By facsimile as follows: |
| [ ] | By messenger as follows: | [ ] | By federal express as follows: |

**THOMAS H. BIENERT, ESQ.**
Bienert & Miller
107 Avenida Miramar, Suite B
San Clemente, California 92672-6713

This Certificate is executed on **October 17, 2007** at Los Angeles, California. I certify under penalty of perjury that the foregoing is true and correct.

Shaton L. McDaniel